UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| STEPHEN HATCH<br>Plaintiff<br><br>v.<br><br>PITNEY BOWES, INC.<br>Defendant | :<br>:<br>:<br>:<br>:<br>:<br>: | C.A. N[redacted] 05 155 S |

## COMPLAINT

Plaintiff Stephen Hatch hereby commences this action against the Defendant and alleges:

## I. JURISDICTION AND VENUE

1. Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1332 (a)(1)(B) and (3) because certain claims asserted herein arise under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA"), because certain other claims asserted herein arise under 42 U.S.C. § 12101 and the parties are contractually bound to submit their dispute to Rhode Island state and federal courts.

2. Defendant Pitney Bowes, Inc. is qualified to do business in Rhode Island and in fact at all times relevant hereto has done business in the state of Rhode Island, and is an "employer" within the meaning of ERISA, 29 U.S.C. § 1002(5) and a "plan sponsor" within the meaning of ERISA, 29 U.S.C. § § 1002(16)(B) and 1132.

3. Defendant Pitney Bowes, Inc. employed Plaintiff Stephen Hatch ("Plaintiff Hatch") in its East Providence Rhode Island office for more than twenty-five years and provided Plaintiff with Long Term Disability benefits through his employment with Defendant Pitney Bowes, Inc.

## II. PARTIES

4. Defendant Pitney Bowes, Inc. ("Pitney Bowes") is a Connecticut Corporation housing its world headquarters in Stamford, Connecticut.

5. Defendant Pitney Bowes is the plan fiduciary of a long term disability policy ("LTD") for its employees of which the Plaintiff was an insured known as the Pitney Bowes Inc. Long-Term Disability Plan ("Plan").

6. Plaintiff Stephen Hatch is a resident of the state of Massachusetts and an ERISA Plan Beneficiary within the meaning of ERISA, 29 U.S.C. § 1132(a)(1)(B) and (3).

(1)

## III. FACT ALLEGATIONS

7. Defendant Pitney Bowes, Inc. employed the Plaintiff in its sales department for more than twenty-five (25) years.

8. In July, 1997, Plaintiff was forced to take a medical leave of absence from his employment with Pitney Bowes due to a mental disability.

9. Plaintiff planned to return to his employment with Pitney Bowes on September 1, 1997, with or without reasonable accommodation.

10. Pitney Bowes refused to allow Plaintiff to return to work on September 1, 1997 as scheduled, despite Plaintiff's being fully capable of returning to work at that time, with or without reasonable accommodation.

11. Pitney Bowes' pretextual excuse for refusing to allow the Plaintiff to return to work at that time was that he would not be able to perform his job because the District Manager was out on sick leave.

12. On October 1, 1997, Pitney Bowes finally allowed Plaintiff to return to work.

13. Upon Plaintiff's return to work, Pitney Bowes through its management commenced a campaign of severe and extreme harassment against the Plaintiff because of his past mental disability leave and based upon a perceived continuing mental disability.

14. Because of the harassment and illegal disability discrimination directed at Plaintiff, Plaintiff was forced to take a second medical leave of absence from his employment on January 1, 1998 and continuing to the present.

15. When Plaintiff went out on this second medical leave of absence, Plaintiff was advised by Pitney Bowes of the monthly amount that he would be receiving in LTD benefits if he continued to stay out of work on medical leave, and that his medical leave for the purposes of calculating his LTD benefit would officially commence on February 1, 1998. This amount was confirmed by Pitney Bowes through various letters over the years, and Plaintiff was indeed paid monthly benefits based upon his 1997 income until August, 2003.

16. On or about August 7, 2003, Plaintiff received a letter from Pitney Bowes stating that there had been a "mistake" in calculation of the amount of his LTD benefits back in 1998, and that he supposedly now owed Pitney Bowes the sum of $133,075.14. The letter further stated that Plaintiff would not be receiving additional benefits, despite his continued eligibility for such benefits, until that entire sum was fully repaid to Pitney Bowes by Pitney Bowes wholly retaining his future benefits.

17. Since this correspondence Plaintiff has not received any additional LTD benefits, although Pitney Bowes admits that Plaintiff is still medically eligible for such benefits and meets the Plan definition of "totally disabled".

18. Pitney Bowes has attempted to justify its wrongful actions by quoting Section 2.20 of the Plan, which states that LTD benefits are calculated as follows:

(a) The higher earnings of either of the last two (2) full calendar years prior to the date of Total Disability; or
(b) The highest average annual earnings for any five (5) consecutive calendar years of employment prior to the date of Total Disability.

According to this Plan language Plaintiff's LTD benefits were in fact calculated correctly initially by basing his benefits on his earnings in 1996 and 1997, as he officially went out on medical disability again on February 1, 1998.

19. This so-called benefit calculation mistake is again a pretext for discriminating against Plaintiff because of Plaintiff's mental disability, and was done in unlawful retaliation for Plaintiff's former co-filing of a Charge of Discrimination in 1999 with the Rhode Island Commission for Human Rights and the United States Equal Employment Opportunity Commission (RICHR No: 99 EMH 112-50/03 and EEOC No: 16J980348), and for pursuing a civil suit with this Court to redress the illegal disability discrimination (C.A. No: 01-251 (RRL)).

20. Plaintiff's former civil suit filed with this Court was terminated after negotiation of a mutually agreeable settlement. Paragraph 5 of the written settlement agreement entered into to dispose of the prior discrimination litigation expressly states:

> Hatch acknowledges that the payments provided for by paragraph 2 are in addition to and are not in place of any payment, benefit or other thing of value to which Hatch might otherwise be entitled under any policy, plan or procedure of PB [Pitney Bowes] or pursuant to any prior agreement or contract with PB. PB acknowledges that Hatch will continue to maintain that status, and receive those benefits, to which he is entitled as an employee on long-term disability leave ("LTD") pursuant to the terms of the LTD Summary Plan, as long as he continues to remain eligible under the requirements of the LTD Summary Plan.

21. On May 26, 2003, Plaintiff again co-filed a Charge of Discrimination with the Rhode Island Commission for Human Rights and the United States Equal Employment Opportunity Commission (RICHR # 04 ERT 336-50-03, EEOC # 16JA400216) to redress the illegal retaliation and disability discrimination inflicted upon him by Pitney Bowes' pretextual benefit calculation "mistake" that now forces him to attempt to support himself and his family without payment of any LTD benefits for an approximate two (2) year period.

22. Plaintiff received a Right to Sue letters from the Rhode Island Commission for Human Rights and from the United States Equal Opportunity Commission and has otherwise exhausted all administrative remedies prior to filing this litigation.

23. Defendant's assessment of an overpayment of LTD benefits to Plaintiff is a pretext for pursuing a course of illegal retaliation against the Plaintiff to punish him for pursing his prior litigation against the Defendant to redress its illegal disability discrimination.

24. As a result of the continuing illegal disability discrimination and retaliation inflicted upon Plaintiff by Pitney Bowes Plaintiff has suffered and will continue to suffer damages including, but not limited to: illegal disability harassment and discrimination, illegal retaliation, various pecuniary damages, including loss of substantial LTD benefits, loss of his family healthcare benefits, loss of income from investments due having to liquidate such investments to support his family, threatened loss of his family's homestead and attorneys' fees, severe and extreme emotional distress and other compensatory damages with physical and emotional manifestations, including an aggravation of Plaintiff's preexisting mental illness and fear, anguish and frustration with respect to his inability to provide financially for himself and his family.

WHEREFORE, Plaintiff prays for the relief requested herein.

**COUNT I**
**VIOLATION OF 29 U.S.C. § 1132**

25. Plaintiff hereby realleges in full in this paragraph the allegations set forth in all other paragraphs of this Complaint.

26. Plaintiff Plan Beneficiary, at all times since February 1, 1998, has been and continues to be disabled within the meaning of the Plan, and therefore is eligible to receive long-term disability benefits thereunder.

27. By letter dated August 7, 2003, Defendant suspended Plaintiff's benefits citing recoupment of benefits due to an alleged substantial benefit overpayment as a result of a supposed error in the manner in which benefits were initially calculated in 1998.

28. Defendant relies on its wrongful manipulation of the language contained in section 2.20 of the Plan to justify this substantial recoupment of benefits.

29. The plain meaning of the Plan language in section 2.20 requires that Plaintiff's LTD benefits be calculated based upon the greater of either his 1996 or 1997 earnings, because he did not officially commence his most recent disability leave until February 1, 1998.

30. Plaintiff's benefits were initially calculated correctly by Pitney Bowes by basing his benefits upon the greater of his 1996 or 1997 earnings.

31. Pitney Bowes' new unilateral interpretation of the Plan language and insistence upon calculating Plaintiff's benefits based upon the greater of his 1995 or 1996 earnings is erroneous and in violation of ERISA and the terms of the Plan.

WHEREFORE, Plaintiff prays for the relief requested herein.

**COUNT II**
**BREACH OF CONTRACT**
**(SETTLEMENT AGREEMENT)**

32. Plaintiff hereby realleges in full in this paragraph the allegations set forth in all other paragraphs of this Complaint.

33. On February 20, 2002, Plaintiff and Pitney Bowes, Inc. entered into a written "Agreement of Settlement and Release" disposing of the litigation entitled Stephen Hatch v. Pitney Bowes, Inc., Jeffrey Morgan and Frederick Mestrandrea, Civil Action No: 01-251(RRL).

34. Paragraph 5 of this contract states:

> Hatch acknowledges that the payments provided for by paragraph 2 are in addition to and are not in place of any payment, benefit or other thing of value to which Hatch might otherwise be entitled under any policy, plan or procedure of PB [Pitney Bowes] or pursuant to any prior agreement or contract with PB. PB acknowledges that Hatch will continue to maintain that status, and receive those benefits, to which he is entitled as an employee on long-term disability leave ("LTD") pursuant to the terms of the LTD Summary Plan, as long as he continues to remain eligible under the requirements of the LTD Summary Plan.

35. By its unilateral decision to change Plaintiff's benefit calculation communicated to Plaintiff on or about August 7, 2003, Pitney Bowes has breached the "Agreement of Settlement and Release" contract entered into by the parties.

36. Plaintiff has suffered damages as a result of the breach of contract.

WHEREFORE, Plaintiff prays for the relief requested herein.

**COUNT III**
**EQUITABLE ESTOPPEL**

37. Plaintiff hereby realleges in full in this paragraph the allegations set forth in all other paragraphs of this Complaint.

38. Defendant informed Plaintiff in writing that his second medical leave of absence would officially commence on February 1, 1998 for the purpose of calculating his monthly LTD

benefits, and that Plaintiff's 1997 earnings would accordingly be used as the "base year" for the purpose of calculating his monthly LTD benefits.

39. Defendant gave Plaintiff the information regarding his benefit rate calculation for the purpose of inducing Plaintiff to rely upon the information and to convince Plaintiff to accept LTD benefits and to remain out of work indefinitely.

40. Plaintiff relied upon this information in deciding to accept LTD benefits, and in deciding to remain out of work on a medical leave of absence.

41. In 2001 Plaintiff initiated litigation (Stephen Hatch v. Pitney Bowes, Inc., Jeffrey Morgan and Frederick Mestrandrea, Civil Action No: 01-251(RRL)) against the Defendant to redress illegal disability discrimination and retaliation inflicted upon him by the Defendant during the course of his employment and which led to his second medical leave.

42. This litigation was settled through the execution of an "Agreement of Settlement and Release".

43. Plaintiff's maintenance of his status on LTD benefits was a specific negotiated term of the "Agreement of Settlement and Release" and the Defendant knew that maintenance of the status quo of Plaintiff's LTD benefits was a specific inducement which directly led to the Plaintiff's decision to settle that litigation.

44. Plaintiff relied upon this information in deciding to accept the terms of the "Agreement of Settlement and Release" and to dismiss his pending federal court litigation.

45. By executing the "Agreement of Settlement and Release" Defendant ratified its prior decision regarding Plaintiff's receipt of LTD benefits and the amount of money he was receiving per month.

46. Defendant must now be equitably estopped from its attempt to unilaterally reinterpret the language of the plan to seek substantial recoupment from the Plaintiff as the Plaintiff relied to his detriment on the representations and promises of the Defendant regarding the initial calculation of his monthly LTD benefit rate on two (2) separate occasions.

WHEREFORE, Plaintiff prays for the relief requested herein.

## COUNT IV
## RETALIATION AND ON-GOING DISCRIMINATION
## VIOLATION OF 42 U.S.C § 12101 ET SEQ.
## AMERICANS WITH DISABILITIES ACT ("ADA")

47. Plaintiff hereby realleges in full in this paragraph the allegations set forth in all other paragraphs of this Complaint.

48. When Plaintiff went out of work on his second medical leave of absence, he was advised by Defendant of the monthly amount that he would be receiving in LTD benefits if he continued to stay out of work on a medical leave, and that his medical leave for the purposes of calculating his LTD benefit would officially commence on February 1, 1998. This amount was confirmed by Pitney Bowes through various letters over the years, and Plaintiff was indeed paid monthly benefits based upon his 1997 income until August, 2003.

49. On or about August 7, 2003, Plaintiff received a letter from Pitney Bowes stating that there had been a "mistake" in calculation of the amount of his LTD benefits back in 1998, and that he supposedly now owed Pitney Bowes repayment of the sum of $133,075.14. The letter further stated that Plaintiff would not be receiving additional benefits, despite his continued eligibility for such benefits, until that entire sum was fully repaid to Pitney Bowes by Pitney Bowes wholly retaining his future benefits.

50. Since this correspondence Plaintiff has not received any additional LTD benefits, although Pitney Bowes admits that Plaintiff is still medically eligible for such benefits and meets the Plan definition of "totally disabled".

51. This so-called benefit calculation "mistake" constitutes a continuing course of illegal discrimination pursuant to 42 U.S.C. § 12101 et seq. against Plaintiff because of Plaintiff's mental disability and was done in unlawful retaliation for Plaintiff's former co-filing of a Charge of Discrimination in 1999 with the Rhode Island Commission for Human Rights and the United States Equal Employment Opportunity Commission (RICHR No: 99 EMH 112-50/03 and EEOC No: 16J980348), and for pursuing a civil suit with this Court to redress this illegal disability discrimination (C.A. No: 01-251 (RRL).

WHEREFORE, Plaintiff prays for the relief requested herein.

**COUNT V**
**RETALIATION AND DISCRIMINATION**
**VIOLATION OF R.I.G.L. § 28-5-7**
**RHODE ISLAND FAIR EMPLOYMENT PRACTICES ACT (FEPA)**

52. Plaintiff hereby realleges in full in this paragraph the allegations set forth in all other paragraphs of this Complaint.

53. When Plaintiff went out of work on his second medical leave of absence, he was advised by Defendant of the monthly amount that he would be receiving in LTD benefits if he continued to stay out of work on a medical leave, and that his medical leave for the purposes of calculating his LTD benefit would officially commence on February 1, 1998. This amount was confirmed by Pitney Bowes through various letters over the years, and Plaintiff was indeed paid monthly benefits based upon his 1997 income until August, 2003.

54. On or about August 7, 2003, Plaintiff received a letter from Pitney Bowes stating that there had been a "mistake" in calculation of the amount of his LTD benefits back in 1998, and that he supposedly now owed Pitney Bowes repayment of the sum of $133,075.14. The

letter further stated that Plaintiff would not be receiving additional benefits, despite his continued eligibility for such benefits, until that entire sum was fully repaid to Pitney Bowes by Pitney Bowes wholly retaining his future benefits.

55. Since this correspondence Plaintiff has not received any additional LTD benefits, although Pitney Bowes admits that Plaintiff is still medically eligible for such benefits and meets the Plan definition of "totally disabled."

56. This so-called benefit calculation "mistake" constitutes a continuing course of illegal discrimination pursuant to R.I.G.L. § 28-5-7 against Plaintiff because of Plaintiff's mental disability and was done in unlawful retaliation for Plaintiff's former co-filing of a Charge of Discrimination in 1999 with the Rhode Island Commission for Human Rights and the United States Equal Employment Opportunity Commission (RICHR No: 99 EMH 112-50/03 and EEOC No: 16J980348) and for pursuing a civil suit with this Court to redress this illegal disability discrimination (C.A. No: 01-251 (RRL)).

WHEREFORE, Plaintiff prays for the relief requested herein.

**COUNT VI**
**RETALIATION AND DISCRIMINATION**
**VIOLATION OF R.I.G.L. § 42-112-1**
**RHODE ISLAND CIVIL RIGHTS ACT**

57. Plaintiff hereby realleges in full in this paragraph the allegations set forth in all other paragraphs of this Complaint.

58. When Plaintiff went out of work on his second medical leave of absence, he was advised by Defendant of the monthly amount that he would be receiving in LTD benefits *if* he continued to stay out of work on a medical leave, and that his medical leave for the purposes of calculating his LTD benefit would officially commence on February 1, 1998. This amount was confirmed by Pitney Bowes through various letters over the years, and Plaintiff was indeed paid monthly benefits based upon his 1997 income until August, 2003.

59. On or about August 7, 2003, Plaintiff received a letter from Pitney Bowes stating that there had been a "mistake" in calculation of the amount of his LTD benefits back in 1998, and that he supposedly now owed Pitney Bowes repayment of the sum of $133,075.14. The letter further stated that Plaintiff would not be receiving additional benefits, despite his continued eligibility for such benefits, until that entire sum was fully repaid to Pitney Bowes by Pitney Bowes wholly retaining his future benefits.

60. Since this correspondence Plaintiff has not received any additional LTD benefits, although Pitney Bowes admits that Plaintiff is still medically eligible for such benefits and meets the Plan definition of "totally disabled."

61. This so-called benefit calculation "mistake" constitutes a continuing course of illegal discrimination pursuant to R.I.G.L. § 42-112-1 against Plaintiff because of Plaintiff's

mental disability and in unlawful retaliation for Plaintiff's former co-filing of a Charge of Discrimination in 1999 with the Rhode Island Commission for Human Rights and the United States Equal Employment Opportunity Commission (RICHR No: 99 EMH 112-50/03 and EEOC No: 16J980348) and for pursuing a civil suit with this Court to redress this illegal disability discrimination (C.A. No: 01-251 (RRL).

WHEREFORE, Plaintiff prays for the relief requested herein.

**COUNT VII**
**BREACH OF CONTRACT**
**(LTD PLAN)**

62. Plaintiff hereby realleges in full in this paragraph the allegations set forth in all other paragraphs of this Complaint.

63. Defendant has breached the terms of its LTD Policy by unilaterally insisting upon an incorrect interpretation of section 2.20 of the Policy and imposing its incorrect interpretation upon the Plaintiff to deny him substantial LTD benefits.

64. Defendant has failed/refused to appropriately pay monthly LTD benefits to the Plaintiff pursuant to the provisions and requirements of the Plan.

65. As a result of Defendant's failure/refusal to appropriately pay monthly LTD benefits to the Plaintiff pursuant to the provisions and requirements of the Plan, the Defendant has suffered pecuniary damages.

WHEREFORE, Plaintiff prays for the relief requested herein.

**COUNT VIII**
**BREACH OF FIDUCIARY DUTY**

66. Plaintiff hereby realleges in full in this paragraph the allegations set forth in all other paragraphs of this Complaint.

67. Defendant stands in a fiduciary duty to Plaintiff.

68. In breach of its fiduciary duty, Defendant has wrongfully calculated and failed/refused to appropriately pay Plaintiff monthly LTD benefits pursuant to the provisions and requirements of the Plan.

WHEREFORE, Plaintiff prays for the relief requested herein.

**COUNT IX**
**INJUNCTIVE RELIEF**

69. Plaintiff hereby realleges in full in this paragraph the allegations set forth in all other paragraphs of this Complaint.

70. On or about August 7, 2003, Plaintiff received a letter from Pitney Bowes stating that there had been a "mistake" in calculation of the amount of his LTD benefits back in 1998, and that he supposedly now owed Pitney Bowes the sum of $133,075.14. The letter further stated that Plaintiff would not be receiving additional benefits, despite his continued eligibility for such benefits, until that entire sum was fully repaid to Pitney Bowes by Pitney Bowes wholly retaining his future benefits.

71. Since this correspondence Plaintiff has not received any additional LTD benefits, although Pitney Bowes admits that Plaintiff is still medically eligible for such benefits and meets the Plan definition of "totally disabled."

72. Plaintiff seeks a preliminary and permanent injunction to restrain and enjoin the Defendant from seeking further recoupment of benefits until this entire matter is resolved by this Court.

WHEREFORE, Plaintiff prays for the relief requested herein.

**PRAYER FOR RELIEF**

Plaintiff Stephen Hatch, prays the Court to grant him the following relief:

1. Declare that Plaintiff is entitled to continued long term disability (LTD) benefits under the terms of Defendant's LTD policy;

2. Reinstate Plaintiff's LTD benefits retroactive to termination;

3. Restrain and enjoin Defendant from seeking any further overpayment recoupment;

4. Award Plaintiff compensatory damages against Defendant in an amount to be determined at trial;

5. Award Plaintiff punitive damages for the discrimination and retaliation complained of herein;

6. Award Plaintiff reasonable attorneys fees, including litigation expenses and costs;

7. Award Plaintiff appropriate interest on all such monies; and

8. Such other and further relief as the Court deems just and proper to award Plaintiff.

**PLAINTIFF CLAIMS TRIAL BY JURY ON ALL COUNTS SO TRIABLE.**

Respectfully submitted,

PLAINTIFF STEPHEN HATCH

By his Attorney,

Noelle K. Clapham (5338)
24 Salt Pond Road, Suite A-8
South Kingstown, RI 02879
(401)783-3600
(401) 783-3670 (fax)
claphamlaw@verizon.net