**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **STEPHEN HATCH,** | : | |
| **Plaintiff** | : | |
| | : | |
| **-v-** | : | **C.A. NO. 2005-155 (S)** |
| | : | |
| **PITNEY BOWES INC.** | : | |
| **Defendant** | : | |

**DEFENDANT PITNEY BOWES INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**TO PLAINTIFF AND TO HIS COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Defendant Pitney Bowes Inc. ("Defendant" or "Pitney Bowes") will and hereby does move this Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing Plaintiff Stephen Hatch's ("Plaintiff") Complaint on the grounds that:

(1) Plaintiff's First Count for "violation of 29 U.S.C. § 1132" should be dismissed on the grounds that Pitney Bowes is not a proper defendant under ERISA Section 502(a) and Plaintiff has failed to exhaust his administrative remedies;

(2) Plaintiff's Second Count for breach of contract should be dismissed because it is preempted by ERISA and Plaintiff has failed to exhaust his administrative remedies;

(3) Plaintiff's Third Count for equitable estoppel should be dismissed because it is preempted by ERISA, Plaintiff is seeking a claim for benefits;

(4) Plaintiff's Fourth Count for retaliation and on-going discrimination should be dismissed because denial of a benefit claim alone cannot form the basis of a discrimination claim under the Americans with Disabilities Act;

(5) Plaintiff's Fifth Count for retaliation and discrimination in violation of the Rhode Island Fair Employment Practices Act ("FEPA") should be dismissed because it is preempted by

ERISA;

(6) Plaintiff's Sixth Count for retaliation and discrimination in violation of the Rhode Island Fair Civil Rights Act ("RICRA") should be dismissed because it is preempted by ERISA;

(7) Plaintiff's Seventh Count for breach of contract should be dismissed because it is preempted by ERISA;

(8) Plaintiff's Eighth Count for breach of fiduciary duty should be stricken pursuant to Rule 12(f) because it is duplicative of Plaintiff's first count and because Pitney Bowes is not a fiduciary of the Plan and, therefore, not a proper defendant;

(9) Plaintiff's Ninth Count for injunctive relief should be dismissed because Pitney Bowes is not a proper defendant because it is not a fiduciary of the Plan and does not pay the Plan benefits;

(10) Plaintiff's demand for a jury trial should be dismissed and/or stricken pursuant to Rule 12 (f) because there is no right to a jury in ERISA cases.

The motion is based on this Notice of Motion and Motion, the accompanying memorandum of points and authorities, the Affidavit of Barbara Bianco and its attachments, all records on file with the Court relating to this matter, and any and all argument provided by counsel at the hearing.

///

///

///

///

///

///

///

///

///

Dated: July 11, 2005

By: /s/ Thomas J. McAndrew

Thomas J. McAndrew
Thomas J. McAndrew & Associates
One Turks Head Place, Suite 205
Providence, RI 02903
Tel: (410) 455-0350
Fax: (410) 455-0882

Nicole A. Diller (*pro hac vice*)
Andrew C. Sullivan (*pro hac vice pending*)
Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Tel: (415) 442-1000
Fax: (415) 442-1001

Attorneys for Defendant
Pitney Bowes, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of July, 2005, I caused the foregoing **DEFENDANT PITNEY BOWES INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT** to be mailed to:

Noelle K. Clapham
Attorney at Law
24 Salt Pond Road, Suite A-8
South Kingstown, RI 02879

Robin A. Poirier

1-SF/7256734.1



2:08
FILED

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **STEPHEN HATCH,** | : | |
| **Plaintiff** | : | |
| | : | |
| **-v-** | : | **C.A. NO. 2005-155 (S)** |
| | : | |
| **PITNEY BOWES INC.** | : | |
| **Defendant** | : | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PITNEY BOWES INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant Pitney Bowes Inc. ("Pitney Bowes" or the "Company") submits the following memorandum in support of its motion for dismissal of Plaintiff Stephen Hatch's Complaint (the "Complaint") under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I. INTRODUCTION

Plaintiff has received long-term disability ("LTD") benefits from the Pitney Bowes Inc. Long-Term Disability Plan (the "Plan") for over five years. This lawsuit arises out of the discovery in 2003 that the initial calculation of Plaintiff's benefit entitlement was overstated. The Pitney Bowes Disability Department (the "Disability Department") sought Plaintiff's cooperation to establish a repayment plan, but Plaintiff refused. When the Plan began recouping the overpayment through benefit suspension, Plaintiff filed this lawsuit.

The Plan is an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et. seq.* ("ERISA"). Plaintiff does not allege (nor could he) that he complied with the Plan's claims procedures. Because ERISA requires exhaustion of administrative remedies prior to instituting litigation, Plaintiff's failure to follow the Plan's claims procedures provides grounds for dismissing the entire action. In addition, each of the Complaint's claims for relief is inherently defective on an individual basis as well. For these reasons, the Complaint should be dismissed.

## II. STATEMENT OF RELEVANT FACTS[1]

Plaintiff worked for Pitney Bowes in the sales department of its Rhode Island office. Complaint ¶¶ 3, 7. From July to October 1997, Plaintiff took a medical leave of absence and received short-term disability (STD) benefits under the Company's STD Policy. Complaint ¶¶ 8, 12. While he briefly returned to work, Plaintiff soon took a second medical leave of absence. Complaint ¶ 15. Because Plaintiff was Totally Disabled[2] when he left work on his second medical leave, he became eligible for LTD benefits following the Plan's elimination period (called the "Qualifying Period"). The Qualifying Period begins on the first day of Total Disability and ends on the last day following the completion of 22 weeks of Total Disability. Complaint ¶ 15; Affidavit of Barbara Bianco in Support of Motion to Dismiss ("Bianco Aff."), Exh. A at Section 2.30. The Plan provides that, in cases of a Recurrent Disability, where a Participant is unable to return to and remain at work for six or more months, subsequent Total Disability is deemed a continuation of the same Total Disability. Bianco Aff., Exh. A at Section 5.10. As a result, Plaintiff's Qualifying Period of Total Disability began in July 1997, and he became eligible to receive benefits from the Plan effective February 1, 1998. Complaint ¶ 15.

In 1999, Plaintiff filed charges of discrimination and retaliation against the Company with the Rhode Island Commission for Human Rights and the United States Equal Employment Opportunity Commission ("EEOC"), and subsequently filed a civil suit alleging disability discrimination. Complaint ¶ 19. On February 20, 2002, Plaintiff and Pitney Bowes fully resolved Plaintiff's claims through a formal settlement agreement (the "Settlement"), which

---

1 While reserving its right to later contest the allegations, for purposes of this Rule 12(b)(6) motion to dismiss, Pitney Bowes assumes the truth of the allegations of the Complaint except where the Plan document directly contradicts an allegation. The Complaint directly refers to the Plan, Complaint at ¶ 5, and the Court may therefore consider that document in reviewing this motion. See *Clorox Co. P.R. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000) (holding that, in ruling on a motion to dismiss, a court "may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint"); *Beddall v. State St. Bank & Trust Co.,* 137 F.3d 12, 16-17 (1st Cir. 1998) (finding that a trust agreement discussed at length in a complaint was "effectively merge[d] into the pleadings" for purposes of deciding a motion to dismiss).

2 The initial capitalization of a word indicates its usage as defined in the Plan.

included a release of all claims Plaintiff had against the Company. Complaint ¶¶ 20, 34. The Settlement also provided for Plaintiff's receipt of further benefits under the terms of the Plan: "Hatch will continue to … receive those benefits [] to which he is entitled as an employee on a long-term disability leave ('LTD') pursuant to the terms of the LTD Summary Plan, as long as he continues to remain eligible under the requirements of the LTD Summary Plan." Complaint ¶¶ 20, 34.

In August 2003, in connection with a periodic review of Plaintiff's continued eligibility for benefits, the Disability Department discovered that Plaintiff's LTD benefits had been calculated incorrectly. Complaint ¶ 16. The Plan provides for the payment of benefits in an amount factored on the Participant's compensation. Bianco Aff., Exh. A at Section 5.1(a). The Plan defines the Participant's earnings as: "(a) the higher earnings of either of the last two (2) full calendar years ***prior to the date of Total Disability***; or (b) the highest average annual earnings for any five (5) consecutive calendar years of employment ***prior to the date of Total Disability***." Complaint ¶ 18; Bianco Aff., Exh. A at Section 2.3. Because Plaintiff's Total Disability began in July 1997, his benefit should have been calculated using the higher of 1995 and 1996 earnings or the average of 1991 through 1996 earnings. *Id.* Instead, Plaintiffs' benefits were originally calculated based on his earnings in 1996 and 1997. Complaint ¶ 18. When the Disability Department recalculated Plaintiff's benefit amount using the calendar years required by the Plan, the Disability Department discovered the Plan had overpaid Plaintiff's benefits in excess of $133,000. Complaint ¶ 16; Bianco Aff., Exh. B.

The Plan provides for its recovery of benefit overpayments. Specifically, it states:

> In the event a person receives a benefit payment under the Plan which is in excess of the benefit payment that should have been made, the Disability Department shall have the right to recover the amount of such excess from such person. The Disability Department may, however, at its option, deduct the amount of such excess from any subsequent benefits payable under the Plan to, or for, the person.

Bianco Aff., Exh. A at Section 9.9. On August 7, 2003, the Disability Department sent Plaintiff a letter informing him that he had received $133,075.14 in benefit overpayment. Complaint ¶ 16;

*see also* Bianco Aff., Exh. B.[3] The letter requested that Plaintiff return the overpayment, and requested that Plaintiff call to arrange a payment plan for the monies outstanding, noting that the amount would otherwise be recouped from future benefit payments. *Id.* Plaintiff did not contact the Disability Department, so Plaintiff's benefits were offset to recover the overpayment. Complaint ¶ 71.

On May 26, 2004, Plaintiff again filed charges with the Rhode Island Commission for Human Rights and the EEOC, alleging that the Disability Department's recalculation of his benefits constituted prohibited discrimination and retaliation. Complaint ¶ 21. Following receipt of right to sue letters from both Commissions, Complaint ¶ 22, Plaintiff filed this Complaint.

The Complaint purports to assert nine claims against Pitney Bowes: (1) violation of "29 U.S.C. § 1132" by "wrongful manipulation of the language contained in Section 2.20 of the [LTD] Plan;" (2) breach of the parties' settlement agreement; (3) equitable estoppel; (4) retaliation and discrimination in violation of the Americans with Disabilities Act; (5) retaliation and discrimination in violation of the Rhode Island Fair Employment Practices Act; (6) retaliation and discrimination in violation of the Rhode Island Civil Rights Act; (7) breach of contract regarding the LTD Plan; (8) breach of fiduciary duty; and (9) injunctive relief.

## III. THE COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT IN ITS ENTIRETY

### A. Legal Standard Governing the Motion

The Federal Rules of Civil Procedure permit courts to dismiss a cause of action when it fails to state a claim upon which relief can be granted. F.R.Civ.P. 12(b)(6). Two rationales support dismissal under Rule 12(b)(6): (1) the failure to present a cognizable legal theory and (2) the failure to plead sufficient facts to support a cognizable legal theory. *LaChapelle v. Berkshire Life Ins. Co.,* 142 F.3d 507, 508 (1st Cir. 1998). When judging the sufficiency of a

---

3 Like the Plan, the Complaint explicitly references the Disability Department's letter informing Plaintiff of the overpayment of benefits, making it permissible for the Court's consideration on this motion. *See* Complaint at ¶¶ 16, 27, 49, 54, 59 and 70.

complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." *LaChapelle*, 142 F.3d at 508, *quoting Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996).

**B. The Court Should Dismiss the First and Eighth Counts**

Count One of the Complaint states that the Company violated "Section 1132," without identification of any subsection of that statute. ERISA Section 502, 29 U.S.C. § 1132, provides the exclusive civil enforcement mechanism for violations of ERISA. As it pertains to private litigants, Section 502 commonly permits assertion of a claim for benefits or for breach of fiduciary duty. *See* Section 502(a), 29 U.S.C. § 1132(a). Whether Plaintiff intends to assert a claim for benefits under Section 502(a)(1)(B) or a breach of fiduciary duty claim under Section 502(a)(3), Plaintiff has sued the wrong party. Pitney Bowes is likewise not a proper defendant to the Eighth Count for breach of fiduciary duty.[4]

1. **Pitney Bowes Is Not a Proper Defendant under ERISA Section 502(a)**

As a general rule, ERISA permits a civil action only against a benefit plan or its fiduciaries. *Terry v. Bayer Corp.*, 145 F.3d 28, 35 (1st Cir. 1998). Pitney Bowes is neither.

a. **Because the Company is not a Plan fiduciary, Plaintiff cannot assert a breach of fiduciary duty claim against it**

Consistent with the Supreme Court's interpretation of ERISA Section 502(a), the First Circuit has held that, with narrow exceptions not relevant here, a participant cannot sue non-fiduciaries for a breach of fiduciary duty under ERISA. *See Harris Trust & Savings Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 241 (2000) (recognizing that non-fiduciaries may only be sued for knowingly engaging in an "act or practice" proscribed by ERISA Section 406(a)(1), ERISA's prohibited transaction provision); *Reich v. Rowe*, 20 F.3d 25, 29 (1st Cir. 1994) (same);

4 While not explicit, Pitney Bowes assumes Plaintiff brings Count 8 under ERISA because the allegations in that claim are tied so closely to the Plan. If Plaintiff instead seeks to assert a breach of fiduciary duty claim against the Company under Rhode Island common law, ERISA would preempt that claim. See *Pilot Life Ins. Co. v. Dedeaux*, 481 US 41 (1987).

*see also Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262-63 (1993) (discussing parties against whom ERISA claims can be brought).

As a threshold matter, Pitney Bowes' position as Plaintiff's employer is insufficient to trigger fiduciary status under ERISA. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999) (finding "ERISA's fiduciary duty requirement simply is not implicated where Hughes, acting as the Plan's settlor, makes a decision regarding the form or structure of the Plan"); *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996) (finding "plan sponsors who alter the terms of a plan do not fall into the category of fiduciaries.... [O]nly when fulfilling certain defined functions, including the exercise of discretionary authority or control over plan management or administration, does a person become a fiduciary under [ERISA] § 3(21)(A)").

The determination of fiduciary status under ERISA turns on the conduct of the entity. *See* ERISA § 3(21) ("...a person is a fiduciary with respect to a plan to the extent (i) he *exercises* any discretionary authority or discretionary control respecting management of such plan or *exercises* any authority or control respecting management or disposition of its assets, (ii) he *renders* investment advice for a fee or other compensation..., or (iii) he has any *discretionary authority or discretionary responsibility* in the administration of such plan") (emphasis added); 29 C.F.R. § 2509.75-8 (a person who performs purely ministerial functions is not a fiduciary because such person does not exercise discretion respecting the management of the plan or its assets).

While Plaintiff alleges that Pitney Bowes is a fiduciary of the Plan (Complaint ¶ 5), the Plan demonstrates otherwise. It names the Employee Benefits Committee of Pitney Bowes Inc. (the "Committee") as the entity with discretionary control over the management and administration of the Plan. *See* Bianco Decl., Exh. A at 7.6. Under the Plan, the Committee has responsibility for the final determination of a participant's benefit entitlement. *Id.* at § 7.5. The Plan confers broad discretion on the Committee in applying Plan terms. *Id.* In light of the Committee's sole discretion to interpret and construe the terms of the Plan, the Committee does not defer to any other fact finder regarding Participants' benefit entitlement. As a result, the

Committee—not the Company—is the Plan fiduciary under ERISA. ERISA Section 3(21), 29 U.S.C. § 1002(21); *Reich*, 20 F.3d at 29; *see also Beegan v. Associated Press*, 43 F. Supp. 2d 70, 73 (D. Me. 1999) (dismissing benefits claim against employer in absence of evidence that employer controlled the plan administrator's decision and supporting its dismissal with evidence that another entity administered the benefit plan and made its benefit determinations).

Plaintiff's bare allegation that the Company has fiduciary status is insufficient to support his claim(s) for fiduciary breach. *Aulson v. Blanchard*, 83 F.3d at 3. Because the Plan demonstrates that the Company is not a Plan fiduciary, the Court should dismiss Count One (to the extent it seeks to assert a breach of fiduciary duty claim) and Count 8 with prejudice.

#### b. Plaintiff cannot assert a claim for benefits against the Company

Under governing First Circuit precedent, a plaintiff may assert a claim for benefits only against the party that controls the administration of the plan. *Terry v. Bayer Corp.*, 145 F.3d at 36. As discussed above, the Committee controls the management and administration of the Plan. Bianco Decl., Exh. A at 7.6. Pitney Bowes is therefore not the proper defendant if Count One seeks to assert a claim for benefits under ERISA. *Terry*, 145 F.3d at 36.

While Plaintiff could typically correct this problem by amending his Complaint to name the appropriate Defendant, Plaintiff failed to exhaust his administrative remedies under the Plan. The Plan provides a robust claims process, ultimately permitting appeal of denied claims to the Committee itself. Bianco Decl., Exh. A at Section 7.7(d). Only if the Committee upholds the denial of a Participant's claim, may the Participant bring a civil action under Section 502(a) of ERISA. *Id.* at 7.7(f).

The First Circuit requires a plaintiff to pursue all available administrative remedies provided by the plan in question prior to instituting litigation. *Drinkwater v. Metropolitan Life Ins. Co.,* 846 F.2d 821, 825- 826 (1st Cir. 1988) (affirming summary judgment for employer on the ground that employee failed to exhaust her administrative remedies as to her ERISA claims); *McMahon v. Digital Equipment Corp.,* 162 F. 3d 28, 31 (1st Cir. 1998) (same). The Complaint

contains no allegations that Plaintiff availed himself of the Plan's claims procedure. Plaintiff's failure to utilize that procedure bars him from bringing an action relating to his Plan benefits. *Id.*

**C. ERISA Preempts the Second and Seventh Counts for Breach of Contract**

The Complaint's Second Count alleges that Pitney Bowes breached the Settlement by its "unilateral decision to change Hatch's benefit calculation." Complaint ¶ 35. In a similar vein, the Seventh Count asserts that Pitney Bowers "breached the terms of its LTD Policy by unilaterally insisting upon an incorrect interpretation of section 2.20 of the Policy and imposing its incorrect interpretation upon the Plaintiff to deny him substantial LTD benefits." Complaint ¶ 63. ERISA preempts both of these claims.

ERISA Section 514(a) states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter ***relate to*** any employee benefit plan described in [this Act]." 29 U.S.C. § 1144(a) (emphasis added). The Supreme Court has repeatedly given a broad interpretation to the emphasized "relate to" language of this provision, construing it to require preemption of any state claim that has "a connection with or reference to" an ERISA plan. *Shaw v. Delta Air Lines, Inc.*, 463 US 85, 96-97 (1983); *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990); *McMahon v. Digital Equipment Corp.*, 162 F.3d 28, 38 (1st Cir. 1998).

In *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987), the Supreme Court held that the preemption clause contained in ERISA Section 514(a) preempted an employee's state law claims against an insurance company for breach of contract, bad faith, breach of the implied covenant of good faith and fair dealing, and unfair competition because those claims related to an employee benefit plan. 481 U.S. at 52. The Court explained that Congress intended Section 502(a) of ERISA, 29 U.S.C. Section 1132(a), to provide the comprehensive and exclusive means of enforcing any claim relating to an employee benefit plan, as evinced by the broad language of ERISA's preemption provision. *Id.*

Here, both the Second and Seventh Counts center entirely on the Plan and Plaintiff's benefits from the Plan. This connection easily meets the "relate to" criterion for ERISA

preemption. *See Hampers v. W. R. Grace & Co., Inc.*, 202 F. 3d 44, 54 (1st Cir. 2000) (holding a contract claim that essentially restates an ERISA claim is preempted); *Massey v. Stanley-Bostitch, Inc.*, 255 F.Supp.2d 7, 13 (D.R.I. 2003) (granting summary judgment for Defendants where the plaintiff's claim for "breach of contract is based on Defendants' alleged miscalculation of [the plaintiff's] benefits under that plan."). Accordingly, the Court should dismiss both Counts Two and Seven.

**D. Plaintiff's Third Count for Equitable Estoppel Fails to State a Claim**

Plaintiff fails to allege whether he bases the third count for equitable estoppel on Rhode Island common law or the federal common law of ERISA. To the extent Plaintiff brings this claim under Rhode Island common law, ERISA preempts it. *Massey,* 255 F. Supp. 2d at 14 (holding "there can be no doubt" that where the plaintiff's "equitable estoppel claim is virtually indistinguishable from [his ERISA claims]" the estoppel claims are preempted). As Plaintiff bases his claim solely on allegations that Pitney Bowes improperly recalculated his LTD benefits, Plaintiff's Third Count inseparably relates to the Plan, making it preempted. *McMahon*, 162 F.3d at 38 ("a state law cause of action is expressly preempted by ERISA where a plaintiff, in order to prevail, must prove the existence of, or specific terms of, an ERISA plan").

To the extent Plaintiff brings this claim under the federal common law of ERISA, it is "still an open question in this circuit whether an equitable estoppel claim is permitted under ERISA." *Mauser v. Raytheon Co. Pension Plan for Salaried Employees*, 239 F.3d 51, 57 (1st Cir. 2001); *see also Senior v. NSTAR Elec. & Gas Corp.*, 372 F. Supp. 2d 159 (D. Mass. 2005). In *Mauser*, the First Circuit did not resolve plaintiff's equitable estoppel claim because it was virtually indistinguishable from plaintiff's claim that the plan's summary plan description violated ERISA's disclosure provisions. *Mauser*, 239 F.3d at 58. Because ERISA already established an avenue for relief for reliance on an inadequate plan summary, the court held a more general claim for equitable estoppel did not exist. *Id.* Similarly, in *Senior*, the court dismissed plaintiff's equitable estoppel claim where it did not differ for a claim for benefits

under ERISA Section 502(a)(1)(B). *See Senior*, 372 F. Supp. 2d at 159.

Here, Plaintiff's Third Count requests the Court to preclude the Company from enforcing the terms of the Plan with respect to recovery of overpaid benefits.[5] Complaint ¶ 46. This claim is nothing more than a restatement of Plaintiff's claims that the Company breached its purported fiduciary duties by misinterpreting the Plan. Given the identical nature of Plaintiff's allegations with his fiduciary breach and benefit claims, no independent claim for equitable estoppel exists in the First Circuit. *Mauser*, 239 F.3d at 58 (a court should only create a new common law cause of action under ERISA "when there is, in fact, a gap in the structure of ERISA or in the federal common law relating to ERISA").[6]

**E. Because Denial of a Benefit Claim Alone Cannot Form the Basis of an ADA Claim, the Court Should Dismiss the Fourth Count**

To state a *prima facie* case of discrimination under the Americans with Disabilities Act ("ADA") a complaint must allege that the plaintiff: (1) suffers from a disability within the meaning of the Act; (2) was able to perform the functions of his or her job; and (3) suffered an adverse employment action because of that disability. *Feliciano v. State of Rhode Island*, 160 F. 3d 780, 784 (1st Cir. 1998). A *prima facie* case of retaliation under the ADA includes articulation that the plaintiff: (1) engaged in ADA protected conduct; (2) was thereafter subjected to an adverse action; and (3) that a casual connection exists between the protected conduct and the adverse action. *Benoit v. Technical Mfg. Corp.*, 331 F.3d 166, 177 (1st Cir. 2003). Thus, under either a discrimination or retaliation theory, the plaintiff must allege an adverse action.

As the Complaint alleges, under the Settlement, Plaintiff released any claim he had for discrimination or retaliation arising out of his employment. Complaint ¶ 19. The only new

---

5 As discussed in Section III.G., *infra,* Pitney Bowes is not the correct defendant to this claim even were it cognizable under the governing law.

6 Moreover, the Complaint does not state the requisite elements for equitable estoppel as it has developed in other circuits. Notably, Plaintiff's only claim of detrimental reliance is that "he relied upon [the miscalculated benefit amount] in deciding to accept LTD benefits, and in deciding to remain out of work on a medical leave of absence." Complaint ¶ 40. Under that rationale, Plaintiff is not Totally Disabled and, therefore, not entitled to any benefits at all. *See* Bianco Aff., Exh. A at Section 2.33 (defining Totally Disabled as unable to "perform the material duties of his or her own occupation").

action alleged to have occurred is the recalculation of Plaintiff's benefit entitlement under the Plan. Complaint ¶¶ 48-51. As a matter of law, a failure to provide benefits is not, in and of itself, disability discrimination. *Tompkins v. United Healthcare of New England, Inc.*, 203 F. 3d 90, 94 (1st Cir. 2001) (dismissing a complaint asserting ADA violations based on denial of benefits because the complaint contained no basis for alleged ADA violation other than fact of benefit denial itself). Because an allegation of wrongful refusal to provide benefits cannot, as a matter of law, support a claim for discrimination or retaliation under the ADA, the Court should dismiss Plaintiff's Fourth Count. *Id.*

**F. ERISA Preempts Plaintiff's Fifth and Sixth Counts for Retaliation and Discrimination in Violation of Rhode Island State Law**

Plaintiff's claims for retaliation and discrimination pursuant to Rhode Island's Fair Employment Practices Act and the Rhode Island Civil Rights Act are based on the same allegations supporting his other claims. *See, e.g,* Complaint at ¶¶ 31, 25, 46, 49, 54, 59. In sum, he claims the Company discriminated and retaliated against him by failing to pay him benefits under the Plan. Complaint ¶¶ 49, 54, 59. Because these discrimination and retaliation claims are founded entirely on Plaintiff's benefits from the Plan, these claims "relate to" the Plan within the meaning of ERISA's preemption provision and are thus preempted. *Ingersoll-Rand Co. v. McClendon,* 498 US 133, 139 (1990) (under a "'broad, common-sense meaning,' a state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect"); *Wadsworth v. Whaland,* 562 F.2d 70 (1st Cir. 1977) (finding "[t]he legislative history manifests that Congress intended to preempt all state laws that relate to employee benefit plans and not just state laws which purport to regulate an area expressly covered by ERISA").

**G. Pitney Bowes Is Not a Proper Defendant to Plaintiff's Ninth Count for Injunctive Relief**

Plaintiff's Ninth Count seeks "a preliminary and permanent injunction to restrain and enjoin the Defendant from seeking further recoupment of benefits until this entire matter is

resolved by this Court." Complaint ¶ 72. As discussed above, however, Pitney Bowes does not control the management or administration of the Plan. *See* Bianco Aff., Exh. A at Article 7. Moreover, Pitney Bowes does not pay benefits under the Plan. Following the terms of the Plan, the Company has established a Trust Fund, which is used for the exclusive purpose of providing disability benefits to participants and defraying reasonable expenses of administering the Plan. *Id.* at Section 6.1. Plan assets shall never inure to the benefit of the Company except to the extent permitted by ERISA. *Id.* Therefore, an injunction against the Company fails to state a claim upon which relief can be granted because any benefits payable under the Plan are payable from the Trust Fund. Because the Company does not control the Plan nor pay benefits under it, Plaintiff cannot state a claim against the Company by seeking an injunction to require payment of Plan benefits.

### H. The Court Should Strike Plaintiff's Demand for a Jury Trial

Given its founding in traditional trust law principles, ERISA does not provide for a jury trial. *Hampers,* 202 F. 3d at 54 (affirming district court decision striking plaintiff's jury demand because his claims were preempted by ERISA); *Canis v. Coca-Cola Enterprises, Inc.,* 49 F. Supp. 2d 73 (D.R.I. 1999) ("[t]his Court has long considered it settled that a plaintiff in an ERISA case is *not* entitled to a jury trial") (emphasis in original). As all of Plaintiff's claims are stated under or preempted by ERISA, the Court should strike Plaintiff's jury demand.

///

///

///

///

///

///

///

///

## IV. CONCLUSION

For the foregoing reasons, Pitney Bowes respectfully requests the Court dismiss Plaintiff's Complaint in its entirety.

Dated: July 11, 2005

By: [signature]

Thomas J. McAndrew
Thomas J. McAndrew & Associates
One Turks Head Place, Suite 205
Providence, RI 02903
Tel: (410) 455-0350

Nicole A. Diller (*admitted pro hac vice*)
Andrew C. Sullivan (*pro hac vice pending*)
Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Tel: (415) 442-1000

Attorneys for Defendant
Pitney Bowes, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on the 11 day of July, 2005, I caused the foregoing **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PITNEY BOWES INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** to be mailed to:

Noelle K. Clapham
Attorney at Law
24 Salt Pond Road, Suite A-8
South Kingstown, RI 02879

Robin A. Poirier

1-SF/7256765.3

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **STEPHEN HATCH,** | : | |
| **Plaintiff** | : | |
| | : | |
| **-v-** | : | **C.A. NO. 2005-155 (S)** |
| | : | |
| **PITNEY BOWES INC.** | : | |
| **Defendant** | : | |

**AFFIDAVIT OF BARBARA BIANCO RE DEFENDANT PITNEY BOWES INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

I, Barbara Bianco, having been duly sworn, state as follows:

1. I was employed at Pitney Bowes Inc. ("Pitney Bowes") from 1994 until July 2004. Beginning in 2001, I served as the Supervisor of Disability for Pitney Bowes' Disability Department. In this capacity, I had personal involvement in matters relating to the employee benefit plans sponsored by Pitney Bowes. While I retired from this position in July 2004, I continue to work with Pitney Bowes as a consultant.

2. Each of the facts stated in this affidavit is true, correct and within my personal knowledge or, if stated on information and belief, is true and correct to the best of my information and belief. If called upon as a witness, I could and would testify as to the truth of these statements.

3. Attached to this Affidavit as Exhibit A is a true and correct copy of the Pitney Bowes Inc. Long Term Disability Plan.

4. Attached to this Affidavit as Exhibit B is a true and correct copy of the August 7, 2003 letter sent to Plaintiff Stephen Hatch.

I declare under penalty of perjury that the foregoing is true and accurate.

Barbara Bianco

Barbara Bianco

Subscribed and sworn to before me this 11th day of July, 2005

Notary Public

JENINE P. MORSE
Notary Public in the State of New York
Qualified in Saratoga County No. [illegible]
My Commission Expires [illegible]