# EXHIBIT A

COPY

PITNEY BOWES INC.

LONG-TERM DISABILITY PLAN

As Amended and Restated Effective as of January 1, 1998

APPROVED BY EBC DECEMBER 1999

# PITNEY BOWES INC.
# LONG TERM DISABILITY PLAN
# INDEX


| ARTICLE | | PAGE |
|---|---|---|
| I. | Introduction | 1 |
| II. | Definitions | 2 |
| 2.1 | Absorbee | 2 |
| 2.2 | Affiliated Company | 2 |
| 2.3 | Annual Earnings | 2 |
| 2.4 | Base Plan | 2 |
| 2.5 | Board of Directors | 3 |
| 2.6 | Chief Executive Officer | 3 |
| 2.7 | Code | 3 |
| 2.8 | Committee | 3 |
| 2.9 | Company | 3 |
| 2.10 | Company Contributions | 3 |
| 2.11 | Compensation Limitation | 3 |
| 2.12 | Contract Employee | 3 |
| 2.13 | DSR Employee | 3 |
| 2.14 | Early Retirement | 3 |
| 2.15 | Effective Date | 3 |
| 2.16 | Employee | 3 |
| 2.17 | Employee Benefits Committee | 4 |
| 2.18 | Employer or Employers | 4 |
| 2.19 | Employment Probationary Period | 4 |
| 2.20 | ERISA | 4 |
| 2.21 | Leased Employee | 4 |
| 2.22 | Leave of Absence | 5 |
| 2.23 | Monthly Disability Income | 5 |
| 2.24 | Monthly Earnings | 5 |
| 2.25 | Normal Retirement Date | 5 |
| 2.26 | PBC Employees | 5 |
| 2.27 | PBC Supplemental Plan | 5 |
| 2.28 | Part-Time Employee | 5 |
| 2.29 | Participant | 5 |
| 2.30 | Qualifying Period | 5 |
| 2.31 | Pension Plan | 5 |
| 2.32 | Temporary Employee | 5 |
| 2.33 | Totally Disabled | 6 |
| 2.34 | Transitional Employment | 6 |
| 2.35 | Trust Fund | 6 |

| ARTICLE | | | PAGE |
|---|---|---|---|
| | 2.36 | Trustee | 7 |
| III. | Participation | | 8 |
| | 3.1 | Eligibility | 8 |
| | 3.2 | Plan Participation Elections | 8 |
| | 3.3 | Actively at Work | 8 |
| | 3.4 | Termination of Participation | 8 |
| | 3.5 | FMLA Leave | 9 |
| IV. | Contributions | | 10 |
| | Company and Participant Contributions | | 10 |
| V. | Monthly Disability Income | | 11 |
| | 5.1 | Amount of Monthly Disability Income | 11 |
| | 5.2 | .Commencement and Duration | 11 |
| | 5.3 | Proof of Disability | 12 |
| | 5.4 | Conditions of Receiving Benefits | 12 |
| | 5.5 | Manner of Payment | 13 |
| | 5.6 | Other Monthly Income Benefits | 13 |
| | 5.7 | Suspension or Discontinuance of Monthly Disability Income | 14 |
| | 5.8 | Exclusions | 14 |
| | 5.9 | Rehabilitative Training | 15 |
| | 5.10 | Recurrent Disability | 15 |
| | 5.11 | Transitional Employment | 16 |
| | 5.12 | Back-to-Work Program | 16 |
| | 5.13 | Eligibility and Application for Social Security Disability Benefits | 16 |
| VI. | Trust Fund and Plan Contributions | | 18 |
| | 6.1 | Trust Agreement and Trust Fund | 18 |
| | 6.2 | Contributions | 18 |
| | 6.3 | Appointment of Investment Manager | 18 |
| | 6.4 | VEBA Trust Fund | 18 |
| VII. | Employee Benefits Committee | | 19 |
| | 7.1 | The Committee | 19 |
| | 7.2 | Committee Procedure | 19 |
| | 7.3 | Plan Expenses | 19 |

| ARTICLE | | PAGE |
|---|---|---|
| | 7.4 Actions and Determinations of Responsible Parties | 19 |
| | 7.5 Powers and Duties of Employee Benefits Committee | 19 |
| | 7.6 Plan Administrator | 20 |
| | 7.7 Claims Denial and Appeal Procedure | 20 |
| | 7.8 Fiduciary Duties | 21 |
| VIII. | Amendment and Termination of the Plan | 22 |
| | 8.1 Amendment or Modification | 22 |
| | 8.2 Termination | 22 |
| IX. | General Provisions | 23 |
| | 9.1 Uniform Administration | 23 |
| | 9.2 Source of Payment | 23 |
| | 9.3 Non-Assignability and Facility of Payment | 23 |
| | 9.4 Headings | 23 |
| | 9.5 Employer Accounts | 23 |
| | 9.6 Sub-Plan Accounts | 23 |
| | 9.7 Use of Pronouns | 24 |
| | 9.8 Construction | 24 |
| | 9.9 Recovery of Benefits | 24 |
| | 9.10 Subrogation | 24 |
| | 9.11 Company or Board Action | 24 |
| | 9.12 Participating Employer | 24 |
| APPENDIX A | | 25 |

ARTICLE ONE

INTRODUCTION

The Pitney Bowes Inc. Long-Term Disability Plan has been amended and restated from time to time. The Plan was most recently restated in 1990 and has subsequently been amended from time to time. This current Plan restatement and amendment shall generally be effective as of January 1, 1998 (the "Effective Date"). Any benefits in pay status or disabilities incurred prior to such Effective Date shall be subject to the terms and provisions of such restated and amended Plan as of the Effective Date, notwithstanding that such benefits were previously payable or incurred under the terms and provisions of the prior plan, unless otherwise indicated. Except as may be specified herein, the prior plan restatement (and amendments) is superseded in its entirety by this Plan restatement.

The Plan is intended to provide a limited wage replacement benefit for Employees who incur a mental or physical injury or illness arising from non-occupational causes, as specified herein. Employees who incur an occupational mental or physical injury or illness shall not be covered by the Plan. As of January 1, 1999, the Plan shall provide supplemental benefit coverage on an elective basis through the PBC Supplemental Plan for a "select group of key management or highly compensated employees."

The Company has established a trust fund which is qualified under Section 501(c)(9) of the Code into which employer contributions for the benefits based on annual compensation not in excess of the Compensation Limitation may (but are not required to) be made for the purpose of funding benefit obligations under the Base Plan. In addition, the Company has established a trust fund into which employee contributions under the Base Plan for benefits based on annual compensation in excess of the Compensation Limitation and for benefits under the PBC Supplemental Plan (irrespective of the level of annual compensation on which benefits are based) shall be made. Employer contributions under the PBC Supplemental Plan (irrespective of the level of annual compensation on which benefits are based) may be held in a trust fund at the Company's discretion.

## ARTICLE TWO

## DEFINITIONS

Wherever used herein, unless the context clearly indicates otherwise, the following words and phrases shall have the respective meanings hereinafter set forth in this Article Two.

2.1 "Absorbee" shall mean any Employee whose employment with a Participating Employer commences in connection with an acquisition or other corporate transaction.

2.2 "Affiliated Company" shall mean the Company and any company, trade or business unit that is (a) a member of a controlled group of corporations, within the meaning of Code Section 414(b), that includes the Company; (b) under common control, within the meaning of Code Section 414(c), with the Company; or (c) a member of an affiliated service group, within the meaning of Code Section 414(m), that includes the Company.

2.3 "Annual Earnings" shall mean actual annual earnings paid to the Employee, including base pay, incentive pay, bonuses, commissions, overtime and merit pay but excluding such payments as severance pay, stock options, sign-on bonuses, suggestion awards and prizes, adoption payments, relocation payments, expense reimbursements and long-term cash incentive unit payments. Earnings also include compensation that is not currently included in the Employee's gross income by reason of the application of Sections 125, 132(a) (qualified transportation expenses), 401(k) or 402(h)(I)(B) of the Code. The annual earnings amount shall be the higher of (a) or (b) below:

(a) The higher earnings of either of the last two (2) full calendar years prior to the date of Total Disability; and

(b) The highest average annual earnings for any five (5) consecutive calendar years of employment prior to the date of Total Disability.

For any Employee who has not been employed on a full-time basis during a full calendar year period as of the date of Total Disability, Annual Earnings shall mean the Employee's total earnings, as described above, for the full period of employment prior to the date of Total Disability divided by the number of months of employment with an Employer.

2.4 "Base Plan" shall mean the provisions of the Plan under which Monthly Disability Income shall be based on Monthly Earnings without regard to the Compensation Limitation.

2.5 "Board of Directors" shall mean the Board of Directors of Pitney Bowes Inc.

2.6 "Chief Executive Officer" shall mean the Chief Executive Officer of Pitney Bowes Inc., or his delegate.

2.7 "Code" shall mean, the Internal Revenue Code of 1986, as amended.

2.8 "Committee" shall mean the Employee Benefits Committee of Pitney Bowes Inc.

2.9 "Company" shall mean Pitney Bowes Inc., (or any successor by merger, purchase or otherwise).

2.10 "Company Contributions" shall mean Employee and Employer Contributions made by the Company to the Trust Fund.

2.11 "Compensation Limitation" shall mean the annual dollar limitation imposed by Section 401(a)(17)(B) of the Code, as adjusted pursuant to relevant Code provisions and regulations.

2.12 "Contract Employee" shall mean an employee who is hired to perform service for the Company or an Employer and whose employment terms are reflected in a written agreement specifying that his or her employment shall relate to a particular project or job.

2.13 "DSR Employee" means an employee who functions at the district level and whose job responsibilities are primarily limited to inspection, maintenance, delivery and pickup of meters, collection of customer accounts payable, and maintenance of the metered mail system under statutory requirements.

2.14 "Early Retirement" shall mean the attainment of age 55 and the completion of at least 10 years of Company service under the Pension Plan.

2.15 "Effective Date" shall be the date this amended and restated Plan is effective, which shall be January 1, 1998.

2.16 "Employee" shall mean any regular full-time employee of an Employer who receives regular Monthly Earnings from the Employer. The term "Employee" does not include the following:

(a) Leased Employees;

(b) Temporary Employees;

(c) Part-Time Employees;

(d) Contract Employees;

(e) Independent Contractors; and

(f) DSR Employees.

The term "Employee" shall not include any employee of a subsidiary substantially all the operations of which are outside the United States unless United States Social Security contributions are made on behalf of such Employee. An Employee shall be considered full-time if he or she regularly works 30 or more hours per week.

For purposes of determining an individual's eligibility to participate in the Plan, an individual who is an independent contractor and is reclassified by the Employer, any governmental agency or a court as an employee for any purpose, including for purposes of employment taxes and wage withholding for Federal income taxes, shall not be eligible for participation in the Plan for the period during which such individual was an independent contractor. Subsequent participation in the Plan by a reclassified employee shall be based on eligibility requirements under the Plan then applicable to the employee.

2.17 "Employee Benefits Committee" shall mean the Employee Benefits Committee of Pitney Bowes Inc. or the "Committee".

2.18 "Employer" or "Employers" means the Company and any Affiliated Company that adopts the Plan in the manner provided in Section 9.12 hereof. Notwithstanding the foregoing, specific divisions, employee groups, lines of business, subsidiaries, business units, plants, business facilities or other operations or employee groups may be excluded from participation in the Plan, or alternatively the participation of any or all of the foregoing may be limited or modified in the absolute discretion of the Chief Executive Officer or the Employee Benefits Committee. A list of Employers is set forth in Appendix A attached hereto.

2.19 "Employment Probationary Period" shall mean the initial 90 days of employment or any extended period as determined by the Employee's supervisor, Human Resources Department or business unit policy.

2.20 "ERISA" means the Employee Retirement Income Security Act of 1974 as amended from time to time and regulations issued pursuant thereto.

2.21 "Leased Employee" shall mean any individual who meets the definition of "Leased Employee" under Section 414(n)(2) of the Internal Revenue Code of 1986, as amended.

2.22 "Leave of Absence" shall mean an approved absence from active employment with the Employer under conditions which are not treated as a termination of employment, such as an unpaid leave of absence, leave of absence under applicable state law, or uncompensated disability medical leave. The term also includes a leave of absence required by law or granted by the Employer on account of service in the United States Armed Forces, which includes branches of military or governmental service described in any applicable statute granting re-employment rights to employees who enter such branches of military or governmental service, or any military or governmental service designated by the Company.

2.23 "Monthly Disability Income" shall mean the monthly benefit payment provided under Article Five of the Plan to Participants qualifying for benefit payments hereunder.

2.24 "Monthly Earnings" shall mean one-twelfth (1/12) of Annual Earnings.

2.25 "Normal Retirement Date" shall mean the Participant's normal retirement date, as such date is defined in the Pension Plan.

2.26 "PBC Employees" shall mean Employees who participate in the Company's Performance-Based Compensation Program, including "PBC-like" Employees.

2.27 "PBC Supplemental Plan" shall mean the provisions of the Plan under which Monthly Disability Income is provided to PBC Employees who have elected to participate under Section 3.2(b) of the Plan.

2.28 "Part-Time Employee" shall mean any employee who regularly works less than 30 hours per week.

2.29 "Participant" shall mean any Employee who has satisfied the eligibility requirements for coverage hereunder as set forth in Article Three or who is currently receiving benefits from the Plan.

2.30 "Qualifying Period" shall mean, with respect to a Participant, a period beginning on the first day of Total Disability and ending on the last day of the month following the completion of 22 weeks of Total Disability.

2.31 "Pension Plan" shall mean the Pitney Bowes Pension Plan as amended from time to time, or the pension plan of an Employer in which the Employee participates.

2.32 "Temporary Employee" shall mean an employee whose employment with an Employer is intended to be for a period not to exceed 12 months and whose work activity consists of short-term projects other than as a Contract Employee.

2.33 "Totally Disabled" or "Total Disability" shall mean that the Participant is unable:

(a) (i) to perform the material duties of his or her own occupation for a maximum period of twelve (12) months after the Qualifying Period, and (ii) that thereafter the Participant is unable, because of injury or illness, to engage in any gainful occupation or profession for which he is, or could become, reasonably suited by education, experience, or training; provided, however, that the amount of earnings that the Participant would receive from engaging in such occupation or profession would be less than sixty percent of the Participant's annual or annualized earnings immediately prior to the event giving rise to the Total Disability.

(b) For Participants who have elected the PBC Supplemental Plan, Total Disability shall be determined exclusively under Section 2.33(a)(i) without regard to the twelve-month maximum period and without regard to Section 2.33(a)(ii).

(c) The determination of whether the Participant is Totally Disabled from any occupation or profession under Section 2.33 (a)(ii) will be made without regard to (i) whether such occupation or employment exists in the geographic area in which the Employee resides, (ii) whether a specific vacancy in such occupation or employment exists, and (iii) whether an Employee is likely to be hired if he or she applied for such occupation or employment. For purposes of the Plan, the "date of Total Disability" shall be considered to be the date as of which the Employee is determined to be Totally Disabled.

2.34 "Transitional Employment" shall mean any employment of the Participant which has been pre-approved by the Disability Department and which is intended to assist the Participant in resuming his or her own occupation or

job (or any occupation or job for which the Participant could reasonably be trained) during a period when the Participant meets the definition of Totally Disabled. Such Transitional Employment shall not be limited to employment with an Employer and is not a right the Participant has independent of the decision of the Disability Department.

2.35 "Trust Fund" shall mean the fund or funds of cash and securities and other interests held in trust by the Trustees on behalf of the Plan resulting from Company Contributions, the income from investments made by the Trustees and other funds received in any manner whatsoever by the Trustees, less payments of expenses and of benefits to Participants made in accordance with the terms of this Plan.

2.36 "Trustee" shall mean one or more trustees, as appointed by the Company, at any time acting as such under the trust agreement between the Company and the Trustee.

ARTICLE THREE

PARTICIPATION

3.1 Eligibility - Each Employee shall become a Participant of the Plan on the first day following the completion of the Employment Probationary Period provided that he is then Actively at Work, as defined in Section 3.3; otherwise, the Employee shall become a Participant on the first day thereafter when he is Actively at Work for the Employer. Notwithstanding the foregoing, an Employee who is an Absorbee may commence participation in the Plan on any day during the first 90 days of employment if the Committee or its delegate so determines.

3.2 Plan Participation Elections

(a) Base Plan. Subject to Section 3.1, each Employee shall automatically commence participation in the Base Plan; provided, however, that a PBC Employee shall be considered to have elected out of the Base Plan upon election of the PBC Supplemental Plan. The PBC Supplemental Plan shall be effective as of January 1, 1999.

(b) PBC Supplemental Plan. Subject to Section 3.1, each PBC Employee who elects to make the required employee contributions shall participate in the PBC Supplemental Plan.

3.3 Actively at Work - An Employee is considered Actively at Work if, when he is so required, he is physically able to be at his assigned or required work location or at another approved work location performing assigned duties for which he is being compensated; provided, however, an Employee will be considered Actively at Work during any paid holidays, an approved leave of absence under the Family and Medical Leave Act of 1993 or approved vacation days. Notwithstanding the foregoing, if an Employee has terminated employment or is Totally Disabled at the time a subsequent Total Disability occurs, he or she shall not be entitled to coverage under this Plan for the subsequent disability. An Employee who is on a Leave of Absence is not considered Actively at Work. Once an Employee becomes a Participant, benefit coverage under the Plan shall continue if the Participant subsequently takes a Leave of Absence, subject to Section 3.4(h) hereof.

3.4 Termination of Participation - A Participant's coverage under the Plan shall terminate on the earliest to occur of the following events:

(a) the date on which the Participant terminates employment with an Employer, as determined by the Employer;

(b) the date on which the Participant retires;

(c) the date on which a Participant no longer satisfies the definition of Employee, including transfer to a company not participating in the Plan;

(d) the date the Plan terminates or the Employer terminates its participation in the Plan;

(e) as to the optional 66-2/3% of Monthly Earnings benefit level, or the PBC Supplemental Plan, the date on which the Participant ceases to make contributions to the Plan;

(f) the date on which occurs any of the circumstances set forth in Section 5.7 and 5.8 hereof;

(g) the date that it is determined that the Participant has submitted fraudulent or false information or data or has made material misstatements or omissions regarding eligibility or a claim for benefits;

(h) with respect to a Participant on a Leave of Absence, the last day of the Leave of Absence but not later than the last day of the three month period commencing on the first date of the Leave of Absence; provided, however, that coverage under the Plan shall terminate immediately upon the commencement of the Leave of Absence for a Participant whose leave is due to the termination, suspension or discontinuance of disability benefits under the Plan and who does not immediately return to work at the Employer; or

(i) the date on which the Employee fails or refuses to provide the Disability Department with his or her current mailing address or telephone number, or otherwise inform the Disability Department of his or her whereabouts.

3.5 <u>FMLA Leave.</u> Notwithstanding anything to the contrary herein, an Employee who takes a leave of absence under the Family Medical Leave Act of 1993 for any reason shall be entitled to coverage (but not necessarily benefits) hereunder commencing on the date the FMLA leave begins and such coverage shall continue under the Plan as in effect immediately prior to the date the FMLA leave begins for the duration of the FMLA leave, but not longer than twelve (12) weeks. Coverage will be provided at no premium cost to the Employee unless the higher benefit amount of 66-2/3%

of Monthly Earnings has been previously elected or the Participant has elected the PBC Supplemental Plan in which case the Employee will be required to pay the appropriate premium to continue coverage during the FMLA leave.

# ARTICLE FOUR

## CONTRIBUTIONS

Company and Participant Contributions - The Company may make contributions to the Trust Fund from time to time, while the Plan is in effect, in such amounts as are actuarially deemed necessary to provide the Monthly Disability Income equal to 50% of the Participant's Monthly Earnings set forth in Article Five. In the event a Participant elects coverage equal to 66-2/3% of the Participant's Monthly Earnings, or the PBC Supplemental Plan, the additional cost of such benefit shall be paid by the Participant in the form and manner prescribed by the Employee Benefits Committee. The Company shall contribute employee contributions to the Trust Fund. Notwithstanding anything to the contrary herein, any Employee who is Totally Disabled during an open enrollment period may not elect the 66-2/3 level of coverage, or the PBC Supplemental Plan during such open enrollment period.

Effective February 3, 1997, all employee contributions under the Plan shall be made to the Trust Fund as soon as practicable but in any case within 15 business days of the last day of the month in which such amounts would otherwise have been payable in cash to the Participant.

## ARTICLE FIVE

## MONTHLY DISABILITY INCOME

5.1 Amount of Monthly Disability Income - The amount of Monthly Disability Income payable hereunder to a Participant depends on whether the Participant is covered under the Base Plan or the PBC Supplemental Plan.

(a) Base Plan. A Participant who participates in the Base Plan pursuant to Section 3.2(a) hereof and who is Totally Disabled under Section 2.33(a) hereof shall receive Monthly Disability Income in an amount equal to the excess, if any, of (a) over (b) where: (a) equals 50% of the Participant's Monthly Earnings or in the alternative 66-2/3% of the Participant's Monthly Earnings if elected by the Participant in accordance with the appropriate procedure established by the Company and (b) equals the aggregate of any "Other Monthly Income Benefits," as defined in Section 5.6.

(b) PBC Supplemental Plan. Effective January 1, 1999, a PBC Employee who has elected to participate in the PBC Supplemental Plan pursuant to Section 3.2(b) hereof and who is determined to be Totally Disabled under Section 2.33(b) hereof shall receive Monthly Disability Income in an amount equal to the excess, if any, of (a) over (b) where: (a) equals 50% of the Participant's Monthly Earnings, or in the alternative 66-2/3% of the Participant's Monthly Earnings if elected by the Participant in accordance with the appropriate procedure established by the Company and (b) equals the aggregate of any "Other Monthly Income Benefits," as defined in Section 5.6 hereof.

5.2 Commencement and Duration - If a Participant has satisfied his or her Qualifying Period, he or she shall be paid a Monthly Disability Income, commencing with the first day of the first month following the last day of his Qualifying Period. Subject to other conditions in the Plan, the Participant shall be entitled to receive Monthly Disability Income thereafter until the earliest of:

(a) the date he/she is no longer Totally Disabled;

(b) the death of the Participant;

(c) the Participant's election to retire on or after attainment of his or her Early Retirement Date but prior to age 65 if the Participant became Totally Disabled prior to the Participant's attainment of age 60;

(d) Normal Retirement Date if the Participant became Totally Disabled prior to the Participant's attainment of age 60 and the Employee does not elect to retire on his or her Early Retirement Date;

(e) five years from the date that Monthly Disability Income commenced or age 70, whichever is earlier, if the Participant became disabled after attainment of age 60 but before attainment of age 69; or

(f) twelve (12) months if the Participant became Totally Disabled on or after attainment of age 69.

5.3 Proof of Disability - In accordance with the terms of the Plan and any administrative procedures approved by the Employee Benefits Committee, a Participant shall be required to submit initially and from time to time whatever proof or documentation the Disability Department may require (either directly to itself or to an independent review organization retained by the Disability Department for this purpose), including the medical records and medical analysis of one or more duly qualified physicians or clinical psychologists as evidence of Total Disability and of the continuation of such Total Disability; and, in the case of a Participant Totally Disabled during the first year of participation in the Plan, proof that the disability resulted from a condition other than one for which the Participant received medical treatment or advice during the twelve (12) month period preceding the Participant's date of employment.

5.4 Conditions of Receiving Benefits - In addition to the foregoing, the payment of benefits under the Plan is subject to the following:

(a) An Employee must support his or her initial claim for benefits by submitting, in a form and manner determined by the Disability Department, written proof substantiating the occurrence, character and extent of the disability before the expiration of the one year period commencing on the date of Total Disability. Thereafter, as requested by the Disability Department from time to time, the Employee may be required to submit conclusive medical evidence of the continuance of his or her Total Disability. As a condition to the payment of benefits under the Plan, the Disability Department shall have the right to direct such employee to submit from time to time to an independent medical examination by a licensed or board certified physician or clinical psychologist designated by the Disability Department and/or follow a prescribed treatment program.

(b) An Employee must be under the continuous care of a physician or clinical psychologist who, with respect to the Employee's disability,

is practicing within the scope of his or her license, and must be under a defined course of treatment appropriate for the Employee's disability.

(c) An Employee must satisfactorily sign and return all forms and agreements required by the Disability Department.

5.5 Manner of Payment - Disability payments shall be paid at the end of each calendar month during the period for which Monthly Disability Income is payable. Disability payments payable for a period of less than a full month shall be computed on a pro-rata basis using 30 days in a month.

5.6 Other Monthly Income Benefits - For the purposes hereof, Other Monthly Income Benefits shall mean the following:

(a) any amount payable under any state or federal Workers' Compensation law, employer's liability, or similar law;

(b) any primary Social Security benefits payable under the Federal Social Security Act (less any legal fees the Employee has incurred to secure Social Security benefits); any wage continuation benefits payable under any other national, state, or municipal law or regulation, to which the Employer has directly contributed through taxes or otherwise; notwithstanding the foregoing, the amount of a Participant's benefit hereunder shall not be reduced by any increase in the benefits payable under the Federal Social Security Act made effective after commencement of payment of disability benefits hereunder, so long as the Plan remains in force;

(c) any other payments for disability, compensation, severance, life insurance or death benefits toward which the Company has made contributions, or paid premiums or taxes under the provision of any law or pension scheme of any sovereign government;

(d) any retirement benefit under an Employer-sponsored program or a program to which the Employer has contributed, including Social Security retirement income;

(e) income from any Employer, or from any occupation for compensation or profit, but not income received while working in Transitional Employment (except as specifically described in Section 5.11 hereof);

(f) unemployment or compensation benefits; and

(g) no-fault wage replacement benefits required in policies or contracts by a motor vehicle law.

Any single sum amounts and any amounts payable on a basis other than monthly shall be allocated by the Disability Department in its sole discretion to monthly periods.

5.7 Suspension or Discontinuance of Monthly Disability Income - Notwithstanding anything construed in this Plan to the contrary, the Monthly Disability Income payable to a Participant may be suspended or discontinued if the Participant:

(a) refuses to receive treatment, be examined by his or her own physician or clinical psychologist or an independent examiner approved the Disability Department or follow a reasonable course of treatment for his disability which is mandated by the Disability Department;

(b) refuses to report for vocational or rehabilitation assessment as mandated by the Disability Department;

(c) refuses a reasonable offer of employment for which he is reasonably suited and which is intended to be a rehabilitative benefit under the Plan;

(d) refuses to attend an independent medical examination which is scheduled within a reasonable distance from the Participant's primary residence or for which the Company has made reasonable arrangements for the Participant to attend;

(e) is no longer Totally Disabled;

(f) fails to provide proof of Total Disability in a manner and form acceptable to the Employee Benefits Committee or the Disability Department;

(g) dies;

(h) engages in activities that would be cause for termination if the Participant were an active Employee, including threats of workplace violence; or

(i) fails or refuses to provide the Disability Department with his or her current mailing address or telephone number, or otherwise inform the Disability Department of his or her whereabouts.

5.8 Exclusions - Notwithstanding anything contained in this Plan to the contrary, no Monthly Disability Income shall be payable to a Participant if it is determined that such Participant's Total Disability:

(a) commenced during the first year of participation in the Plan and was caused by a condition that existed prior to the Participant's date of employment and for which condition the Participant received medical advice or treatment during the twelve (12) month period preceding such date of employment;

(b) commenced prior to the date that active coverage ceased but the claim for which was submitted after twelve (12) months following the date that coverage ceased;

(c) was due to intentionally self-inflicted injuries;

(d) resulted from the commission or attempted commission by the Employee of a crime;

(e) was due to war or any act of war (whether war was declared or not);

(f) was caused to any extent by chronic alcoholism or the use of narcotics, barbiturates, or hallucinogenic substances, except to the extent the Employee is a "qualified individual with a disability" as defined in the Americans with Disabilities Act and regulations under the Act;

(g) resulted from cosmetic surgery;

(h) cannot be verified to the satisfaction of the Disability Department because the Employee fails to undergo or complete one or more independent medical exams with a licensed physician or clinical psychologist prescribed by the Committee;

(i) occurred prior to the date on which coverage commenced under the Plan; or

(j) was due to occupational or work-related injury or illness.

5.9 Rehabilitative Training - In its sole and exclusive discretion, the Disability Department may approve reimbursement of vocational retraining expenses that are intended to return the Participant to his or her own occupation or some other occupation for which he or she may be reasonably trained; provided, however, that any such vocational retraining expenses approved hereunder shall not exceed $3,500 and shall not relate to a retraining period of more than six (6) months.

5.10 Recurrent Disability - If, following a period of Total Disability, a Participant resumes a status of Actively at Work, as defined in Section 3.3 hereof for a continuous period of six (6) months or more, any subsequent Total Disability resulting from the same cause or causes is considered a new period of Total Disability; however, if such period is less than six (6) months, such subsequent Total Disability shall be deemed a continuation of the same Total Disability. A Participant shall be considered continuously Actively at Work unless his or her periods of active employment with the Company are separated by at least 30 consecutive work days. For purposes of this 30 consecutive work days requirement, the Participant shall be considered to have completed one "work day" if the Participant performs any duties for the Employer during any portion of a work day.

5.11 Transitional Employment - A Participant who is, as a result of injury or illness, unable to perform the duties of his own occupation (or any occupation or job for which the Participant could reasonably be trained) may be permitted to engage in Transitional Employment. Earnings from Transitional Employment shall be an offset to Monthly Disability Income in the amount of 50% of such earnings from Transitional Employment; provided however that the Disability Department shall have authority to increase or decrease such offset by an amount or percentage which it may in its sole discretion determine.

5.12 Back-to-Work Program - The Employee Benefits Committee may in its sole and exclusive discretion implement a comprehensive back-to-work program under the Plan on such terms and conditions and in such manner as the Committee may determine. At the administrative level, the Disability Department may follow a back-to-work approach in order to assist Employees in returning to work at the earliest possible date.

5.13 Eligibility and Application for Social Security Disability Benefits -

(a) At the time an Employee files a claim for benefits hereunder, and as a condition of receiving benefits under the Plan, the Employee is required to apply for disability benefits under the Social Security Act in the time and manner prescribed by the Disability Department. The Employee

must timely appeal initial and reconsideration level denials, follow all Social Security Administration procedures, participate (in person or through a representative) in a hearing before an administrative law judge, furnish the Committee with proof of application and copies of all notices, forms and letters received from and furnished to the Social Security Administration, including the letter or letters awarding benefits, and execute a Consent of Release of Information form (or form of similar import) allowing the Disability Department to receive disability information on the Employee from the Social Security Administration. As a condition of receiving benefits under the Plan, the Employee must execute a Reimbursement Agreement in which the Employee agrees in writing to reimburse the Plan an amount equal to any overpayment of benefits under the Plan due to a retroactive award of federal Social Security benefits (disability or retirement).

(b) If an Employee fails to follow the provisions of this Section 5.13 regarding application for Social Security benefits, the Monthly Disability Income under the Plan will be calculated on the assumption that the Employee has applied for Social Security benefits under the federal Social Security Act, and the Disability Department will estimate Social Security benefits payable as Other Disability Income when determining the maximum monthly benefit payable under the Plan. If an Employee follows the provisions of the Plan regarding application for Social Security benefits, such benefits will not be considered Other Disability Income until actually awarded. When Social Security benefits are actually awarded, an adjustment will be made to reflect the award of Social Security benefits. Any overpayment of Plan benefits due to periods of disability preceding the award of Social Security benefits shall be repaid to the Plan by the Employee in a lump sum within thirty (30) days of the date the Employee is notified in writing of the amount of such overpayment. If the Employee fails to reimburse the Plan in a lump sum as required, the Disability Department may reduce or suspend future benefits from this Plan until the Plan has received the amount of benefits overpaid by reason of any retroactive Social Security benefit award. Any overpayment of benefits hereunder due to the Employee's failure to notify the Disability Department of the awarding of Social Security benefits may be recouped by the Company, even if the Employee is no longer an employee of the Company.

(c) The determination whether an Employee is eligible for disability payments under the State or Federal Social Security Act is not determinative of eligibility for benefits under the Plan. The Disability Department and the Employee Benefits Committee are not in any

**respect bound by the decision of the State or Federal Social Security Administration.**

ARTICLE SIX

TRUST FUND AND PLAN CONTRIBUTIONS

6.1 Trust Agreement and Trust Fund. The Company shall establish one or more Trust Funds and shall enter into one or more Trust Agreements providing for the administration of the Trust Fund, in such form and containing such provisions as the Company may deem appropriate. The principal and income of the Trust Fund shall be held and used for the exclusive purpose of providing the disability benefits hereunder to Participants and of defraying reasonable expenses of administering the Plan not paid directly by the Company; and the assets of the Plan shall never inure to the benefit of the Company except to the extent permitted by ERISA.

6.2 Contributions. The Company shall make such contributions to the Trust Fund as may be determined by the Employee Benefits Committee. All Company Contributions are voluntary, and the Company reserves the right to discontinue, suspend, or change the rate and amount of any and all Company Contributions for any reason at any time. The rate of any and all contributions by Participants in the Plan shall be set by the Company or the Employee Benefits Committee.

6.3 Appointment of Investment Manager. An investment manager or managers may be appointed to manage, acquire, or dispose of any assets of the Plan on such terms and conditions as may be appropriate pursuant to the Trust Agreement and ERISA.

6.4 VEBA Trust Fund. The Company may establish a voluntary employees' beneficiary association trust pursuant to Section 501(c)(9) of the Code ("VEBA Trust"). All Employee contributions with respect to benefits to be provided under the Base Plan based on annual compensation not in excess of the Compensation Limitation shall be made to the VEBA Trust. Employee contributions with respect to benefits to be provided under the Base Plan based on annual compensation in excess of the Compensation Limitation and with respect to the PBC Supplemental Plan shall be contributed to a trust fund other than a VEBA Trust. Employer contributions to the Base Plan for benefits based on annual compensation not in excess of the Compensation Limitation may (but are not required to be) made to the VEBA Trust. Employer Contributions under the Base Plan for benefits based on annual compensation in excess of the Compensation Limitation and Employer contributions under the PBC Supplemental Plan may be contributed to a non-VEBA Trust at the discretion of the Company.

## ARTICLE SEVEN

## EMPLOYEE BENEFITS COMMITTEE

7.1 The Committee - Employee Benefits Committee shall be responsible for the general administration of the Plan and for carrying out the provisions thereof. The Employee Benefits Committee shall have powers necessary to enable its members to properly carry out their duties, subject at all times to the limitations and conditions specified in or imposed by the Plan. The Employee Benefits Committee has delegated ongoing, day-to-day administrative responsibility under the Plan to the Pitney Bowes Disability Department and the Benefits Department.

7.2 Committee Procedure - The Employee Benefits Committee shall be authorized to adopt administrative rules and procedures concerning the Plan or delegate to the Disability Department and Benefits Department such authority and any such rules and procedures shall be binding upon Participants.

7.3 Plan Expenses - All expenses reasonably incurred in the administration of the Plan shall be paid by the Trust Fund unless paid by the Company as the Company shall determine in its sole discretion.

7.4 Actions and Determinations of Responsible Parties - The determination or action of the Employee Benefits Committee with respect to any question arising out of or in connection with the administration of the Plan shall, to the extent not inconsistent with the provisions of the Plan, be final, conclusive, and binding upon all persons having an interest in the Plan.

7.5 Powers and Duties of Employee Benefits Committee - The Employee Benefits Committee shall have the following powers and duties concerning the Plan:

(a) to appoint and remove the Plan's actuary and, with the advice and counsel of the actuary, to establish a funding policy and method consistent with the objectives of the Company and the requirements of ERISA, and to determine the amounts of the Employer and Employee contributions to be made to the Trust Fund under the terms of the Plan;

(b) to interpret and construe the terms and provisions of the Plan, to apply such terms and provisions as the Committee may exclusively determine, to determine questions of eligibility and of the status and rights of Participants;

(c) to make and enforce such rules and regulations as it shall deem necessary or proper for the efficient administration of the Plan;

(d) to delegate to the Disability Department at Pitney Bowes such powers and duties to enable it to administer the Plan; and

(e) to delegate to the benefits committee of a particular Employer, any of the powers and duties described herein for the purpose of administering the Plan as it pertains to Participants who are Employees of the Employer.

7.6 Plan Administrator - The Employee Benefits Committee shall be the "Plan Administrator" of the Plan for purposes of ERISA. However, the Employee Benefits Committee has delegated to the Disability Department the day-to-day, on-going administrative responsibilities of the Plan. In addition, the Employee Benefits Committee has delegated to the Benefits Department of Pitney Bowes Inc. administrative responsibility regarding Employee enrollment in the Plan, including developing and implementing procedures and practices on the election of coverage hereunder and the levels of coverage offered to Employees. It is intended that neither the Disability Department nor the Benefits Department shall have discretion such that individuals performing services in these Departments with respect to the Plan would be considered to be "fiduciaries" within the meaning of Section (3)(21) of ERISA. The Disability Department shall mean the department at Pitney Bowes Inc. having responsibility for the administration of the Company's disability program. The Disability Department shall not prescribe a treatment program for Employees regarding their return to work but rather shall work with practitioners to develop suitable and appropriate treatment regimens.

7.7 Claims Denial and Appeal Procedure - In accordance with ERISA and regulations thereunder, the Disability Department shall provide notice in writing to any person whose claim for benefits under the Plan has been denied as follows:

(a) The Disability Department will provide a written notification of the denial to the Participant within 90 days from the date the claim is filed. The written notification shall include the reasons for the denial based on specific plan provisions, additional information required to perfect the claim for an appeal and an explanation of the claim appeal procedure.

(b) Within 90 days of receipt of the denial, the Participant may submit a written request for appeal of the denied claim to the Employee Benefits Committee. The written appeal must be accompanied by any additional documents or records which support the claim.

(c) The Employee Benefits Committee will provide the Participant within 60 days after receipt of the appeal a written response to the appeal explaining the reasons for the Employee Benefits Committee's decision, based on specific Plan provisions. The Employee Benefits Committee may take an additional 60 days to decide the appeal if circumstances so warrant.

7.8 Fiduciary Duties - All fiduciaries shall discharge their duties with respect to the Plan solely in the interest of the Participants and for the exclusive purpose of providing benefits to Participants and of defraying reasonable expenses of administering the Plan, with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. The Company shall purchase and maintain liability insurance (which insurance shall not permit recourse against the insured parties), with scope of coverage and limits of liability sufficient to protect the fiduciaries from monetary liability for any breach of their responsibilities not resulting from their own gross negligence or willful misconduct.

## ARTICLE EIGHT

## AMENDMENT AND TERMINATION OF THE PLAN

8.1 Amendment or Modification - The Company or the Employee Benefits Committee reserves the right to modify, alter, or amend the Plan in any respect at any time to any extent that it may deem advisable. Any modification, alteration or amendment shall be effective as of such date as determined by the Company or the Employee Benefits Committee and may modify, alter or amend the terms of any existing benefits. The Company does not intend that any benefits provided under the Plan shall be vested at any time. No such amendment shall authorize or permit the use or diversion of the whole or any part of the principal or income of the Trust Fund for purposes other than for the exclusive benefit of Participants at any time prior to the satisfaction of all liabilities under the Plan with respect to such persons.

8.2 Termination - This Plan is purely voluntary on the part of the Company, and the Company reserves the right to terminate the Plan and any benefit payments to Participants without any prior notice to Participants and/or Trust Fund or to discontinue, suspend, or change the rate and amount of Company Contributions for any reason at any time.

ARTICLE NINE

GENERAL PROVISIONS

9.1 Uniform Administration - The Plan shall be administered such that all Participants who are similarly situated shall be treated similarly, and no such action shall be taken that will discriminate in favor of persons who are officers or stockholders of the Company or other highly-compensated Participants in the Plan.

9.2 Source of Payment - Payments and other benefits under this Plan shall be payable only out of the Trust Fund or through or such other funding methods, as established by the Employee Benefits Committee. No persons shall have any rights under the Plan with respect to the Trust Fund, or against the Trustee, the Company, or any fiduciary of the Plan, except as specifically provided for herein or in ERISA.

9.3 Non-Assignability and Facility of Payment - Benefits under the Plan are not in any way subject to the debts or other obligations of the persons entitled thereto and may not be voluntarily or involuntarily sold, transferred, hypothecated, pledged or assigned. When any person entitled to benefits under the Plan is under a legal disability or in the Disability Department's opinion is in any way incapacitated so as to be unable to manage his or her affairs, the Disability Department may cause such person's benefits to be paid to or for the benefit of such person in any manner that the Disability Department may determine without responsibility of the Company, the Employee Benefits Committee, the Disability Department, or the Trustee to see to the application of such payment. Payments made pursuant to such power shall operate as a complete discharge of the obligation under the Plan to make such payments.

9.4 Headings - The headings of the section in this Plan are placed herein for convenience of reference and, in the case of any conflict, the text of the Plan, rather than such headings, shall control.

9.5 Employer Accounts - The Company may direct that as to any Employer or group of Employers, the trustees shall establish and maintain a separate account or accounts within the Trust Fund for the purpose of maintaining financial experience records and determining the rate of contributions required of such Employer or group of Employers, or, of the Employees, in order to provide benefits hereunder.

9.6 Sub-Plan Accounts - The Company may direct that as to any sub-plan or benefit structure maintained or previously maintained under the Plan or a

predecessor Plan, the Trustees shall establish and maintain a separate account or accounts within the Trust Fund for the purpose of maintaining financial experience records of any such sub-plan or benefit structure, in order to provide benefits hereunder.

9.7 Use of Pronouns - The masculine or feminine pronoun used herein refers to both men and women and, used in singular, is intended to include the plural, whenever appropriate.

9.8 Construction - To the extent not inconsistent with ERISA, the provisions of this Plan shall be construed in accordance with the laws of the State of Connecticut.

9.9 Recovery of Benefits - In the event a person receives a benefit payment under the Plan which is in excess of the benefit payment that should have been made, the Disability Department shall have the right to recover the amount of such excess from such person. The Disability Department may, however, at its option, deduct the amount of such excess from any subsequent benefits payable under the Plan to, or for, the person.

9.10 Subrogation. In the event that a third-party causes directly, or indirectly, an Employee to be Totally Disabled, the Employee Benefits Committee shall retain all subrogation rights with respect to the Employee against such third-party. The Employee must sign a subrogation agreement in this case as a condition to receiving benefits hereunder. The Company shall pursue such subrogation rights in its sole and exclusive discretion.

9.11 Company or Board Action. Any action required or permitted to be taken under the Plan by the Company or the Board of Directors may be taken by such individual, committee or entity as the Company or Board may designate from time to time.

9.12 Participating Employer. Any Affiliated Company may participate in the Plan by taking appropriate corporate action provided that the Company or Employee Benefits Committee has approved or ratified the participation of such Affiliated Company.

## APPENDIX A

## PITNEY BOWES LONG-TERM DISABILITY PLAN

Employers as defined in Article 2.18 shall include the following and may be amended from time to time:

1. Pitney Bowes Inc.
2. Pitney Bowes Credit Corporation
3. Pitney Bowes Management Services
4. Pitney Bowes Professional Services Inc.

**AMENDMENT NO. 1**

**TO THE**

**PITNEY BOWES LONG-TERM DISABILITY PLAN**

***as amended and restated effective as of January 1, 2000***

Pursuant to Section 8.1 of the Pitney Bowes Inc. Long-Term Disability Plan (the "Plan"), the Plan is hereby amended as follows effective as of January 1, 2002 unless otherwise indicated below:

1. A new Section 2.13 of the Plan shall be added effective January 1, 2000 to read as follows, and the current Section 2.13 and all subsequent Sections in Article II of the Plan shall be renumbered accordingly and any cross-references in the Plan to Sections 2.13 through 2.36 shall be adjusted:

   "Date of Hire" shall be the first day an Employee performs an hour of service for the Employer provided he is then Actively at Work, as defined in Section 3.3 hereof.

2. Section 2.19 of the Plan, titled "Employment Probationary Period" shall be deleted effective January 1, 2000 in its entirety and all subsequent Sections in Article II of the Plan shall be renumbered accordingly and any cross-references in the Plan to Sections 2.19 through 2.36 shall be adjusted.

3. The first sentence of Section 3.1 of the Plan is hereby deleted effective January 1, 2000 in its entirety and shall be replaced by the following language:

   Each Employee shall become a Participant of the Plan on the first day of the month following his Date of Hire provided that he is then Actively at Work, as defined in Section 3.3; otherwise, the Employee shall become a Participant on the first day thereafter when he is Actively at Work for the Employer.

4. The first sentence of Section 7.5 of the Plan is hereby deleted in its entirety and shall be replaced by the following language:

   The Employee Benefits Committee shall have discretion in exercising the

following powers and duties concerning the Plan:

5. Section 7.7 of the Plan is hereby deleted in its entirety and shall be replaced by the following language:

   Claims Denial and Appeal Procedure – In accordance with ERISA and regulations thereunder, the Disability Department shall provide notice in writing to any person whose claim for benefits under the Plan has been denied as follows:

   (a) The Disability Department will provide a written notification of its determination to the Participant within 45 days from the date the claim is filed. An extension of up to 30 days is permitted if necessary due to matters beyond the Plan's control provided the Disability Department notifies the Participant, prior to expiration of the initial 45-day period, of the circumstances requiring the extension of time and the date by which the Disability Department expects to render a decision. Prior to the end of this extension period, another 30-day extension is available if it is determined that, due to matters beyond its control, a decision cannot be rendered within the initial extension period. If the reason for taking the extension is the failure of a claimant to submit information necessary to decide a claim, the time period for making a benefit determination shall be tolled from the date on which the notification of the extension is sent to the claimant until the date on which the claimant responds to the request for additional information, without regard to whether the claimant's response supplies all of the information necessary to decide the claim.

   (b) The written notification shall include the reasons for the denial based on specific Plan provisions, additional information required to perfect the claim for an appeal and an explanation of the claim appeal procedure. The notification shall also include: (i) a description of the Plan's review procedures and the time limits applicable to such procedures, including a statement of the Participant's right to bring civil action under Section 502(a) of ERISA following an adverse benefit determination on appeal; (ii) if an internal rule, guideline, protocol or other similar criterion was relied upon in making the determination, either the specific rule, guideline, protocol or other similar criterion or a statement that such rule, guideline, protocol or other similar criterion was relied upon in making the adverse determination and that a copy will be provided free of charge to the

Participant upon request; (iii) if the adverse benefit determination is based on medical necessity or experimental treatment or similar exclusion or limit, either an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to the Participant's medical circumstances, or a statement that such explanation will be provided free of charge upon request; and (iv) identification of any medical or vocational expert, whose advice was obtained on behalf of the Plan in connection with the Participant's adverse benefit determination.

(c) Within 180 days of receipt of the denial, the Participant may submit written request for appeal of the denied claim to the Employee Benefits Committee. The written appeal must be accompanied by any additional documents or records which support the claim.

(d) On appeal, the review shall not afford deference to the initial adverse benefit determination and shall be conducted by the Employee Benefits Committee (which is neither the individual who made the adverse benefit determination that is the subject of appeal nor the subordinate of such individual). In deciding an appeal of an adverse benefit determination that is based in whole or in part on medical judgment, including determinations with regard to whether a particular treatment, drug or other item is experimental, investigational, or not medically necessary or appropriate, the Employee Benefits Committee shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment. The health care professional engaged for purposes of consultation on appeal shall be a person who is neither the individual consulted in connection with the adverse determination that is the subject of appeal nor the subordinate of such individual.

(e) The Employee Benefits Committee will provide the Participant, within 45 days after receipt of the appeal, a written response to the appeal. The Employee Benefits Committee may take an additional 45 days to decide the appeal if circumstances so warrant. If the reason for taking the extension is the failure of a claimant to submit information necessary to decide a claim, the time period for making a benefit determination shall be tolled from the date on which the notification of the extension is sent to the claimant until the date on which the claimant responds to the request for additional information, without

regard to whether the claimant's response supplies all of the information necessary to decide the claim.

(f) The written notification shall include the reasons for the Employee Benefits Committee's decision, based on specific Plan provisions. The notification shall also include: (i) a statement of the Participant's right to bring civil action under Section 502(a) of ERISA; (ii) if an internal rule, guideline, protocol or other similar criterion was relied upon in making an adverse determination, either the specific rule, guideline, protocol or other similar criterion or a statement that such rule, guideline, protocol or other similar criterion was relied upon in making the adverse determination and that a copy will be provided free of charge to the Participant upon request; (iii) if an adverse benefit determination is based on medical necessity or experimental treatment or similar exclusion or limit, either an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to the Participant's medical circumstances, or a statement that such explanation will be provided free of charge upon request; (iv) the identification of any medical or vocational experts whose advice was obtained on behalf of the Plan in connection with the Participant's adverse benefit determination; and (v) a statement regarding possible voluntary alternative dispute resolution options, such as mediation.

# AMENDMENT NO. 2

# TO THE

# PITNEY BOWES INC. LONG-TERM DISABILITY PLAN

***as amended and restated effective January 1, 2003***

Pursuant to Section 8.1 of the Pitney Bowes Inc. Long-Term Disability Plan (the "Plan"), the Plan is hereby amended as follows effective January 1, 2003 unless otherwise indicated below:

1. Appendix A of the Plan is hereby deleted in its entirety and shall be replaced by the following language:

   Employers as defined in Section 2.18 shall include the following and may be amended from time to time:

   1. Pitney Bowes Inc.
   2. Pitney Bowes Management Services
   3. Pitney Bowes Professional Services Inc.
   4. Pitney Bowes Credit Corporation
   5. Services Integration Group, LP (effective January 1, 2000)
   6. Pitney Bowes Docsense Inc., (formerly Alysis Technologies, effective August 1, 2001 for Alysis employees)

   Employers as defined in Section 2.18 shall not include the following and may be amended from time to time:

   1. LPC (also known as Pitney Bowes Software Solutions; although acquired by Pitney Bowes Inc. on September 21, 1988, employees of LPC are not eligible to participate in the Plan)
   2. PSI Group Inc.
   3. Pitney Bowes Credit Union
   4. all non-US employers within the controlled group of Pitney Bowes Inc.