# AGREEMENT OF SETTLEMENT AND RELEASE

This Agreement of Settlement and Release ("Agreement") is made this 20th day of February, 2002, by and between Stephen Hatch ("Hatch" or "Plaintiff") and Pitney Bowes Inc. ("PB" or the "Company").

WHEREAS, in or about December 2000, Hatch filed a complaint against PB, Jeffrey Morgan ("Morgan") and Frederick Mestrandrea ("Mestrandrea") (PB, Morgan and Mestrandrea are collectively referred to as the "Defendants") with the Rhode Island Superior Court, which was subsequently removed to the United States District Court for the District of Rhode Island, entitled Stephen Hatch v. Pitney Bowes Inc., Jeffrey Morgan and Frederick Mestrandrea, Civil Action Number 01-251 (RRL), seeking, inter alia, damages for alleged harassment and discrimination on the basis of an actual and/or a perceived disability and for alleged invasion of privacy (the "Civil Action");

WHEREAS, Defendants have answered the Civil Action and deny all the material allegations set forth therein; and

WHEREAS, Hatch and PB desire to resolve and settle in full all claims that Hatch had, has or may have against PB, any of its current or former directors, officers, managers, agents, employees (including, but not limited to, Mestrandrea and Morgan), subsidiaries, affiliates or related business entities, their respective successors or assigns, or any of their directors, officers, managers, agents, employees, subsidiaries, affiliates or related business entities, including, but not limited to, all claims that were or could have been raised in the Civil Action.

NOW, THEREFORE, Hatch and PB agree as follows:

1. Hatch authorizes and directs his attorney, Noelle K. Clapham, Esq., upon execution of this Agreement, to sign a Stipulation And Order Of Dismissal With Prejudice of this action ("Stipulation") in the form annexed hereto as Exhibit A.

2. PB agrees to pay Hatch the sum of Thirty Thousand Dollars ($30,000.00) in settlement of Hatch's claims by check made payable to the order of "Stephen Hatch." This amount is intended by the parties as compensation to Hatch for his alleged personal injuries in the form of emotional distress. The Company will issue Hatch an IRS Form 1099 reflecting payment of this amount. PB further agrees to pay Hatch's attorney, Noelle K. Clapham, Esq., the sum of Fifteen Thousand Dollars ($15,000.00), representing payment by PB for the costs incurred by Hatch for legal representation and certain costs of suit, by check made payable to the order of "Noelle K. Clapham, Esq." The Company will issue Attorney Clapham an IRS Form 1099 reflecting payment of this amount. The aforementioned checks shall be delivered to Hatch's attorney within fourteen (14) days after all parties have signed this Agreement.

3. Hatch hereby agrees to indemnify PB from and against all tax liabilities, interest and penalties that may be assessed or incurred by PB as a result of not deducting taxes or other withholdings or satisfying any liens or judgments against Hatch and/or his attorney by taxing authorities on the payment(s) provided for in paragraph 2, except that Hatch shall not be liable for any contributions to FICA assessed against PB. Hatch further agrees that, within thirty (30) days after PB is assessed for any such payroll deductions or withholdings required to be deducted from employment earnings or wages and which are customarily withheld from wages, pursuant to a finding that the payment(s) provided for in paragraph 2 represents employment

earnings or wages, Hatch shall pay to PB the full amount of that assessment, except as otherwise provided in this paragraph.

4. In consideration for the payments provided for by paragraph 2, Hatch agrees, upon the execution of this Agreement, to sign a General Release ("Release") in the form annexed hereto as Exhibit B. Hatch agrees also, upon the execution of this Agreement, to provide the information required in and to sign the Form W-9 annexed hereto as Exhibit D. In consideration for the promises made by Hatch herein, PB agrees, upon the execution of this Agreement, to sign a General Release ("PB Release") in the form annexed hereto as Exhibit C.

5. Hatch acknowledges that the payments provided for by paragraph 2 are in addition to and are not in place of any payment, benefit or other thing of value to which Hatch might otherwise be entitled under any policy, plan or procedure of PB or pursuant to any prior agreement or contract with PB. PB acknowledges that Hatch will continue to maintain that status, and receive those benefits, to which he is entitled as an employee on long-term disability leave ("LTD") pursuant to the terms of the LTD Summary Plan, as long as he continues to remain eligible under the requirements of the LTD Summary Plan.

6. Hatch hereby represents that he has not filed a complaint, charge or claim against PB, or any of its current or former directors, officers, managers, agents, employees (including, but not limited to, Mestrandrea and Morgan), subsidiaries, affiliates or related business entities, their respective successors or assigns, or any of their directors, officers, managers, agents, employees, subsidiaries, affiliates or related business entities, with any court or agency except for the Civil Action and the charge of employment discrimination Hatch filed with

the Rhode Island Commission for Human Rights, Charge No. 99 EMH 112-50/03, Equal Employment Opportunity Commission Charge No. 16J980348.

7. Hatch, on behalf of himself and his heirs, executors, administrators, and assigns, agrees never to directly or indirectly commence or prosecute, or to assist in the commencement or prosecution, or in any way cause, or advise to be commenced or prosecuted, any action or proceeding against PB or any of its current or former directors, officers, managers, agents, employees (including, but not limited to, Mestrandrea and Morgan), subsidiaries, affiliates or related business entities, their respective successors or assigns, or any of their directors, officers, managers, agents, employees, subsidiaries, affiliates or related business entities, with respect to any matter, whether or not now known, based upon any act, transaction, practice, conduct or omission that occurred prior to the date of this Agreement. The institution of any such action shall be considered a material breach of this Agreement. In the event that Hatch has instituted any actions or proceedings against PB, in addition to those set forth in paragraph 6, Hatch agrees promptly to take all necessary steps to withdraw those actions or proceedings with prejudice.

8. PB has entered into this Agreement solely for the purpose of avoiding the burden and expense of further litigation. The making of this Agreement is not intended, and shall not be construed, as an admission that PB or any of its current or former directors, officers, managers, agents, employees (including, but not limited to, Mestrandrea and Morgan), subsidiaries, affiliates or related business entities, their respective successors or assigns, or any of their directors, officers, managers, agents, employees, subsidiaries, affiliates or related business entities, have violated any federal, state, or local law (statutory or decisional), ordinance or

regulation or that PB or any of its current or former directors, officers, managers, agents, employees, (including, but not limited to, Mestrandrea and Morgan), subsidiaries, affiliates or related business entities, their respective successors or assigns or any of their directors, officers, managers, agents, employees, subsidiaries, affiliates or related business entities have committed any wrong against Hatch.

9. Hatch and his attorney, Noelle K. Clapham, Esq., represent that they have not and agree that, except as required by law, they shall not publicize or disclose the terms, contents, conditions or existence of this Agreement, whether in writing or orally, to any person, except to Hatch's accountant, tax preparer, financial consultant and spouse, if requested by such person or entity, and then only if reasonably necessary to prepare his income tax returns or other financial reports in the performance of such person's or entity's professional services rendered to Hatch or within his marital relationship. Hatch and his attorneys further agree not to solicit or initiate any demand by others not party to this Agreement for any disclosure of the terms and conditions of this Agreement. Any breach of the provisions of this paragraph by Hatch shall be considered a material breach of this Agreement.

10. Hatch agrees that he will not at any time (i) publicly disparage or encourage or induce others to publicly disparage PB, and/or (ii) engage in any conduct that is in any way injurious to PB's reputation and interests (including, without limitation, any negative or derogatory statements or writings).

11. Hatch acknowledges that a breach of the provisions contained in paragraphs 9 and/or 10 of this Agreement would cause great damage and injury to PB, and that such provisions provide a material element of PB's consideration for and inducement to enter

into this Agreement. Accordingly, it is expressly understood and agreed that, if Hatch breaches paragraphs 9 and/or 10 of this Agreement, PB may, in addition to pursuing any other remedies that it may have at law or in equity, obtain an injunction against Hatch from any court having jurisdiction over this matter, restraining any further violation of the provisions of paragraphs 9 and/or 10 of this Agreement. It is further agreed that in the event PB is awarded damages because of a breach of paragraphs 9 and/or 10, all terms and conditions of this Agreement, including the obligations set forth in this paragraph, shall continue in full force and effect.

12. Notwithstanding the contents of paragraphs 9 and 10, the parties and their counsel may respond to questions regarding the Civil Action by stating: "The case has been resolved among the parties."

13. Hatch agrees that he will not apply for, otherwise seek or accept employment with PB or any of its subsidiaries, affiliates or related business entities at any future date. In the event that Hatch breaches his obligations under this paragraph, PB may deny or terminate his employment and Hatch agrees that such would not constitute a violation of any law, ordinance or regulation.

14. Hatch will refer all inquiries from prospective employers to PB's Human Resources Department, which will respond to such inquiries by providing only Hatch's dates of employment, title and final rate of pay. PB will not be responsible for inquiries made regarding Hatch other than those made to the Human Resources Department.

15. The parties herein agree that this Agreement and Release will be governed by the laws of the State of Rhode Island and that Hatch will submit to the jurisdiction of the state

and/or federal courts located within the State of Rhode Island for the resolution of any dispute that may arise hereunder.

16. This Agreement is the complete understanding between the parties and may not be changed orally.

17. Hatch, by signing this Agreement, acknowledges and understands that he has had a full and fair opportunity (at least 21 days) to review, consider and negotiate the terms of this Agreement prior to signing it, and that he has been advised by PB to consult independent legal counsel (specifically Noelle K. Clapham, Esq.) before signing this Agreement. Hatch further acknowledges and understands that he has executed this Agreement after having the opportunity to consult with independent legal counsel and to consider the terms of this Agreement; and that he has the right to revoke this Agreement within seven (7) days of the date he signs it. If Hatch or his attorney, Noelle K. Clapham, does not notify Defendants' Attorney, Daniel B. Klein, in writing, within the seven-day period that he is exercising his right of revocation, the Agreement will automatically become effective as of the eighth day after Hatch signs this Agreement.

18. Should any provision of this Agreement require interpretation or construction, it is agreed by the parties that the entity interpreting or construing the Agreement shall not apply a presumption that the provisions hereof shall be more strictly construed against one party by reason of the rule of construction that a document is to be construed more strictly against the party who prepared the Agreement, it being agreed that the parties (by their respective attorneys) have participated in the preparation of all the provisions of this Agreement.

19. Hatch acknowledges that he has read this Agreement in its entirety, that he has had all of its provisions explained to him by counsel, who has answered any and all questions that he has asked with regard to the meaning of any of the provisions thereof, and that he consents to all the terms and conditions contained herein.

20. It is agreed that the parties to this Agreement shall assume and bear their own costs of litigation, including attorneys' fees, as a result of or in connection with the Civil Action and the separation of Hatch's employment, except as otherwise provided herein.

21. This Agreement may be executed in counterparts.

WHEREFORE, the parties hereto have caused this Agreement to be signed as of the day and date first above written.

PITNEY BOWES INC.

By: Alan E. Jaycox

STEPHEN HATCH

Stephen Hatch

STATE OF RHODE ISLAND )
) ss.:
COUNTY OF PROVIDENCE )

On this 20th day of February, 2002, before me personally came Stephen Hatch, known to me to be the person who executed the foregoing Agreement of Settlement and Release and he duly acknowledged to me that he executed the same.

N.K. Clapham
Notary Public

15126053.1