UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

STEPHEN HATCH

C.A. NO. 05-155(S)

v.

PITNEY BOWES, INC.

**PLAINTIFF'S RULE 12.1 STATEMENT OF UNDISPUTED FACTS**

Plaintiff hereby submits the following statement of undisputed facts pursuant to F.R.C.P. 56 and Local Rule 12.1:

1. By letter dated April 16, 1998, Plaintiff Stephen Hatch was informed that he was eligible to receive LTD benefits effective February 1, 1998.

2. This letter specifically set forth the exact amount of Plaintiff's monthly Long Term Disability ("LTD") benefit and a detailed explanation of how this amount was calculated in accordance with the provisions of the LTD Plan.

3. After receiving benefits pursuant to the terms of the Pitney Bowes Benefit Approval Letter for nearly five (5) years, Plaintiff received a letter from Barbara Bianco, dated August 7, 2003, advising him that his monthly benefit rate was initially calculated incorrectly.

4. The Bianco Overpayment Letter reaffirmed Plaintiff's entitlement to receive LTD benefits, but asserted that during a routine file review it was suddenly discovered that Plaintiff's benefit rate was incorrectly calculated initially, and that he benefits must be substantially reduced.

5. The letter essentially states that although Plaintiff will technically continue to be eligible for and to receive LTD benefits at a substantially reduced rate, Plaintiff will not receive any further benefits until the amount that he was overpaid due to the mistake in calculating his monthly benefit amount had been wholly recouped.

6. Nowhere in the Bianco Overpayment Letter is Plaintiff's entitlement to continue to receive LTD benefits disputed.

7. The Bianco Overpayment Letter further never makes mention of or refers to any denial of Plaintiff's benefit or any internal appeal process available to the Plaintiff to dispute the overpayment.

8. In response to the Bianco Overpayment Letter, undersigned counsel telephoned Ms. Bianco as specifically invited in her letter. Ms. Bianco did not answer the call and undersigned counsel left a detailed telephone message on her extension.

9. No return telephone call was ever received from Ms. Bianco.

10. Several days later Plaintiff's counsel received a telephone call from the personal secretary of Defendant Pitney Bowes, Inc. corporate counsel, Rosalind Gordon, instructing undersigned counsel not to call Ms. Bianco again, but to direct all communications to Attorney Gordon.

11. After a period of time undersigned counsel and Attorney Gordon spoke on two (2) occasions, wherein Attorney Gordon reiterated to Plaintiff's counsel not to contact Ms. Bianco, but to direct all communications to her at her office at Defendant's corporate headquarters.

12. Ultimately Attorney Gordon advised Plaintiff's counsel that the decision set forth in the Bianco Overpayment Letter could not be changed or negotiated.

13. Plaintiff's counsel specifically inquired whether or not any further internal appeals were available and was advised by Attorney Gordon that Plaintiff's only recourse was to file a lawsuit in federal court pursuant to ERISA.

14. Upon her return from maternity leave Plaintiff's counsel co-filed a Charge of Discrimination against Defendant Pitney Bowes, Inc. with the Rhode Island Commission for Human Rights and the United States Equal Employment Opportunity Commission. After receiving a Right to Sue from these agencies Plaintiff filed his Complaint commencing this action.

15. Defendant employed the Plaintiff in its sales department for more than twenty-five (25) years.

16. In July, 1997, Plaintiff was forced to take a medical leave of absence from his employment with Pitney Bowes due to a mental disability.

17. Plaintiff planned to return to his employment with Pitney Bowes on September 1, 1997, with or without reasonable accommodation.

18. Pitney Bowes refused to allow Plaintiff to return to work on September 1, 1997 as scheduled, despite Plaintiff being fully capable of returning to work at that time, with or without reasonable accommodation.

19. Pitney Bowes' pretextual excuse for refusing to allow the Plaintiff to return to work at that time was that he would not be able to perform his job because the District Manager was out on sick leave.

20. On October 1, 1997, Pitney Bowes finally allowed Plaintiff to return to work.

21. Upon Plaintiff's return to work, Pitney Bowes through its management commenced a campaign of severe and extreme harassment against the Plaintiff because of his past mental disability leave and based upon a perceived continuing mental disability.

22. Because of the harassment and illegal disability discrimination suffered upon Plaintiff, Plaintiff was forced to take a second medical leave of absence from his employment on January 1, 1998 and continuing to the present.

23. When Plaintiff went out on this second medical leave of absence, Plaintiff was advised by Pitney Bowes of the monthly amount that he would be receiving in LTD benefits if he continued to stay out of work on medical leave, and that his medical leave for the purposes of calculating his LTD benefit would officially commence on February 1, 1998.

24. This amount was confirmed by Pitney Bowes through various letters over the years, and Plaintiff was indeed paid monthly benefits based upon his 1997 income until August, 2003.

25. Part of the basis for Plaintiff's present Complaint before this Court is that this so-called benefit calculation mistake is again a pretext for discriminating against Plaintiff because of his mental disability and in retaliation for his former co-filing of a Charge of Discrimination in 1999 with the Rhode Island Commission for Human Rights and the United States Equal Employment Opportunity Commission (RICHR No: 99 EMH 112-50/03 and EEOC No: 16J980348), and for pursuing a civil suit with this Court to redress illegal disability discrimination (C.A. No: 01-251 (RRL).

26. Plaintiff's former civil suit filed with the Court was terminated after negotiation of a mutually agreeable settlement and an express provision of the written settlement agreement entered into to dispose of the prior discrimination litigation states in paragraph 5:

> Hatch acknowledges that the payments provided for by paragraph 2 are in addition to and are not in place of any payment, benefit or other thing of value to which Hatch might otherwise be entitled under any policy, plan or procedure of PB [Pitney Bowes] or pursuant to any prior agreement or contract with PB. PB acknowledges that Hatch will continue to maintain that status, and receive those benefits, to which he is entitled as an employee on long-term disability leave ("LTD") pursuant to the terms of

the LTD Summary Plan, as long as he continues to remain eligible under the requirements of the LTD Summary Plan.

Respectfully submitted,

PLAINTIFF STEPHEN HATCH
By his Attorney,

N.K. Clapham

Noelle K. Clapham (5338)
24 Salt Pond Road, Suite A-8
South Kingstown, RI 02879
(401) 783-3600
(401) 783-3670 (fax)
claphamlaw@verizon.net

**CERTIFICATION**

I hereby certify that on this 8th day of August, 2005, I mailed a true and complete copy of the foregoing to Defendant's counsel of record: Thomas J. McAndrew, Esquire, Thomas J. McAndrew & Associates, One Turks Head Place, Suite 205, Providence, RI 02903; Nicole A. Diller, Esquire and Andrew C. Sullivan, Esquire, Morgan Lewis & Bockius LLP, One Market, Spear Street Tower, San Francisco, CA 94105.

N.K. Clapham