UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

STEPHEN HATCH,                          :
            Plaintiff,                  :
                                        :
        v.                              :    CA 05-155 S
                                        :
PITNEY BOWES, INC.,                     :
            Defendant.                  :

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

This action involves a claim for long term disability
benefits pursuant to an employee welfare benefit plan governed by
the Employee Retirement Income Security Act of 1974, as amended,
29 U.S.C. § 1001 et seq. ("ERISA"). See Complaint ¶¶ 1, 5-6, 15-
16. Before the court is Defendant Pitney Bowes, Inc.'s motion to
dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state
a claim upon which relief may be granted. See Defendant Pitney
Bowes Inc.'s Notice of Motion and Motion to Dismiss Plaintiff's
Complaint (Document ("Doc.") #5) ("Motion to Dismiss" or
"Motion"). This matter has been referred to me for preliminary
review, findings, and recommended disposition pursuant to 28
U.S.C. § 636(b)(1)(B) and D.R.I. Local R. 32(c). A hearing was
conducted on October 12, 2005. For the reasons stated herein, I
recommend that the Motion to Dismiss be granted in part and
denied in part.

**I.   Facts and Travel**

Plaintiff was employed by Pitney Bowes, Inc. ("Pitney
Bowes," "Company," or "Defendant"), in its sales department for
more than twenty-five years. See Complaint ¶ 7. In July, 1997,
he took a medical leave of absence due to a mental disability.
See id. ¶ 8. Plaintiff returned to work on October 1, 1997, see
id. ¶ 12, and continued working until January 1, 1998, when he

took a second medical leave which continues to the present, see id. ¶ 14.

When Plaintiff went out on his second medical leave, the Company advised him of the monthly amount that he would be receiving as a disability benefit from the Pitney Bowes Inc. Long-Term Disability Plan ("Plan") and also advised him that for purposes of calculating the disability benefit his medical leave would commence officially on February 1, 1998. See Complaint ¶¶ 5, 15. Over the years, the amount of the benefit was confirmed by Pitney Bowes through various letters, and Plaintiff was paid monthly benefits until August 2003. See id. ¶ 15.

On or about August 7, 2003, Plaintiff received a letter from the Company, stating that there had been a mistake in the calculation of his monthly disability benefit and that as a result Plaintiff had been overpaid $133,075.14. See id. ¶ 16. The mistake, according to the letter, was that Plaintiff's disability benefit had been calculated based on Plaintiff's 1997 earnings when it should have been based on his 1996 earnings.[1] See Plaintiff's Memorandum of Law in Support of Objection to Defendant's Rule 12(b)(6) Motion to Dismiss ("Plaintiff's Mem."), Exhibit ("Ex.") B (Letter from Bianco to Hatch of 8/7/03) at 1-2. The letter further advised Plaintiff that his monthly disability benefits would cease until the overpayment had been recouped. See id. at 2.

Plaintiff alleges that the Company's action is a pretext for: 1) discriminating against him because of his mental disability and 2) retaliating against him for filing a complaint of discrimination against the Company in 1999 with the Rhode Island Commission for Human Rights ("RICHR") and the United

---

[1] For purposes of the instant Motion, further detail regarding the alleged mistake and resulting miscalculation of benefits is unnecessary.

2

States Equal Employment Opportunity Commission ("EEOC") and for pursuing a civil suit in this court to redress the alleged illegal disability discrimination.  See Complaint ¶ 19; see also Stephen Hatch v. Pitney Bowes, Inc., Jeffrey Morgan, and Frederick Mestrandrea, CA 01-251 L.  That civil suit was terminated after the partes negotiated a mutually agreeable settlement and executed a written settlement agreement (the "Settlement Agreement") on or about February 20, 2002.  See Complaint ¶ 20; see also Plaintiff's Mem., Ex. D (Settlement Agreement)[2] at 8.  Paragraph 5 of the Settlement Agreement provided that Plaintiff "will continue to maintain that status, and receive those benefits, to which he is entitled as an employee on long-term disability leave ("LTD") pursuant to the terms of the LTD Summary Plan, as long as he continues to remain eligible under the requirements of the LTD Summary Plan."[3] Settlement Agreement ¶ 5.

---

[2] For brevity, hereafter the court cites directly to the Settlement Agreement, omitting reference to Plaintiff's Mem., Ex. D.

[3] The full text of Paragraph 5 of the Settlement Agreement appears below:

> Hatch acknowledges that the payments provided for by paragraph 2 are in addition to and are not in place of any payment, benefit or other thing of value to which Hatch might otherwise be entitled under any policy, plan or procedure of PB [Pitney Bowes] or pursuant to any prior agreement or contract with PB. PB acknowledges that Hatch will continue to maintain that status, and receive those benefits, to which he is entitled as an employee on long-term disability leave ("LTD") pursuant to the terms of the LTD Summary Plan, as long as he continues to remain eligible under the requirements of the LTD Summary Plan.

Complaint ¶ 20 (quoting Paragraph 5 of Settlement Agreement) (alteration in original).

3

On May 26, 2004,[4] Plaintiff filed another charge of discrimination against the Company with the RICHR and EEOC, alleging that the alleged mistake in the calculation of his disability benefits was actually a pretext for illegal retaliation and discrimination. See Complaint ¶ 21. After receiving right to sue letters from the RICHR and EEOC, see id. ¶ 22, Plaintiff filed this action on April 14, 2005, see Docket. The instant Motion to Dismiss (Doc. #5) was filed on July 11, 2005. See id. Plaintiff filed an objection on August 8, 2005, see Plaintiff's Objection to Defendant's Rule 12(b)(6) Motion to Dismiss (Doc. #11), and Pitney Bowes filed a reply memorandum on August 22, 2005, see Defendant Pitney Bowes Inc.'s Reply to Plaintiff's Objection to Defendant's Rule 12(b)(6) Motion to Dismiss (Doc. #15) ("Defendant's Reply Mem.").

## II.  12(b)(6) Standard

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court construes the complaint in the light most favorable to the plaintiff, see Paradis v. Aetna Cas. & Sur. Co., 796 F.Supp. 59, 61 (D.R.I. 1992); Greater Providence MRI Ltd. P'ship v. Med. Imaging Network of S. New England, Inc., 32 F.Supp.2d 491, 493 (D.R.I. 1998), taking all well-pleaded allegations as true and giving the plaintiff the benefit of all reasonable inferences, see Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002); Tompkins v. United Healthcare of New England, Inc., 203 F.3d 90, 93 (1st Cir. 2000); Carreiro v. Rhodes Gill & Co., 68 F.3d 1443, 1446 (1st Cir. 1995). If under any theory the allegations are sufficient to state a cause of action in

---

[4] The Complaint states this date as being May 26, 2003. See Complaint ¶ 21. However, since this would predate Plaintiff's receipt of the August 7, 2003, letter advising him of the alleged error in the calculation of his disability benefits, the court assumes that this is an inadvertent error and that the date Plaintiff intends to allege is May 26, 2004.

accordance with the law, the motion to dismiss must be denied.
See Hart v. Mazur, 903 F.Supp. 277, 279 (D.R.I. 1995).  The court
"should not grant the motion unless it appears to a certainty
that the plaintiff would be unable to recover under any set of
facts." Roma Constr. Co. v. aRusso, 96 F.3d 566, 569 (1st Cir.
1996); accord Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99,
102, 2 L.Ed.2d 80 (1957); see also Arruda, 310 F.3d at 18 ("[W]e
will affirm a Rule 12(b)(6) dismissal only if the factual
averments do not justify recovery on some theory adumbrated in
the complaint.")(internal quotation marks omitted).

The court, however, is not required to credit "bald
assertions, unsupportable conclusions, and opprobrious epithets."
Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 16 (1st Cir.
1989)(quoting Chongris v. Bd. of Appeals, 811 F.2d 36, 37 (1st
Cir. 1987))(internal quotation marks omitted).  Rule 12(b)(6) is
forgiving, but it "is not entirely a toothless tiger." Campagna
v. Massachusetts Dep't of Envtl. Prot., 334 F.3d 150, 155 (1st
Cir. 2003)(quoting Dartmouth Review).  A plaintiff must allege
facts in support of "each material element necessary to sustain
recovery under some actionable legal theory." Dartmouth Review,
889 F.2d at 16 (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513,
515 (1st Cir. 1988)); see also LaChapelle v. Berkshire Life Ins.
Co., 142 F.3d 507, 508 (1st Cir. 1998)(stating that the court
must determine whether the complaint "limns facts sufficient to
justify recovery on any cognizable theory").

In general, when dealing with a motion to dismiss under Fed.
R. Civ. P. 12(b)(6), consideration of documents not attached to
the complaint or expressly incorporated therein requires
conversion of the motion to one for summary judgment pursuant to
Fed. R. Civ. P. 56.  See Watterson v. Page, 987 F.2d 1, 3 (1st
Cir. 1993).  "However, courts have made narrow exceptions for
documents the authenticity of which are not disputed by the

5

parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Id.

## III.  Discussion

### A.  Counts I and VIII (Violation of ERISA)

#### 1.  Nature of Claims

Count I alleges that Defendant violated "29 U.S.C. § 1132," Complaint at 4, without identifying any subsection of that statute, see id. ¶¶ 25-31.  The court assumes from the allegations made in this Count that Plaintiff is asserting a claim for benefits pursuant to ERISA Section 502(a), 29 U.S.C. § 1132(a).  See Complaint ¶¶ 25-31.  Count VIII alleges that "Defendant stands in a fiduciary duty to Plaintiff," id. ¶ 67, and that Defendant breached this duty by wrongfully calculating and wrongfully failing to pay Plaintiff his disability benefits pursuant to the Plan, see id. ¶ 68.  The Complaint does not explicitly state that this cause of action is ERISA based, but the court assumes that it is and treats it as such.  See Plaintiff's Mem. at 2 (stating "that the breach of fiduciary count needs to be pled with greater specificity to cite to ERISA").

Defendant seeks dismissal of these two ERISA based claims on the ground that Plaintiff has sued the wrong party.  See Memorandum of Points and Authorities in Support of Pitney Bowes Inc.'s Motion to Dismiss Plaintiff's Complaint ("Defendant's Mem.") at 5.  Defendant contends that "[a]s a general rule, ERISA permits a civil action only against a benefit plan or its fiduciaries," id. (citing Terry v. Bayer Corp., 145 F.3d 28, 35 (1st Cir. 1998)), and that "Pitney Bowes is neither," id.

#### 2.  Law

"ERISA contemplates actions against an employee benefit plan and the plan's fiduciaries.  With narrow exception, however,

6

ERISA does not authorize actions against nonfiduciaries of an
ERISA plan." <u>Terry v. Bayer Corp.</u>, 145 F.3d 28, 35 (1st Cir.
1998)(quoting <u>Santana v. Deluxe Corp.</u>, 920 F.Supp. 249, 253 (D.
Mass. 1996)); <u>see also</u> <u>Beegan v. Associated Press</u>, 43 F.Supp.2d
70, 73 (D. Me. 1999)("ERISA permits suits to recover benefits
only against the Plan as an entity, <u>see</u> 29 U.S.C. §
1132(a)(1)(B), (d) and suits for breach of fiduciary duty only
against the fiduciary. <u>See</u> 29 U.S.C. § 1109(a)."). "[T]he proper
party defendant in an action concerning ERISA benfits is the
party that controls administration of the plan." <u>Terry v. Bayer
Corp.</u>, 145 F.3d at 36 (quoting <u>Garren v. John Hancock Mut. Life
Ins. Co.</u>, 114 F.3d 186, 187 (11th Cir. 1997)).

    "An employer is ... a proper party to an ERISA suit brought
pursuant to 29 U.S.C. § 1132 if it is the designated plan
administrator or fiduciary." <u>Beegan v. Associated Press</u>, 43
F.Supp.2d at 73.  However, "ERISA's fiduciary duty requirement
simply is not implicated where [the employer], acting as the
Plan's settlor, makes a decision regarding the form or structure
of the Plan such as who is entitled to receive Plan benefits and
in what amounts, or how such benefits are calculated." <u>Hughes
Aircraft Co. v. Jacobson</u>, 525 U.S. 432, 444, 119 S.Ct. 755, 763,
142 L.Ed.2d 881 (1999); <u>see also</u> <u>Lockheed Corp. v. Spink</u>, 517
U.S. 882, 890, 116 S.Ct. 1783, 1789, 135 L.Ed.2d 153 (1996).

    Under ERISA, the definition of a fiduciary applicable to the
instant matter appears below:

> [A] person is a fiduciary with respect to a plan to the
> extent (i) he exercises any discretionary authority or
> discretionary control respecting management of such plan
> or exercises any authority or control respecting
> management or disposition of its assets, (ii) he renders
> investment advice for a fee or other compensation, direct
> or indirect, with respect to any moneys or other property
> of such plan, or has any authority or responsibility to
> do so, or (iii) he has any discretionary authority or
> discretionary responsibility in the administration of

such plan.

29 U.S.C. § 1002(21)(A).  ERISA also defines "person" to include
a corporation.  29 U.S.C. § 1002(9).[5]

### 3. **Application**

Plaintiff has pled that Pitney Bowes is the fiduciary of the
Plan.  See Complaint ¶ 5.  However, the Plan specifically names
the Employee Benefits Committee (the "Committee") as the "Plan
Administrator."[6]  Affidavit of Barbara Bianco Re Defendant Pitney
Bowes Inc.'s Motion to Dismiss Plaintiff's Complaint ("Bianco
Aff."), Ex. A (Plan) ¶ 7.6.[7]  The Plan gives the Committee
discretionary control over the management and administration of
the Plan.  See Plan ¶¶ 7.1, 7.5, 7.6.  The Plan also gives the
Committee the exclusive power to interpret and construe its terms

---

[5] 29 U.S.C. § 1002(9) states that: "The term 'person' means an
individual, partnership, joint venture, corporation, mutual company,
joint-stock company, trust, estate, unincorporated organization,
association, or employee organization."

[6] The court may consider the Plan for purposes of the instant
Motion because the Complaint refers directly to it.  See Complaint ¶¶
5, 26, 28, 29, 31, 32, 46, 65, 68, 71; see also Clorox Co. Puerto Rico
v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000)
("[I]t is well-established that in reviewing the complaint, [the
court] 'may properly consider the relevant entirety of a document
integral to or explicitly relied upon in the complaint, even though
not attached to the complaint, without converting the motion into one
for summary judgment.'" (quoting Shaw v. Digital Equip. Corp., 82 F.3d
1194, 1220 (1st Cir. 1996)); Beddall v. State Street Bank & Trust Co.,
137 F.3d 12, 17 (1st Cir. 1998)("When ... a complaint's factual
allegations are expressly linked to--and admittedly dependent upon--a
document (the authenticity of which is not challenged), that document
effectively merges into the pleadings and the trial court can review
it in deciding a motion to dismiss under Rule 12(b)(6).").
Additionally, where the Plan contradicts the allegations of the
Complaint, the Plan controls.  Cf. Clorox Co. Puerto Rico v. Proctor &
Gamble Commercial Co., 228 F.3d at 32 ("It is a well-settled rule that
when a written instrument contradicts allegations in the complaint to
which it is attached, the exhibit trumps the allegations.").

[7] For brevity, hereafter the court cites directly to the Plan,
omitting reference to the Bianco Aff.

and provisions. See Plan ¶ 7.5. Based on these facts, Pitney Bowes argues that the Committee—not the Company—is the Plan Fiduciary and that the Company is not a proper defendant under ERISA § 502(a), 29 U.S.C. § 1132(a). See Defendant's Mem. at 5-7.

Plaintiff does not appear to dispute that the Plan names the Committee as the Plan Administrator. See Plaintiff's Mem. at 7-12. However, Plaintiff asserts that "there is more than ample evidence to show that the Defendant failed to maintain a distinction between itself and the Plan, to the point that the Defendant should rightfully be treated as the Plan Administrator for the purposes of this litigation."[8]  Plaintiff's Mem. at 10. In essence, Plaintiff argues that, notwithstanding the Plan's designation of the Committee as the Plan Administrator, Pitney Bowes controlled or influenced the administration of the Plan. See Plaintiff's Mem. at 10 (citing Terry v. Bayer Corp., 145 F.3d 28, 36 (1st Cir. 1998)).

Thus, this court must examine the Complaint and determine whether Plaintiff has set forth any factual allegations, either direct or inferential, tending to show that Pitney Bowes exercised control or influence over the Plan or the decision to cease paying Plaintiff monthly benefits in order to recoup the alleged overpayment. See Beegan v. Associated Press, 43 F.Supp.2d 70, 74 (D. Me. 1999)(employing this test in determining

---

[8] Plaintiff has not alleged this lack of distinction in his Complaint. He appears to contend that it can be reasonably inferred from the Complaint's averments that Pitney Bowes is the de facto Plan Administrator. See Plaintiff's Memorandum of Law in Support of Objection to Defendant's Rule 12(b)(6) Motion to Dismiss ("Plaintiff's Mem.") at 7-11. This strikes the court as something of a stretch, but in recognition of the liberal 12(b)(6) standard the court will make this inference, see Cooperman v. Individual Inc., 171 F.3d 43, 46 (1st Cir. 1999)(requiring that court give plaintiff benefit of all reasonable inferences when considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)).

9

whether plaintiff's ERISA claim against an employer should be
dismissed where employer was neither the plan administrator nor
fiduciary by designation).  In making this determination, the
court also examines the Plan[9] and the August 7, 2003, letter.[10]

The Complaint alleges that Pitney Bowes advised Plaintiff in
1998 (or late 1997) of the monthly amount he would be receiving
in long term disability benefits, see Complaint ¶ 15; that the
Company confirmed this amount over the years through various
letters, see id.; and that Pitney Bowes sent Plaintiff the August
7, 2003, letter advising him of the alleged mistake and the
intended recoupment action, see id. ¶ 16.  Presumably Plaintiff
also contends that Pitney Bowes controlled or influenced the
cessation of his disability benefits and the institution of the
recoupment action.  See id. ¶ 18 (referring to Pitney Bowes'
"wrongful actions").  However, the court need not credit bald
assertions or unsupportable conclusions, see Dartmouth Review v.
Dartmouth Coll., 889 F.2d 13, 16 (1st Cir. 1989), or allegations
which are contradicted by documents to which the Complaint
directly refers, see Clorox Co. Puerto Rico v. Proctor & Gamble
Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000)(stating that the
court may consider the relevant entirety of a document integral
or explicitly relied upon in the complaint and that when the
document contradicts allegations in the complaint the document
trumps the allegations).  Plaintiff's contention that it was
Pitney Bowes (as opposed to the Committee acting through the
Disability Department) which caused the cessation of his benefits
and the initiation of recoupment action is not supported by

---

[9] See n.6.

[10] The August 7, 2003, letter is referenced in the Complaint.  See
Complaint ¶¶ 16, 27, 35, 49, 54, 59, 70.  Thus, it may be considered
without converting the instant Motion to a motion for summary
judgment.  See n.6.

either the Plan or the August 7, 2003, letter.  Indeed, the
documents undermine or contradict Plaintiff's claim.

Considering first the Plan, that document reflects that the
Committee has delegated the ongoing, day-to-day administrative
responsibilities to Pitney Bowes' disability and benefits
departments.  See Plan ¶¶ 7.1, 7.6.[11]  Section 7.6 of the Plan
also provides that neither department has discretion in

---

[11] Sections 7.1 and 7.6 of the Plan are reproduced below:

7.1    The Committee - Employee Benefits Committee shall be
responsible for the general administration of the Plan and for
carrying out the provisions thereof.  The Employee Benefits
Committee shall have powers necessary to enable its members to
properly carry out their duties, subject at all times to the
limitations and conditions specified in or imposed by the
Plan.  The Employee Benefits Committee has delegated ongoing,
day-to-day administrative responsibility under the Plan to the
Pitney  Bowes  Disability  Department  and  the  Benefits
Department.

. . . . .

7.6    Plan Administrator - The Employee Benefits Committee
shall be the "Plan Administrator" of the Plan for purposes of
ERISA. However, **the Employee Benefits Committee has delegated
to  the  Disability  Department** the  day-to-day,  on-going
administrative responsibilities of the Plan. In addition, **the
Employee Benefits Committee has delegated to the Benefits
Department** of  Pitney  Bowes  Inc.  administrative
responsibility regarding Employee enrollment in the Plan,
including developing and implementing procedures and practices
on the election of coverage hereunder and the levels of
coverage offered to  Employees. It is intended that neither
the Disability Department nor the Benefits Department shall
have discretion such that individuals performing services in
these Departments with respect to the Plan would be considered
to be "fiduciaries" within the meaning of Section (3)(21) of
ERISA. The Disability Department shall mean the department at
Pitney Bowes Inc. having responsibility for the administration
of  the  Company's  disability  program.   The  Disability
Department shall not prescribe a treatment program for
Employees regarding their return to work but rather shall work
with practitioners to develop suitable and appropriate
treatment regimens.

Plan ¶¶ 7.1, 7.6 (bold added).

11

performing its administrative responsibilities.  See Plan ¶ 7.6.
In addition, the Plan imposes on the Disability Department the
affirmative duty to recover the overpayment of benefits and to
deduct the amount of such overpayments from subsequent benefits
payable under the Plan.  See Plan ¶ 9.9.[12]  Thus, the court
concludes that the Disability Department was performing a
ministerial duty when it notified Plaintiff of the overpayment
and advised him of the recoupment action.  See 29 C.F.R. §
2509.75-8 (stating that a person who performs purely ministerial
functions, such as calculation of benefits, is not a fiduciary).

To the extent that Plaintiff contends that the recalculation
of his disability benefits and the decision to recoup the alleged
overpayment involves an exercise of discretion and/or Plan
interpretation by the Disability Department such that Pitney
Bowes should be found to exercise control, at least in
Plaintiff's case, over the administration of the Plan, such
contention is rejected.  Application of the relevant Plan

_____

[12] Section 9.9 of the Plan states:

9.9   Recovery of Benefits - In the event a person receives a
benefit payment under the Plan which is in excess of the
benefit payment that should have been made, the Disability
Department shall have the right to recover the amount of such
excess from such person.   The Disability Department may,
however, at its option, deduct the amount of such excess from
any subsequent benefits payable under the Plan to, or for, the
person.

Plan § 9.9.  Viewed in isolation, the first sentence of this Section
could be read as merely giving the Disability Department the "right to
recover" the overpayment without necessarily mandating such action.
So viewed, the sentence would suggest that the Disability Department
is exercising discretion in determining to recover the overpayment
from Plaintiff.  However, when considered in conjunction with the
second sentence, it seems reasonably clear that the Disability
Department's discretion is limited to allowing the recovery to be
achieved by the withholding of future payments.  The discretion does
not extend to determining whether there shall be a recovery of the
overpayment.  The recovery of the overpayment is mandatory.

provisions, see Plan ¶¶ 2.3 (stating what constitutes "Annual Earnings"), 2.33 (defining "Totally Disabled"), 5.10 (defining "Recurrent Disability"), to Plaintiff's circumstances does not require the exercise of discretion.

Turning to the August 7, 2003, letter[13] which informed Plaintiff of the alleged miscalculation, see Plaintiff's Mem., Ex. B (Letter from Bianco to Plaintiff of 8/7/03), while it is printed on Pitney Bowes stationery, the first paragraph indicates that it is from the Disability Department, see id. Reading the entire letter leads to the conclusion that the action described therein (i.e., the cessation of benefits until the alleged overpayment is recouped) is being taken by the Disability Department.

Thus, neither the Plan nor the letter supports the inference that Pitney Bowes exercised control over or influenced the administration of the Plan or the decision to cease paying benefits and recoup the alleged overpayment. To the contrary, they more likely support the inference that Pitney Bowes did not control the administration of the Plan and was not involved in the decision to cease paying benefits. See Beegan v. Associated Press, 43 F.Supp.2d at 74 (reaching same conclusion regarding allegations against employer in that case).[14]

---

[13] See n.6, n.10.

[14] Plaintiff has also attached to his memorandum a copy of an April 16, 1998, letter from a claims examiner at Pitney Bowes, advising Plaintiff that he had been approved for Plan benefits effective February 1, 1998. See Plaintiff's Mem., Ex. A (Letter from Din to Plaintiff of 4/16/98). Unlike the Plan and the August 7, 2003, letter which were specifically referenced in the Complaint, see Complaint ¶¶ 5, 16, this letter is not explicitly referenced in the Complaint. While Paragraph 15 alleges that the amount of Plaintiff's monthly disability benefit "was confirmed by Pitney Bowes through various letters over the years ...," id. ¶ 15, this general reference to correspondence does not make the April 16, 1998, letter "integral to or explicitly relied upon in the [C]omplaint," Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co., 228 F.3d at 32, such that it

Plaintiff relies heavily on <u>Law v. Ernst & Young</u>, 956 F.2d 364 (1st Cir. 1992), to support his argument that Pitney Bowes should be treated as the Plan Administrator, <u>see</u> Plaintiff's Mem. at 7-11.   In <u>Law</u>, the First Circuit found that the defendant company was properly treated as the de facto administrator of the retirement plan at issue for purposes of the plaintiff's § 1132(c) claim.   <u>See</u> <u>Law v. Ernst & Young</u>, 956 F.2d at 374.   The court reached this conclusion notwithstanding the fact that the plan specifically designated a retirement committee as the plan administrator.   <u>See</u> <u>id.</u> at 373.   After noting the "plethora of evidence indicating that [the employer] had assumed and controlled the plan administrator's function of furnishing required information in response to a plan beneficiary's request," <u>id.</u> at 372, the <u>Law</u> court explained:

> If, to all appearances, [the employer] acted as the plan administrator in respect to dissemination of information concerning plan benefits, it may properly be treated as such for purposes of the liability provided under § 1132(c) .... [W]here an entity of which the administrator

---

may be considered for purposes of the instant Motion.   The court declines to convert the Motion to one for summary judgment at this early stage of the proceedings.   <u>Cf.</u> <u>Whiting v. Maiolini</u>, 921 F.2d 5, 7 (1st Cir. 1990)("When discovery has barely begun and the nonmovant has had no reasonable opportunity to obtain and submit additional evidentiary materials to counter the movant's affidavits, conversion of a Rule 12 motion to a Rule 56 motion is inappropriate.").

Even if the court were to disregard this procedural barrier, the April 16, 1998, letter, does little to bolster Plaintiff's argument that Pitney Bowes exercised control or influence over the Plan.   The information contained therein appears to fit comfortably within the scope of the administrative responsibilities which the Committee has delegated to the Disability Department.   <u>See</u> Plan ¶ 7.6.   While the letter does not explicitly refer to the Disability Department, it does state that Plaintiff will need written permission "from the Long Term Disability Administrator," Plaintiff's Mem., Ex. A at 1, if he plans "to travel, pursue or maintain employment or schooling outside of Pitney Bowes, Inc. during the period [he is] out of work on disability," <u>id.</u>   The reasonable inference from this statement is that it is the Administrator (i.e., the Committee) which controls the Plan.

14

> is part in effect holds itself out as the plan
> administrator by officially disseminating such
> information, we think it is subject to § 1132(c)
> liability should it fail to discharge that role in a
> proper way. Hence, where as here plan documents place
> the responsibility for providing information upon an
> internal committee of a firm, but the firm in practice
> carries out that function, we see no reason not to hold
> the firm liable under § 1132(c) when it fails to provide
> the information in the timely manner required by law.

Law v. Ernst & Young, 956 F.2d at 373. Based on this reasoning,
the Law court held "that, for purposes of [plaintiff's] § 1132(c)
claim, the district court properly regarded [the employer] as the
plan administrator." Id. at 372; see also id. at 374 (restating
this holding).

It is clear from the Law opinion that the Court of Appeals
attached great significance to the fact that the defendant
employer had assumed responsibility for performance of a specific
statutory duty pursuant to 29 U.S.C. § 1132(c). See Law v. Ernst
& Young, 956 F.2d at 372-74. In particular, the Court of Appeals
noted that to hold that an entity not named as administrator in
plan documents could not be held liable under § 1132(c), "even
though it actually controls the dissemination of plan
information, would cut off the remedy Congress intended to
create." Id. at 373. Such a ruling, the Court of Appeals
explained, would mean that a participant or beneficiary would
have no recourse against anyone for being deprived of information
to which s/he was statutorily entitled.[15] See id. The Court of

---

[15] Explaining this possibility, the Court of Appeals wrote:

> If a company ignored in practice any distinction between the
> administrator and itself, and assumed responsibility for
> responding to plan inquiries (as [the employer] appears to
> have done here), both it and the purported plan administrator
> would be immune from liability. A § 1132(c) suit against the
> company would fail, because the company itself was not named
> administrator in the plan documents. Likewise, a suit

Appeals also appears to have attached significance to the fact
that "[t]here was no indication that the Retirement Committee
[the designated plan administrator] had delegated its information
function to Brewster [the company employee who provided plaintiff
with erroneous information about the amount of his estimated
retirement benefit]." Id. at 374 n.12.

In contrast, here Plaintiff is not asserting a § 1132(c)
claim for being denied information about Plan benefits.  Rather,
his claims are made pursuant to § 1132(a) to recover benefits
allegedly due him (Count I) and for alleged breach of fiduciary
duty (Count VIII).  A ruling that his ERISA claims against Pitney
Bowes must be dismissed will not leave him without recourse as
Plaintiff may seek leave to file an amended complaint, naming the
Plan and the Committee (the designated Plan Administrator) as
defendants.  Such an amended complaint would conform to the
applicable law, i.e., that ERISA permits suits to recover
benefits only against the Plan as an entity and suits for breach
of fiduciary duty only against the fiduciary, see Beegan v.
Associated Press, 43 F.Supp.2d at 73.  Thus, the imperative that
Plaintiff not be left without a remedy, which appears to have
been a determinative factor in Law, is absent here.

Also distinguishing Law from the instant case is the fact
that here the Committee, the designated Plan Administrator, has
specifically delegated to the Disability Department "the day-to-
day, on-going administrative responsibilities of the Plan."  Plan
¶ 7.6; see also id. ¶ 7.1.  In Law there was no basis for

---

against the plan administrator would fail, because employees
would have had no reason to request information from the plan
administrator if company personnel assumed responsibility for
such requests.   There being no request to the designated plan
administrator, that entity could not be held liable for
failure to respond properly.

Law v. Ernst & Young, 956 F.2d at 373.

16

concluding that the people with whom the plaintiff was dealing in
his quest for information were acting on behalf of the Retirement
Committee, a point the Court of Appeals specifically noted, see
Law v. Ernst & Young, 956 F.2d at 374 n.12.   In the instant
matter, the delegation of responsibility by the Committee to the
Disability Department is explicit.

In short, while there are some factual similarities between
Law and the instant case (i.e., the use of Company stationery for
the August 7, 2003, letter, the omission of Nurse Bianco's job
title from the letter, and the letter's failure to identify her
connection to Disability Department and/or the Plan), this court
does not read Law as holding that such acts and/or omissions
permit a beneficiary to sue an employer for recovery of benefits
or for breach of fiduciary duty, at least where the Plan
explicitly delegates day-to-day, on-going administrative
responsibilities to the employer's disability department and
there are available defendants against whom Plaintiff could file
an amended complaint, namely the Plan and the Committee.   To the
extent that Plaintiff contends that the holding in Law authorizes
the claims pled in Counts I and VIII, his argument is rejected.

In summary, the court is not persuaded that the August 7,
2003, letter and the Committee's delegation of the ongoing, day-
to-day administrative responsibilities under the Plan to the
Pitney Bowes' Disability and Benefits Departments, see Plan ¶¶
7.1, 7.6, make it a reasonable inference that Pitney Bowes acted
as administrator or controlled the administration of the Plan,
cf. Terry v. Bayer Corp., 145 F.3d 28, 36 (1st Cir. 1998)
(rejecting argument that third party which provided
administrative assistance to benefit committee and which
terminated plaintiff's benefits was the real decision-maker where
"[t]here is nothing to suggest that [third party] was doing
anything other than applying the terms of the Plan as written to

17

[plaintiff's] particular situation").  While the two departments
are part of Pitney Bowes, they do not have discretionary
authority under the Plan.  Similarly, the court is not persuaded
that it can be reasonably inferred from the allegation of the
Complaint, the Plan, and the August 7, 2003, letter that Pitney
Bowes acted as a de facto Plan administrator such that it may be
sued under ERISA for breach of fiduciary duty.

### 4.  Conclusion Re Counts I and VIII

I recommend that the Motion be granted as to Counts I and
VIII because the allegation in paragraph 5 of the Complaint that
Pitney Bowes is the plan fiduciary is directly contradicted by
the Plan document and it cannot be reasonably inferred from the
other allegations in the Complaint and the August 7, 2003, letter
that Pitney Bowes is a de facto administrator of the Plan.
However, I further recommend that Plaintiff be allowed to file an
amended complaint.

## B.  Counts II and VII (Breach of Contract)

### 1.  Nature of Claims

In Count II Plaintiff alleges that Defendant breached the
February 20, 2002, Settlement Agreement.  See Complaint ¶¶ 32-36.
Specifically, Plaintiff charges that "[b]y its unilateral
decision to change Plaintiff's benefit calculation ... Pitney
Bowes has breached the [Settlement Agreement] contract entered
into by the parties."  Id. ¶ 35.  Count VII asserts that
Defendant breached the terms of the Plan "by unilaterally
insisting upon an incorrect interpretation of section 2.20 of the
[Plan] and imposing its incorrect interpretation upon the
Plaintiff to deny him substantial LTD benefits."  Id. ¶ 63.
Defendant argues that ERISA preempts both of these claims.  See
Defendant's Mem. at 8-9.

### 2.  Law

"Section 514(a) of ERISA, 29 U.S.C. § 1144(a), preempts 'any

18

and all State laws insofar as they may now or hereafter relate to
any employee benefit plan' covered by ERISA." <u>Shaw v. Delta Air
Lines, Inc.</u>, 463 U.S. 85, 91, 103 S.Ct. 2890, 2897, 77 L.Ed.2d
490 (1983). "The term 'State law' includes all laws, decisions,
rules, regulations, or other State action having the effect of
law, of any State." <u>Hampers v. W.R. Grace & Co.</u>, 202 F.3d 44, 49
(1st Cir. 2000)(quoting ERISA § 514(c)(1), 29 U.S.C. §
1144(c)(1)).

In determining the scope of this preemption provision:

> courts have analyzed Congress' intent and concluded that
> Congress meant to draft a broad and comprehensive ERISA
> preemption provision. <u>See</u> <u>FMC Corp. v. Holliday</u>, 498
> U.S. 52, 58, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990)("The
> pre-emption clause is conspicuous for its breadth.   It
> establishes as an area of exclusive federal concern the
> subject of every state law that 'relate[s] to' an
> employee benefit plan governed by ERISA."); <u>Pilot Life
> Ins. Co. v. Dedeaux,</u> 481 U.S. 41, 46, 107 S.Ct. 1549, 95
> L.Ed.2d 39 (1987)(Congress drafted ERISA's "deliberately
> expansive" language "to 'establish pension plan
> regulation as exclusively a federal concern.'")(citing
> <u>Alessi v. Raybestos-Manhattan, Inc.</u>, 451 U.S. 504, 523,
> 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981)); <u>District of
> Columbia v. Greater Washington Board of Trade</u>, 506 U.S.
> 125, 127, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992)("ERISA's
> pre-emption provision assures that federal regulation of
> covered plans will be exclusive."); <u>Boston Children's
> Heart Foundation, Inc. v. Nadal-Ginard</u>, 73 F.3d 429, 439
> (1st Cir. 1996)(stating Congress drafted the ERISA
> preemption provision "to ensure uniformity in such plans
> by preventing states from imposing divergent obligations
> upon them")(citations omitted).

<u>Massey v. Stanley-Bostitch, Inc.</u>, 255 F.Supp.2d 7, 12-13 (D.R.I.
2003)(alteration in original).

"ERISA preemption analysis ... involves two central
questions: (1) whether the plan at issue is an 'employee benefit
plan' and (2) whether the cause of action 'relates to' this
employee benefit plan." <u>McMahon v. Digital Equip. Corp.</u>, 162
F.3d 28, 36 (1st Cir. 1998)(citing <u>Rosario-Cordero v. Crowley

Towing & Transp. Co., 46 F.3d 120, 124 (1st Cir. 1995)).  The
Supreme Court has identified three categories of state laws that
"relate to" ERISA plans in such a way that preemption of those
laws furthers ERISA's purpose of ensuring that plans and plan
sponsors will be subject to a uniform body of benefits law.  See
Hampers v. W.R. Grace & Co., 202 F.3d at 51 (explaining New York
State Conference of Blue Cross & Blue Shield Plans v. Travelers
Ins. Co., 514 U.S. 645, 658-59, 115 S.Ct. 1671, 131 L.Ed.2d 695
(1995)).  The three categories are: "(1) state laws that
'mandate[ ] employee benefit structures or their administration,'
(2) state laws that 'bind plan administrators to [a] particular
choice,' and (3) state law causes of action that provide
'alternative enforcement mechanisms' to ERISA's enforcement
regime."  Id. (alterations in original).  With regard to the
third category, the First Circuit has "stated that in order to
assess whether the state law cause of action is an alternative
enforcement mechanism, [a court] must 'look beyond the face of
the complaint' and determine the real nature of the claim
'regardless of plaintiff's ... characterization.'"  Id. (quoting
Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 5 (1st Cir.
1999))(second alteration in original).  The First Circuit has
also counseled that "a cause of action 'relates to' an ERISA plan
when a court must evaluate or interpret the terms of the ERISA-
regulated plan to determine liability under the state law cause
of action."  Id. at 52.

### 3.  **Application**

Plaintiff bases the breach of contract claim pled in Count
II on Paragraph 5 of the Settlement Agreement.  See Complaint ¶
34.  That paragraph provides in relevant part that "Hatch will
continue to ... receive those benefits, to which he is entitled
as an employee on long-term disability leave ("LTD") pursuant to
the terms of the LTD Summary Plan, as long as he continues to

20

remain eligible under the requirements of the LTD Summary Plan."
Id. ¶ 34 (quoting Paragraph 5 of the Settlement Agreement).  To
determine whether Pitney Bowes is liable to Plaintiff for breach
of contract, the court would first have to decide whether
Plaintiff has been denied benefits to which he is entitled under
the Plan.  This could only be done by interpreting the Plan.
Accordingly, I find that Plaintiff's breach of contract cause of
action which is pled in Count II relates to the Plan.  See
Hampers v. W.R. Grace & Co., 202 F.3d at 52 (stating that a state
law cause of action "relates to" an ERISA plan when a court must
interpret the terms of the plan to determine liability under that
cause of action).  I further find that it constitutes an
alternate enforcement mechanism which is preempted by ERISA.  See
id. at 54 (finding plaintiff's state law contract claim preempted
where it was "an alternative to his claims for ... benefits ...
brought under ERISA").

In reaching this conclusion, the court notes that three of
the factors which caused the First Circuit in Hampers to find
that the plaintiff's state law contract claim was an alternative
to his ERISA claims (and, therefore, preempted by ERISA) are also
present here.  First, Plaintiff's state law claim against Pitney
Bowes alleges precisely the same conduct that underlies his claim
for benefits pursuant to ERISA.  See Hampers, 202 F.3d at 54.
Second, the relief requested by Plaintiff is the same for both
causes of action.  See id.; see also Complaint at 10 (Prayer for
Relief).  Third, the central liability question at issue in the
state law breach of contract claim against Pitney Bowes, whether
the reduction of Plaintiff's monthly disability benefits violates
the Settlement Agreement's requirement that Plaintiff "continue
to ... receive those benefits, to which he is entitled as an
employee on long-term disability leave ("LTD") pursuant to the
terms of the LTD Summary Plan ...," Complaint ¶ 20 (quoting

21

Paragraph 5 of the Settlement Agreement), must be viewed in light of the terms of the Plan, see Hampers, 202 F.3d at 54.

As to Count VII, Plaintiff concedes in his memorandum that the breach of contract claim pled therein is preempted. See Plaintiff's Mem. at 2. His counsel confirmed this concession at the October 12, 2005, hearing. See Tape of 10/12/05 Hearing. Accordingly, further discussion regarding Count VII is unnecessary.

### 4. Conclusion Re Counts II and VII

I find that Plaintiff's state law breach of contract claims (Counts II and VII) are alternative enforcement mechanisms to his ERISA claim (Count I) and that, therefore, they are preempted. Cf. Massey v. Stanley-Bostitch, 255 F.Supp.2d 7, 14 (D.R.I. 2003) (finding plaintiff's state common law promissory estoppel claim duplicative and preempted where he simultaneously brought a claim under 29 U.S.C. § 1132(a)(1)(B) seeking precisely the same relief). Accordingly, the Motion to Dismiss should be granted as to Counts II and VII. I so recommend.

### C. Count III (Equitable Estoppel)

#### 1. Nature of Claim

In Count III, Plaintiff seeks to have Defendant equitably estopped from allegedly reinterpreting the language of the Plan in order to seek substantial recoupment of disability benefits paid to Plaintiff. See Complaint ¶ 46. In support of this claim, Plaintiff asserts that he relied to his detriment on representations and promises by Defendant on two occasions. See id.

According to Plaintiff, the first occasion was after Pitney Bowes informed him in writing "that his second medical leave of absence would officially commence on February 1, 1998[,] for the purpose of calculating his monthly LTD benefits, and that Plaintiff's 1997 earnings would accordingly be used as the 'base

22

year' for the purpose of calculating his monthly LTD benefits."
Id. ¶ 38.   Plaintiff claims that Pitney Bowes "gave Plaintiff the
information regarding his benefit rate calculation for the
purpose of inducing Plaintiff to rely upon the information and to
convince Plaintiff to accept LTD benefits and to remain out of
work indefinitely." Id. ¶ 39.   Plaintiff further claims that he
"relied upon this information in deciding to accept LTD benefits,
and in deciding to remain out of work on a medical leave of
absence." Id. ¶ 40.

Concerning the second occasion, Plaintiff avers that when he
entered into the Settlement Agreement with Pitney Bowes in 2002
to resolve the discrimination and retaliation lawsuit which he
had filed against the Company in 2001, the Company "knew that
maintenance of the status quo of Plaintiff's LTD benefits was a
specific inducement which directly led to the Plaintiff's
decision to settle that litigation." Complaint ¶ 43.   Plaintiff
alleges that he "relied upon this information in deciding to
accept the terms of the [Settlement Agreement] and to dismiss his
pending federal court litigation." Complaint ¶ 44.   He asserts
that by executing the Settlement Agreement Pitney Bowes "ratified
its prior decision regarding Plaintiff's receipt of LTD benefits
and the amount of money he was receiving per month." Id. ¶ 45.

The Complaint does not allege whether Plaintiff's estoppel
claim is based on Rhode Island common law or the federal common
law of estoppel.   Defendant argues that to the extent it is
brought under Rhode Island common law, ERISA preempts it, see
Defendant's Mem. at 9, and that to the extent that it is brought
under the federal common law of ERISA, "it is 'still an open
question in this circuit whether an equitable estoppel claim is
permitted under ERISA,'" id. (quoting Mauser v. Raytheon Co.
Pension Plan for Salaried Employees, 239 F.3d 51, 57 (1st Cir.
2001), and that "[g]iven the identical nature of Plaintiff's

allegations with his fiduciary breach and benefits claims, no
independent claim for equitable estoppel exists in the First
Circuit," id. at 10.  Because Plaintiff states in his memorandum
"that Congress intended that federal courts fashion federal
common law under which estoppel claims may be brought pursuant to
ERISA," Plaintiff's Mem. at 17-18, the court treats Count III as
attempting to plead a claim under the federal common law of
ERISA.

### 2.  Law

"An equitable estoppel claim contains two elements.  First,
[defendant] must have made 'definite misrepresentations of fact'
to [plaintiff] with reason to believe that [plaintiff] would rely
on it.  Law v. Ernst & Young, 956 F.2d 364, 368 (1st Cir. 1992)
(citation and quotation omitted).  Second, [plaintiff] must 'rely
reasonably on the misrepresentation to his detriment.'"
Mauser v. Raytheon Co. Pension Plan for Salaried Employees, 239
F.3d at 57.

"It is ... still an open question in this circuit whether an
equitable estoppel claim is permitted under ERISA."  Id.; see
also Senior v. NSTAR Elec. & Gas Corp., 372 F.Supp.2d 159, 164
(D. Mass. 2005)(quoting Mauser); Massey v. Stanley-Bostitch, 255
F.Supp.2d 7, 14 (D.R.I. 2003)(noting openness of the question).
In Mauser, the Court of Appeals noted that "[t]he Supreme Court
has directed that federal courts may engage in interstitial rule-
making when it is in the interest of justice."  Mauser, 239 F.3d
at 57.  However, the Court of Appeals also noted that "we must
exercise caution in creating new common law rules for pension
plans; we should only act when there is, in fact, a gap in the
structure of ERISA or in the existing federal common law relating
to ERISA."  Id.  Finding that "Mauser's equitable estoppel claim
is virtually indistinguishable from his claim ... that the Plan
Summary violates ERISA's disclosure provisions," id. at 58, the

24

First Circuit held that "there is not a more general equitable estoppel claim based solely on an inadequate Plan Summary," id. The Court of Appeals reserved "for an appropriate case whether there may exist an equitable estoppel claim in cases where misrepresentations exist apart from the Plan Summary." Mauser, 239 F.3d at 58.

### 3. Application

Plaintiff offers no argument regarding that portion of his estoppel claim which is based on the contention that he relied upon Pitney Bowes' representations regarding how his benefit rate would be calculated in deciding to accept LTD benefits and deciding to remain out of work. See Plaintiff's Mem. at 17-19; see also Complaint ¶¶ 38-40. This is not surprising given that if Plaintiff were able to perform the material duties of his occupation when he "decid[ed] to accept LTD benefits[] and ... decid[ed] to remain out of work on a medical leave of absence," Complaint ¶ 40, he would not have met the Plan's definition of totally disabled, see Plan ¶ 2.33, and, thus, would not have been eligible for disability benefits, see id. Thus, this portion of Plaintiff's estoppel claim is untenable on its face.

As to the portion of the claim which is based on alleged representations and promises made by the Company in connection with the Settlement Agreement, the court first notes that Plaintiff is unable to satisfy an essential element of equitable estoppel. Plaintiff's basic contention, i.e., that the Company made representations and promises regarding the amount of benefits which Plaintiff would receive and how those benefits would be calculated in order to induce Plaintiff to execute the Settlement Agreement, is contradicted by the Settlement Agreement, and the court may not ignore that document. See Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000)("It is a well-settled rule that when

a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.").

The Settlement Agreement does not guarantee that Plaintiff will continue to receive any particular amount of disability benefit.  It only states that Pitney Bowes:

> acknowledges that Hatch will continue to maintain that status, and receive those benefits, **to which he is entitled** as an employee on long-term disability leave ("LTD") pursuant to the terms of the LTD Summary Plan, **as long as he continues to remain eligible under the requirements of the LTD Summary Plan.**

Settlement Agreement ¶ 5 (bold added).  Moreover, the Settlement Agreement also explicitly states that it "is the complete understanding between the parties and may not be changed orally." Settlement Agreement ¶ 16.  Thus, Plaintiff cannot establish the necessary element of his estoppel claim that Pitney Bowes made a definite representation regarding either the amount of benefits which Plaintiff would receive in the future or that the amount of such benefits would not be subject to recalculation in order to comply with the requirement that Plaintiff be "entitled" to the benefits he receives.

Even if Plaintiff were able to satisfy the two elements required for a promissory estoppel claim, the court finds his argument for allowing the cause of action in this case unpersuasive.  Plaintiff argues that his estoppel claim is not ERISA preempted because "it is not based upon a modification of the Plan, but instead based upon the negotiations by the parties in a settlement conference held before this Court by Judge Lovegreen which resulted in a compromise of Plaintiff's pending litigation against Defendant."  Plaintiff's Mem. at 18-19 (citing Law v. Ernst & Young, 956 F.2d 364, 370 (1st Cir. 1992)).  Plaintiff's disclaimer that this cause of action is not based upon "a modification of the Plan" appears to stem from a

distinction made in <u>Kane v. Aetna Life Ins.</u>, 893 F.2d 1283 (11th
Cir. 1990), which was explained by the First Circuit in <u>Law v.
Ernst & Young</u>:

> Thus, the <u>Kane</u> court acknowledged that an ERISA plan
> could not be *modified* by the doctrine of estoppel.   The
> <u>Kane</u> court, however, found **a narrow window** for estoppel
> recovery where the representation relied upon reflected
> an *interpretation* of the plan about which reasonable
> persons could disagree.

<u>Law v. Ernst & Young</u>, 956 F.2d at 370 (bold added).   Presumably,
Plaintiff's argument is that the statements allegedly made by
Pitney Bowes regarding the amount of his benefits during the
course of the Settlement Conference constitute an
"interpretation" of the Plan about which reasonable persons could
disagree and that, therefore, his estoppel claim based on such
statements fits within the narrow window which the First Circuit
identified in <u>Kane</u>.   However, as already noted, the Settlement
Agreement does not purport to interpret the Plan or require that
any particular amount of benefits be paid to Plaintiff.   <u>See</u>
Settlement Agreement ¶ 5.   To the extent that Plaintiff relies
upon oral representations allegedly made by Company
representatives during the settlement conference, Plaintiff's
argument founders on the Settlement Agreement's explicit
declaration that the document reflects "the complete
understanding between the parties and may not be changed orally,"
<u>id.</u> ¶ 16.

In sum, the court is not persuaded that Plaintiff should be
permitted to assert an equitable estoppel claim in the
circumstances of this case or that this cause of action differs
from his claim for relief under Section 1132 (Count I).   <u>Cf.
Senior v. NSTAR Elec. & Gas Corp.</u>, 372 F.Supp.2d at 164
(dismissing equitable estoppel claim where plaintiff did not
address why this Circuit should permit such claim under ERISA or

27

how it differed from plaintiff's claim for relief under Section
1132(a)(1)(B) for benefits).

### 4.   Conclusion Re Count III

For the reasons stated above, I find that the Motion should
be granted as to Count III because: 1) Plaintiff cannot establish
an essential element of his claim of equitable estoppel and 2)
his argument for permitting an equitable estoppel claim in the
instant action is unpersuasive.  I so recommend.

### D.  Count IV (ADA Retaliation/Discrimination)

#### 1.   Nature of Claim

In Count IV Plaintiff alleges that the:

> so-called benefit calculation "mistake" constitutes a
> continuing course of illegal discrimination pursuant to
> [the Americans with Disabilities Act of 1990] 42 U.S.C.
> § 12101 et seq. against Plaintiff because of Plaintiff's
> mental disability and was done in unlawful retaliation
> for Plaintiff's former co-filing of a Charge of
> Discrimination in 1999 with the Rhode Island Commission
> for Human Rights and the United States Equal Employment
> Opportunity Commission ... and for pursuing a civil suit
> with this Court to redress this illegal disability
> discrimination (C.A. No: 01-252 [L]).

Complaint ¶ 51.

#### 2.   Law

##### a.   Discrimination

The Americans with Disabilities Act of 1990 (the "ADA")
prohibits discrimination against a "qualified individual with a
disability," 42 U.S.C. § 12112(a),[16] on the basis of that

--------

[16] Title I of the ADA proscribes discrimination in the terms and
conditions of employment:

(a) General Rule

No covered entity shall discriminate against a qualified
individual with a disability because of the disability of such
individual in regard to job application procedures, the
hiring, advancement, or discharge of employees, employee

28

disability in the "terms, conditions, and privileges of
employment," id.; see also Fletcher v. Tufts Univ., 367 F.Supp.2d
99, 104 (D. Mass. 2005); Conners v. Maine Med. Ctr., 42 F.Supp.2d
34, 39 (D. Me. 1999), reconsideration granted, aff'd, 70
F.Supp.2d 40, 43 (D. Me. 1999).  "[D]isability benefits are
'fringe benefits' under the ADA ...." Conners v. Maine Med.
Ctr., 42 F.Supp.2d at 40; see also Ford v. Schering-Plough Corp.,
145 F.3d 601, 605-06 (3rd Cir. 1998)("Title I of the ADA
prohibits discrimination by employers regarding the 'terms,
conditions, and privileges' of employment, 42 U.S.C. § 12112(a),
including 'fringe benefits' such as disability benefits.  Id. §
12112(b)(2).").

A "'qualified individual with a disability' means an
individual with a disability who, with or without reasonable
accommodation, can perform the essential functions of the
employment position that such individual holds or desires."  42
U.S.C. § 12111(8).  Plaintiff here does not contend that he can
perform essential functions of his job.  In fact, Plaintiff
alleges that he is totally disabled.  See Complaint ¶ 17
(alleging that Plaintiff meets the Plan's definition of "totally
disabled").  Thus, this case presents the question of whether an
employee (or a former employee) who is no longer able to perform
the essential functions of his job (or former job), either with
or without a reasonable accommodation, is "a qualified individual
with a disability" such that he can bring an action under the ADA

---

compensation, job training, and other terms, conditions, and
privileges of employment.

42 U.S.C. § 12112(a); see also Conners v. Maine Med. Ctr., 42
F.Supp.2d 34, 39 (D. Me. 1999), reconsideration granted, aff'd, 70
F.Supp.2d 40, 43 (D. Me. 1999).

alleging discrimination with regard to disability benefits.[17]

The First Circuit has yet to address this question, <u>see</u>
<u>Fletcher v. Tufts Univ.</u>, 367 F.Supp.2d at 104, and the issue has
produced a split among the circuits which have addressed it,
<u>compare</u> <u>Ford v. Schering-Plough Corp.</u>, 145 F.3d 607 (allowing
"disabled former employees to sue their former employers
regarding their disability benefits so as to effectuate the full
panoply of rights guaranteed by the ADA"); <u>Castellano v. City of</u>
<u>New York</u>, 142 F.3d 58, 69 (2nd Cir. 1998)("An interpretation
excluding from the ADA former employees or employees who can no
longer perform the essential functions of their former employment
would undermine the purpose of preventing disability
discrimination in the provision of fringe benefits."), <u>with</u> <u>Weyer</u>
<u>v. Twentieth Century Fox Film Corp.</u>, 198 F.3d 1104, 1108 (9th
Cir. 2000)("A totally disabled person who cannot 'perform the
essential functions of the employment position' with or without
reasonable accommodations ... cannot be a 'qualified individual'
entitled to sue under Title I of the [ADA]."); <u>Parker v. Metro.</u>
<u>Life Ins.</u>, 99 F.3d 181, 186 (6th Cir. 1996)(rejecting as circular
reasoning that the ADA's express prohibition against
discrimination in fringe benefits would be significantly
undermined if employees must prove they can perform their jobs
because "virtually no employee could ever challenge
discrimination in the provision of long-term disability
benefits"), <u>rev'd on other grounds</u>, 121 F.3d 1006 (6th Cir. 1997)

---

[17] To state a prima facie case of discrimination under the ADA a
plaintiff must allege in his Complaint that he: (1) suffered from a
disability as defined by the ADA; (2) was otherwise qualified to
perform the essential functions of his employment with or without
reasonable accommodation; and (3) was subject to an adverse employment
action. <u>See</u> <u>Benoit v. Technical Mfg. Corp.</u>, 331 F.3d 166, 175 (1st
Cir. 2003); <u>see also</u> <u>Feliciano v. Rhode Island</u>, 160 F.3d 780, 784 (1st
Cir. 1998)(stating the same elements where the adverse employment
action was discharge).

(en banc); EEOC v. CNA Ins. Cos., 96 F.3d 1039, 1043-45 (7th Cir. 1996)(rejecting arguments that a totally disabled former employee fits within the definition of a qualified individual with a disability).

A similar split in opinion is reflected in district court opinions. Compare Fletcher v. Tufts Univ., 367 F.Supp.2d at 106 (concluding "that former employees, who were able to perform the essential functions of the employment position for a period sufficient to qualify for long-term benefits and who allege that they are discriminated against with respect to long-term disability benefits on the basis of their disability, have standing to assert that claim"); Iwata v. Intel Corp., 349 F.Supp.2d 135, 146 (D. Mass. 2004)(finding that "it would frustrate the purpose of the ADA to deny [plaintiff] statutory standing to bring this claim"); Conners v. Maine Med. Ctr., 42 F.Supp.2d at 45 (finding "that the term 'qualified individual with a disability' should be interpreted to include individuals formerly employed and currently completely disabled so as to be eligible for the disability benefits offered by his or her former employer" and holding that "former employees currently totally disabled are 'qualified individuals with a disability' and may sue under the ADA for discrimination in disability benefits that they receive post-employment"), with Fobar v. City of Dearborn Heights, 994 F.Supp. 878, 883 (E.D. Mich. 1998)("[T]he ADA, although prohibiting discrimination in the area of fringe benefits, does not apply to people who are no longer able to perform the essential functions of their jobs.").

This court finds the opinions of District Judge Lindsay in Fletcher v. Tufts Univ., 367 F.Supp.2d 99, 104-106 (D. Mass. 2005), Chief Judge Young in Iwata v. Intel Corp., 349 F.Supp.2d 135, 144-47 (D. Mass. 2004), and District Judge Carter in Conners v. Maine Med. Ctr., 42 F.Supp.2d 34, 39-45 (D. Me. 1999), well

reasoned and persuasive.  I also have been influenced by the
Second and Third Circuit opinions which have reached the same
conclusion.  See Ford v. Schering-Plough Corp., 145 F.3d at 607
("interpreting Title I of the ADA to allow disabled former
employees to sue their former employers regarding their
disability benefits so as to effectuate the full panoply of
rights guaranteed by the ADA"); Castellano v. City of New York,
142 F.3d at 69 (holding "that a former employee with a disability
who 'with or without reasonable accommodation' could 'perform the
essential functions of the employment position' for a period
sufficient to establish entitlement to an employer-related fringe
benefit (i.e., who is otherwise entitled to receive a fringe
benefit) is a 'qualified individual with a disability' within
Title I of the ADA for the purpose of challenging alleged
discrimination in the provision of that fringe benefit").
Accordingly, I find that Plaintiff is a "qualified individual
with a disability" under the ADA, and his claim for
discrimination is not precluded by virtue of the fact that he
presently contends that he is disabled and no longer able to
perform the essential functions of his former job.

### b.  **Retaliation**

A prima facie case of retaliation under the ADA is pled when
Plaintiff alleges 1) that he engaged in ADA protected conduct, 2)
that he suffered an adverse employment action, and 3) that there
was a causal connection between his conduct and the adverse
employment action.  See Benoit v. Technical Mfg. Corp., 331 F.3d
166, 177 (1st Cir. 2003).  A reduction or elimination of an
employee's fringe benefit is an adverse employment action.  See
Hildebrandt v. Illinois Dep't of Natural Res., 347 F.3d 1014,
1030 (7th Cir. 2003).

### 3.  **Application**

Pitney Bowes, citing Tompkins v. United Health Care of New

32

England, Inc., 203 F.3d 90 (1st Cir. 2000), argues that "an allegation of wrongful refusal to provide benefits cannot, as a matter of law, support a claim for discrimination or retaliation under the ADA ...." Defendant's Mem. at 11. However, in Tompkins the First Circuit emphasized that "the complaint is devoid of any allegation that [defendant's] review of the [plaintiffs'] claim was discriminatory or differed in any way from the ordinary process afforded any plan member challenging a benefit denial." Tompkins v. United Health Care of New England, Inc., 203 F.3d at 96; see also id. ("[The plaintiffs] make no allegations that the review process itself was discriminatory. Therefore, they do not allege the discriminatory denial of any benefit protected by Title I or Title III of the ADA. Their ADA claims were properly dismissed.") Here, drawing every reasonable inference in favor of letting this cause of action proceed, see id. at 93, Plaintiff contends that the recalculation of his benefits was discriminatory and that it was done in retaliation for his having filed the prior complaint of discrimination and lawsuit against Defendant, see Complaint ¶ 51. Thus, unlike Tompkins, Plaintiff's Complaint can be read as alleging that "the review process itself," Tompkins, 203 F.3d at 96, i.e., the act of checking to see if Plaintiff was receiving the correct amount of benefits, was done in a discriminatory fashion.

Pitney Bowes construes Plaintiff's Complaint too narrowly in suggesting that Count IV is based simply on a failure to provide benefits. See Defendant's Reply Mem. at 4. Read broadly, Plaintiff alleges that the act of reviewing his file and reviewing the calculation of his benefits was discriminatory and that it was done in retaliation for his filing of complaints of discrimination with the RICHR and the EEOC. See Complaint ¶¶ 47-51. If discovery in this case reveals that Plaintiff's file was singled out for review when other files were not similarly

reviewed or that the review was undertaken as a result of a
directive from a Pitney Bowes executive to the Disability
Department which required that department to review only
Plaintiff's file or to review only the files of persons receiving
disability benefits who had previously filed discrimination
complaints and/or lawsuits against the Company, Plaintiff's cause
of action for retaliation would be significantly advanced.

     With regard to the temporal proximity of the protected
conduct and the adverse action, Plaintiff dismissed his prior
lawsuit in March of 2002, see Docket in CA 01-251 L, and the
review of Plaintiff's disability benefits occurred sometime after
Plaintiff's independent medical evaluation in May of 2003, see
Plaintiff's Mem., Ex. B at 1 ("Following your Independent Medical
Evaluation with Dr. Logue in May of this year, your file was
reviewed with regard to updated forms, calculations, etc.  An
error in the calculation of your Long Term Disability (LTD)
Benefit has been uncovered and brought to the attention of the
Disability Department.").  This is a span of approximately
fifteen months.[18]  Admittedly, this is at the outer limits of
what could be deemed reasonable in terms of finding a connection
between Plaintiff's protected activity (i.e., the filing of the
RICHR and EEOC complaints and the prior lawsuit) and the adverse
employment action.  However, it is not so great a period of time
that the court can confidently find that there is no possible
connection between the two events.

### 4.   Conclusion Re Count IV

     For the reasons stated above, I find that the Motion should
be denied as to Count IV because Plaintiff alleges that the

_____

     [18] The court uses the dismissal of the lawsuit as the starting
point for determining the temporal span between the protected conduct
and the adverse employment action because the dismissal marks the end
of the protected conduct which Plaintiff claims is a basis for the
retaliation.

recalculation of his benefits was discriminatory and that it was done in retaliation for his having filed the prior complaints of discrimination and lawsuit against Pitney Bowes.  I further find that Plaintiff's claims for discrimination and retaliation are not precluded by his inability to perform the essential functions of his past employment position.  I so recommend.

**E.  Counts V and VI (State Claims for Retaliation/ Discrimination)**

**1.  Nature of Claims**

In Counts V and VI Plaintiff alleges that Defendant's "so-called benefit calculation 'mistake,'" Complaint ¶¶ 56, 61, constitutes a continuing course of illegal discrimination against him because of his mental disability and unlawful retaliation for filing the prior charge and civil suit, see id., in violation of the Rhode Island Fair Employment Practices Act ("RIFEPA"), R.I. Gen. Laws § 28-5-7[19] (Count V) and the Rhode Island Civil Rights

---

[19] R.I. Gen. Laws § 28-5-7 provides in relevant part:

It shall be an unlawful employment practice:

(1) For any employer:

(i) To refuse to hire any applicant for employment because of his or her race or color, religion, sex, sexual orientation, gender identity or expression, **disability**, age, or country of ancestral origin;

(ii) Because of those reasons, **to** discharge an employee or **discriminate against him** or her **with respect to** hire, tenure, compensation, terms, **conditions or privileges of employment**, or any other matter directly or indirectly related to employment ....

R.I. Gen. Laws § 28-5-7 (2003 Reenactment)(bold added).

Act ("RICRA"), R.I. Gen. Laws § 42-112-1[20] (Count VI).   Defendant
argues that "[b]ecause these discrimination and retaliation
claims are founded entirely on Plaintiff's benefits from the
Plan, these claims 'relate to' the Plan within the meaning of
ERISA's preemption provision and are thus preempted."
Defendant's Mem. at 11 (citing Ingersoll-Rand Co. v. McClendon,
498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed. 2d 474 (1990)
("Under [a] 'broad common-sense meaning,' a state law may 'relate
to' a benefit plan, and thereby be pre-empted, even if the law is
not specifically designed to affect such plans, or the effect is
only indirect."); Wadsworth v. Whaland, 562 F.2d 70, 77 (1st Cir.

---

[20] R.I. Gen. Laws § 42-112-1 provides in relevant part:

  (a) All persons within the state, regardless of race, color,
  religion, sex, **disability**, age, or country of ancestral
  origin, have, except as is otherwise provided or permitted by
  law, the same rights to make and enforce contracts, to
  inherit, purchase, to lease, sell, hold, and convey real and
  personal property, to sue, be parties, give evidence, and to
  the full and equal benefit of all laws and proceedings for the
  security of persons and property, and are subject to like
  punishment, pains, penalties, taxes, licenses, and exactions
  of every kind, and to no other.

  (b) For the purposes of this section, the right to "make and
  enforce contracts, to inherit, purchase, to lease, sell, hold,
  and convey real and personal property" includes the making,
  performance, modification and termination of contracts and
  rights concerning real or personal property, and the enjoyment
  of all benefits, terms, and conditions of the contractual and
  other relationships.

  . . . .

  (d) For the purposes of this section, the terms "sex",
  "disability" and "age" have the same meaning as those terms
  are defined in § 28-5-6, the state fair employment practices
  act.

R.I. Gen. Laws § 42-112-1 (1998 Reenactment and 2004 Supp.)(bold
added).

1977)(finding "[t]he legislative history manifests that Congress
intended to preempt all state laws that relate to employee
benefit plans and not just state laws which purport to regulate
an area expressly covered by ERISA")).

### 2. Law

The RIFEPA "prohibits an employer from either discharging an
employee or discriminating against an employee with respect to
'terms, conditions or privileges of employment' based on that
employee's sex or disability." DeCamp v. Dollar Tree Stores,
Inc., 875 A.2d 13, 20 (R.I. 2005)(citing R.I. Gen. Laws §
28-5-7(1)(i),(ii)). The RICRA "similarly provides all persons
with 'full and equal benefit of all laws' regardless of sex or
disability." Id. (citing R.I. Gen. Laws § 42-112-1(a)). "The
terms sex and disability 'have the same meaning as those terms
are defined' in [RI]FEPA." Id. (citing R.I. Gen. Laws §
42-112-1(d)). A person whose rights under Section 42-112-1 of
the RICRA have been violated "may commence a civil action for
injunctive and other appropriate equitable relief, and for the
award of compensatory and exemplary damages." DeCamp v. Dollar
Tree Stores, Inc., 875 A.2d at 20-21 (quoting R.I. Gen. Laws §
42-112-2).

The law regarding preemption has been previously stated in
Section III.B.2. supra at 18-20 of this Report and
Recommendation.

### 3. Application

The Rhode Island Supreme Court has not addressed the
question of whether an employee (or a former employee) who is no
longer able to perform the essential functions of his job (or
former job), either with or without a reasonable accommodation,
is "a qualified individual with a disability" such that he can
bring an action under the RIFEPA or RICRA alleging discrimination

37

with regard to disability benefits.[21]   However, these statutes parallel the ADA.   See <u>DeCamp v. Dollar Tree Stores, Inc.</u>, 875 A.2d at 25; <u>see also</u> <u>Iacampo v. Hasbro, Inc.</u>, 929 F.Supp. 562, 572 (D.R.I. 1996)("The FEPA is Rhode Island's analog to ... the ADA").

The reasoning which this court followed in finding that Plaintiff's claims of discrimination under the ADA can proceed even though he is no longer able to perform the duties of his past job, <u>see</u> Section III.D.2.a. <u>supra</u> at 28-32, can also be applied to his RIFEPA and RICRA claims.   This court believes that the Rhode Island Supreme Court would do so.   The court bases this conclusion on the broad scope of the statutes and the fact that the state supreme court has in the past declined to apply statutory interpretations which would frustrate or nullify the remedial purpose of these statutes.   See <u>Folan v. Rhode Island Dep't of Children, Youth, & Families</u>, 723 A.2d 287, 291 (R.I. 1999)(declining to permit RIFEPA and RICRA to be rendered nugatory and ineffective by interpretation of provision of Workers' Compensation Act); <u>Ward v. City of Pawtucket Police Dep't</u>, 639 A.2d 1379, 1382 (R.I. 1994)(rejecting interpretation of § 42-112-1(c) of RICRA which "would render § 42-112-2 a nullity"); <u>see also</u> <u>Rathbun v. Autozone, Inc.</u>, 361 F.3d 62, 70 (1st Cir. 2004)("[T]here is strong evidence that the authors of

---

[21] To plead a prima facie case of disability discrimination under either RIFEPA or RICRA, a plaintiff must allege: "(1) [that] he or she was disabled within the meaning of [RI]FEPA and RICRA; (2) that the employee was a 'qualified' individual, which means that, 'with or without reasonable accommodation, she was able to perform the essential functions of her job;' (3) 'that the employer discharged her in whole or in part because of her disability.'"   <u>DeCamp v. Dollar Tree Stores, Inc.</u>, 875 A.2d 13, 25 (R.I. 2005)(adopting the prima facie standard required to prove a claim of discrimination under the ADA)(citing <u>EEOC v. Amego</u>, 110 F.3d 135, 141 n.2 (1st Cir. 1997)). Here Plaintiff's allegation that he suffered an adverse employment action (the reduction in the amount of his long term disability benefits) satisfies the third element.

the RICRA intended that statute to function as a broad civil rights law aimed at remedying injuries to the person."); Rossi v. Amica Mut. Ins. Co., No. C.A. 02-485 L, 2005 WL 309975, at *6 (D.R.I. Feb. 9, 2005)("The Rhode Island Supreme Court and this Court have consistently held that RICRA 'provides broad protection against all forms of discrimination in all phases of employment.'")(quoting Ward, 639 A.2d at 1381); Liu v. Striuli, 36 F.Supp.2d 452, 478 (D.R.I. 1999)(citing "the expansive language of RICRA and its generous grant of rights"); Wyss v. Gen. Dynamics Corp., 24 F.Supp.2d 202, 211 (D.R.I. 1998)("RICRA protects plaintiffs against any discrimination which interferes with the 'benefits, terms, and conditions' of the employment relationship--whether it takes the form of disparate impact, disparate treatment, retaliation, or harassment.  The decision in Ward mandates that courts read the RICRA as broadly as possible--which means that if individuals discriminate in ways that violate the statute, then they must be liable under it."); Evans v. R.I. Dep't of Bus. Regulation, No. Civ.A 01-1122, 2004 WL 2075132, at *3 (R.I. Super. Aug. 21, 2004)(stating that "[t]he protections created under [RI]FEPA are broad").

    Having determined that Plaintiff's inability to perform his past job does not bar his FEPA and RICRA claims, the court turns to Defendant's contention that these causes of action are preempted.  The court finds that because the state statutes target the same conduct unlawful under the ADA, they are enforcement vehicles for the ADA and are not preempted by ERISA § 514(d).  See Tompkins v. United Healthcare of New England, 203 F.3d 90, 97 (1st Cir. 2000)("[I]f [plaintiffs'] state statutory claims targeted the same conduct unlawful under the ADA, those state claims would be exempt from ERISA preemption pursuant to ERISA § 514(d).")(citing Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 102-04, 103 S.Ct. 2890, 2897, 77 L.Ed.2d 490 (1983); Carparts

39

Distribution Ctr., Inc. v. Auto. Wholesaler's Assoc. of New England, Inc., 37 F.3d 12, 20-21 (1st Cir. 1994)(vacating dismissal of state law claims on grounds that they might be found exempt from ERISA preemption as part of the ADA's enforcement)).

### 4. Conclusion Re Counts V and VI

For the reasons stated in paragraph 3 above, I find that Plaintiff's state law claims pursuant to the RIFEPA and RICRA are viable notwithstanding the fact that he is disabled and unable to perform his prior job with Pitney Bowes.  I further find that these claims are not preempted by ERISA because they are enforcement vehicles for the ADA.[22]  I therefore recommend that the Motion to Dismiss be denied as to these counts.

### F. Count IX (Injunctive Relief)

In Count IX, Plaintiff "seeks a preliminary and permanent injunction to restrain and enjoin the Defendant from seeking further recoupment of benefits until this entire matter is resolved by this Court."  Complaint ¶ 72.  The court has already determined that Pitney Bowes is neither the named nor de facto administrator of the Plan.  See Section III.A.4. supra at 18.  The Company has no ability to control the Plan or pay benefits under it.  Accordingly, Plaintiff's request for an injunction

---

[22] Because Plaintiff may seek leave to file an amended complaint naming the Plan and the Employee Benefits Committee as defendants, the court deems it advisable to state that, as to those potential defendants, claims pursuant to the RIFEPA and RICRA would be preempted.  As to those defendants, Plaintiff's claims would be based on an alleged deprivation of benefits under the Plan.  Thus, the "real nature," Hampers v. W.R. Grace & Co., 202 F.3d 44, 51 (1st Cir. 2000), of these state law causes of action would be that of an alternative mechanism for obtaining Plan benefits, see id. at 52, and they would be preempted for that reason, see id.

In contrast, the claims against Pitney Bowes discussed above target discrimination and retaliation by the Company in initiating a review of the Plaintiff's entitlement to benefits.  As to these claims, the court reads the Complaint as seeking compensatory and punitive damages, see Complaint at 10 (Prayer for Relief), not benefits under the Plan.

against the Company fails to state a claim upon which relief can be granted.  The Motion should be granted as to Count IX, and I so recommend.

### G.  Demand for Jury Trial

Defendant seeks to have Plaintiff's demand for a jury trial stricken on the basis that all of his claims are stated under or preempted by ERISA.  See Defendant's Mem. at 12.  However, the court has determined that Plaintiff has adequately pled claims under the ADA (Count IV), the RIFEPA (Count V), and the RICRA (Count VI).  Accordingly, his right to jury trial survives as to those claims.

## IV.  Conclusion

For the reasons stated above, I recommend that the Motion to Dismiss be granted as to Counts I, II, III, VII, VIII, and IX.  I recommend that it be denied as to Counts IV, V, and VI.  I further recommend that to the extent the Motion seeks to strike or dismiss Plaintiff's claim for a jury trial the Motion should be denied.

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk within ten (10) days of its receipt.  See Fed. R. Civ. P. 72(b); D.R.I. Local R. 32.  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

_David L. Martin_

DAVID L. MARTIN
United States Magistrate Judge
December 1, 2005

41