UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| STEPHEN HATCH, Plaintiff, | : | |
| v. | : | CA 05-155 S |
| PITNEY BOWES, INC., Defendant. | : | |

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

This action involves a claim for long term disability benefits pursuant to an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA"). See Complaint ¶¶ 1, 5-6, 15-16. Before the court is Defendant Pitney Bowes, Inc.'s motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. See Defendant Pitney Bowes Inc.'s Notice of Motion and Motion to Dismiss Plaintiff's Complaint (Document ("Doc.") #5) ("Motion to Dismiss" or "Motion"). This matter has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and D.R.I. Local R. 32(c). A hearing was conducted on October 12, 2005. For the reasons stated herein, I recommend that the Motion to Dismiss be granted in part and denied in part.

**I. Facts and Travel**

Plaintiff was employed by Pitney Bowes, Inc. ("Pitney Bowes," "Company," or "Defendant"), in its sales department for more than twenty-five years. See Complaint ¶ 7. In July, 1997, he took a medical leave of absence due to a mental disability. See id. ¶ 8. Plaintiff returned to work on October 1, 1997, see id. ¶ 12, and continued working until January 1, 1998, when he

took a second medical leave which continues to the present, see id. ¶ 14.

When Plaintiff went out on his second medical leave, the Company advised him of the monthly amount that he would be receiving as a disability benefit from the Pitney Bowes Inc. Long-Term Disability Plan ("Plan") and also advised him that for purposes of calculating the disability benefit his medical leave would commence officially on February 1, 1998. See Complaint ¶¶ 5, 15. Over the years, the amount of the benefit was confirmed by Pitney Bowes through various letters, and Plaintiff was paid monthly benefits until August 2003. See id. ¶ 15.

On or about August 7, 2003, Plaintiff received a letter from the Company, stating that there had been a mistake in the calculation of his monthly disability benefit and that as a result Plaintiff had been overpaid $133,075.14. See id. ¶ 16. The mistake, according to the letter, was that Plaintiff's disability benefit had been calculated based on Plaintiff's 1997 earnings when it should have been based on his 1996 earnings.[1] See Plaintiff's Memorandum of Law in Support of Objection to Defendant's Rule 12(b)(6) Motion to Dismiss ("Plaintiff's Mem."), Exhibit ("Ex.") B (Letter from Bianco to Hatch of 8/7/03) at 1-2. The letter further advised Plaintiff that his monthly disability benefits would cease until the overpayment had been recouped. See id. at 2.

Plaintiff alleges that the Company's action is a pretext for: 1) discriminating against him because of his mental disability and 2) retaliating against him for filing a complaint of discrimination against the Company in 1999 with the Rhode Island Commission for Human Rights ("RICHR") and the United

[1] For purposes of the instant Motion, further detail regarding the alleged mistake and resulting miscalculation of benefits is unnecessary.

States Equal Employment Opportunity Commission ("EEOC") and for pursuing a civil suit in this court to redress the alleged illegal disability discrimination. See Complaint ¶ 19; see also Stephen Hatch v. Pitney Bowes, Inc., Jeffrey Morgan, and Frederick Mestrandrea, CA 01-251 L. That civil suit was terminated after the partes negotiated a mutually agreeable settlement and executed a written settlement agreement (the "Settlement Agreement") on or about February 20, 2002. See Complaint ¶ 20; see also Plaintiff's Mem., Ex. D (Settlement Agreement)[2] at 8. Paragraph 5 of the Settlement Agreement provided that Plaintiff "will continue to maintain that status, and receive those benefits, to which he is entitled as an employee on long-term disability leave ("LTD") pursuant to the terms of the LTD Summary Plan, as long as he continues to remain eligible under the requirements of the LTD Summary Plan."[3] Settlement Agreement ¶ 5.

---

[2] For brevity, hereafter the court cites directly to the Settlement Agreement, omitting reference to Plaintiff's Mem., Ex. D.

[3] The full text of Paragraph 5 of the Settlement Agreement appears below:

> Hatch acknowledges that the payments provided for by paragraph 2 are in addition to and are not in place of any payment, benefit or other thing of value to which Hatch might otherwise be entitled under any policy, plan or procedure of PB [Pitney Bowes] or pursuant to any prior agreement or contract with PB. PB acknowledges that Hatch will continue to maintain that status, and receive those benefits, to which he is entitled as an employee on long-term disability leave ("LTD") pursuant to the terms of the LTD Summary Plan, as long as he continues to remain eligible under the requirements of the LTD Summary Plan.

Complaint ¶ 20 (quoting Paragraph 5 of Settlement Agreement) (alteration in original).

On May 26, 2004,[4] Plaintiff filed another charge of discrimination against the Company with the RICHR and EEOC, alleging that the alleged mistake in the calculation of his disability benefits was actually a pretext for illegal retaliation and discrimination. See Complaint ¶ 21. After receiving right to sue letters from the RICHR and EEOC, see id. ¶ 22, Plaintiff filed this action on April 14, 2005, see Docket. The instant Motion to Dismiss (Doc. #5) was filed on July 11, 2005. See id. Plaintiff filed an objection on August 8, 2005, see Plaintiff's Objection to Defendant's Rule 12(b)(6) Motion to Dismiss (Doc. #11), and Pitney Bowes filed a reply memorandum on August 22, 2005, see Defendant Pitney Bowes Inc.'s Reply to Plaintiff's Objection to Defendant's Rule 12(b)(6) Motion to Dismiss (Doc. #15) ("Defendant's Reply Mem.").

## II. 12(b)(6) Standard

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court construes the complaint in the light most favorable to the plaintiff, see Paradis v. Aetna Cas. & Sur. Co., 796 F.Supp. 59, 61 (D.R.I. 1992); Greater Providence MRI Ltd. P'ship v. Med. Imaging Network of S. New England, Inc., 32 F.Supp.2d 491, 493 (D.R.I. 1998), taking all well-pleaded allegations as true and giving the plaintiff the benefit of all reasonable inferences, see Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002); Tompkins v. United Healthcare of New England, Inc., 203 F.3d 90, 93 (1st Cir. 2000); Carreiro v. Rhodes Gill & Co., 68 F.3d 1443, 1446 (1st Cir. 1995). If under any theory the allegations are sufficient to state a cause of action in

---

[4] The Complaint states this date as being May 26, 2003. See Complaint ¶ 21. However, since this would predate Plaintiff's receipt of the August 7, 2003, letter advising him of the alleged error in the calculation of his disability benefits, the court assumes that this is an inadvertent error and that the date Plaintiff intends to allege is May 26, 2004.

accordance with the law, the motion to dismiss must be denied. See Hart v. Mazur, 903 F.Supp. 277, 279 (D.R.I. 1995). The court "should not grant the motion unless it appears to a certainty that the plaintiff would be unable to recover under any set of facts." Roma Constr. Co. v. aRusso, 96 F.3d 566, 569 (1st Cir. 1996); accord Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); see also Arruda, 310 F.3d at 18 ("[W]e will affirm a Rule 12(b)(6) dismissal only if the factual averments do not justify recovery on some theory adumbrated in the complaint.")(internal quotation marks omitted).

The court, however, is not required to credit "bald assertions, unsupportable conclusions, and opprobrious epithets." Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 16 (1st Cir. 1989)(quoting Chongris v. Bd. of Appeals, 811 F.2d 36, 37 (1st Cir. 1987))(internal quotation marks omitted). Rule 12(b)(6) is forgiving, but it "is not entirely a toothless tiger." Campagna v. Massachusetts Dep't of Envtl. Prot., 334 F.3d 150, 155 (1st Cir. 2003)(quoting Dartmouth Review). A plaintiff must allege facts in support of "each material element necessary to sustain recovery under some actionable legal theory." Dartmouth Review, 889 F.2d at 16 (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)); see also LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998)(stating that the court must determine whether the complaint "limns facts sufficient to justify recovery on any cognizable theory").

In general, when dealing with a motion to dismiss under Fed. R. Civ. P. 12(b)(6), consideration of documents not attached to the complaint or expressly incorporated therein requires conversion of the motion to one for summary judgment pursuant to Fed. R. Civ. P. 56. See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). "However, courts have made narrow exceptions for documents the authenticity of which are not disputed by the

parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Id.

**III. Discussion**

**A. Counts I and VIII (Violation of ERISA)**

**1. Nature of Claims**

Count I alleges that Defendant violated "29 U.S.C. § 1132," Complaint at 4, without identifying any subsection of that statute, see id. ¶¶ 25-31. The court assumes from the allegations made in this Count that Plaintiff is asserting a claim for benefits pursuant to ERISA Section 502(a), 29 U.S.C. § 1132(a). See Complaint ¶¶ 25-31. Count VIII alleges that "Defendant stands in a fiduciary duty to Plaintiff," id. ¶ 67, and that Defendant breached this duty by wrongfully calculating and wrongfully failing to pay Plaintiff his disability benefits pursuant to the Plan, see id. ¶ 68. The Complaint does not explicitly state that this cause of action is ERISA based, but the court assumes that it is and treats it as such. See Plaintiff's Mem. at 2 (stating "that the breach of fiduciary count needs to be pled with greater specificity to cite to ERISA").

Defendant seeks dismissal of these two ERISA based claims on the ground that Plaintiff has sued the wrong party. See Memorandum of Points and Authorities in Support of Pitney Bowes Inc.'s Motion to Dismiss Plaintiff's Complaint ("Defendant's Mem.") at 5. Defendant contends that "[a]s a general rule, ERISA permits a civil action only against a benefit plan or its fiduciaries," id. (citing Terry v. Bayer Corp., 145 F.3d 28, 35 (1st Cir. 1998)), and that "Pitney Bowes is neither," id.

**2. Law**

"ERISA contemplates actions against an employee benefit plan and the plan's fiduciaries. With narrow exception, however,

ERISA does not authorize actions against nonfiduciaries of an ERISA plan." Terry v. Bayer Corp., 145 F.3d 28, 35 (1st Cir. 1998)(quoting Santana v. Deluxe Corp., 920 F.Supp. 249, 253 (D. Mass. 1996)); see also Beegan v. Associated Press, 43 F.Supp.2d 70, 73 (D. Me. 1999)("ERISA permits suits to recover benefits only against the Plan as an entity, see 29 U.S.C. § 1132(a)(1)(B), (d) and suits for breach of fiduciary duty only against the fiduciary. See 29 U.S.C. § 1109(a)."). "[T]he proper party defendant in an action concerning ERISA benfits is the party that controls administration of the plan." Terry v. Bayer Corp., 145 F.3d at 36 (quoting Garren v. John Hancock Mut. Life Ins. Co., 114 F.3d 186, 187 (11th Cir. 1997)).

"An employer is ... a proper party to an ERISA suit brought pursuant to 29 U.S.C. § 1132 if it is the designated plan administrator or fiduciary." Beegan v. Associated Press, 43 F.Supp.2d at 73. However, "ERISA's fiduciary duty requirement simply is not implicated where [the employer], acting as the Plan's settlor, makes a decision regarding the form or structure of the Plan such as who is entitled to receive Plan benefits and in what amounts, or how such benefits are calculated." Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 444, 119 S.Ct. 755, 763, 142 L.Ed.2d 881 (1999); see also Lockheed Corp. v. Spink, 517 U.S. 882, 890, 116 S.Ct. 1783, 1789, 135 L.Ed.2d 153 (1996).

Under ERISA, the definition of a fiduciary applicable to the instant matter appears below:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of

such plan.

29 U.S.C. § 1002(21)(A). ERISA also defines "person" to include a corporation. 29 U.S.C. § 1002(9).[5]

**3. Application**

Plaintiff has pled that Pitney Bowes is the fiduciary of the Plan. See Complaint ¶ 5. However, the Plan specifically names the Employee Benefits Committee (the "Committee") as the "Plan Administrator."[6] Affidavit of Barbara Bianco Re Defendant Pitney Bowes Inc.'s Motion to Dismiss Plaintiff's Complaint ("Bianco Aff."), Ex. A (Plan) ¶ 7.6.[7] The Plan gives the Committee discretionary control over the management and administration of the Plan. See Plan ¶¶ 7.1, 7.5, 7.6. The Plan also gives the Committee the exclusive power to interpret and construe its terms

---

[5] 29 U.S.C. § 1002(9) states that: "The term 'person' means an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization."

[6] The court may consider the Plan for purposes of the instant Motion because the Complaint refers directly to it. See Complaint ¶¶ 5, 26, 28, 29, 31, 32, 46, 65, 68, 71; see also Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000) ("[I]t is well-established that in reviewing the complaint, [the court] 'may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment.'" (quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996)); Beddall v. State Street Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998)("When ... a complaint's factual allegations are expressly linked to--and admittedly dependent upon--a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).").
Additionally, where the Plan contradicts the allegations of the Complaint, the Plan controls. Cf. Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co., 228 F.3d at 32 ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.").

[7] For brevity, hereafter the court cites directly to the Plan, omitting reference to the Bianco Aff.

and provisions. See Plan ¶ 7.5. Based on these facts, Pitney Bowes argues that the Committee—not the Company—is the Plan Fiduciary and that the Company is not a proper defendant under ERISA § 502(a), 29 U.S.C. § 1132(a). See Defendant's Mem. at 5-7.

Plaintiff does not appear to dispute that the Plan names the Committee as the Plan Administrator. See Plaintiff's Mem. at 7-12. However, Plaintiff asserts that "there is more than ample evidence to show that the Defendant failed to maintain a distinction between itself and the Plan, to the point that the Defendant should rightfully be treated as the Plan Administrator for the purposes of this litigation."[8] Plaintiff's Mem. at 10. In essence, Plaintiff argues that, notwithstanding the Plan's designation of the Committee as the Plan Administrator, Pitney Bowes controlled or influenced the administration of the Plan. See Plaintiff's Mem. at 10 (citing Terry v. Bayer Corp., 145 F.3d 28, 36 (1st Cir. 1998)).

Thus, this court must examine the Complaint and determine whether Plaintiff has set forth any factual allegations, either direct or inferential, tending to show that Pitney Bowes exercised control or influence over the Plan or the decision to cease paying Plaintiff monthly benefits in order to recoup the alleged overpayment. See Beegan v. Associated Press, 43 F.Supp.2d 70, 74 (D. Me. 1999)(employing this test in determining

---

[8] Plaintiff has not alleged this lack of distinction in his Complaint. He appears to contend that it can be reasonably inferred from the Complaint's averments that Pitney Bowes is the de facto Plan Administrator. See Plaintiff's Memorandum of Law in Support of Objection to Defendant's Rule 12(b)(6) Motion to Dismiss ("Plaintiff's Mem.") at 7-11. This strikes the court as something of a stretch, but in recognition of the liberal 12(b)(6) standard the court will make this inference, see Cooperman v. Individual Inc., 171 F.3d 43, 46 (1st Cir. 1999)(requiring that court give plaintiff benefit of all reasonable inferences when considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)).

whether plaintiff's ERISA claim against an employer should be dismissed where employer was neither the plan administrator nor fiduciary by designation). In making this determination, the court also examines the Plan[9] and the August 7, 2003, letter.[10]

The Complaint alleges that Pitney Bowes advised Plaintiff in 1998 (or late 1997) of the monthly amount he would be receiving in long term disability benefits, see Complaint ¶ 15; that the Company confirmed this amount over the years through various letters, see id.; and that Pitney Bowes sent Plaintiff the August 7, 2003, letter advising him of the alleged mistake and the intended recoupment action, see id. ¶ 16. Presumably Plaintiff also contends that Pitney Bowes controlled or influenced the cessation of his disability benefits and the institution of the recoupment action. See id. ¶ 18 (referring to Pitney Bowes' "wrongful actions"). However, the court need not credit bald assertions or unsupportable conclusions, see Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 16 (1st Cir. 1989), or allegations which are contradicted by documents to which the Complaint directly refers, see Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000)(stating that the court may consider the relevant entirety of a document integral or explicitly relied upon in the complaint and that when the document contradicts allegations in the complaint the document trumps the allegations). Plaintiff's contention that it was Pitney Bowes (as opposed to the Committee acting through the Disability Department) which caused the cessation of his benefits and the initiation of recoupment action is not supported by

---

[9] See n.6.

[10] The August 7, 2003, letter is referenced in the Complaint. See Complaint ¶¶ 16, 27, 35, 49, 54, 59, 70. Thus, it may be considered without converting the instant Motion to a motion for summary judgment. See n.6.

either the Plan or the August 7, 2003, letter. Indeed, the documents undermine or contradict Plaintiff's claim.

Considering first the Plan, that document reflects that the Committee has delegated the ongoing, day-to-day administrative responsibilities to Pitney Bowes' disability and benefits departments. See Plan ¶¶ 7.1, 7.6.[11] Section 7.6 of the Plan also provides that neither department has discretion in

---

[11] Sections 7.1 and 7.6 of the Plan are reproduced below:

> 7.1 The Committee - Employee Benefits Committee shall be responsible for the general administration of the Plan and for carrying out the provisions thereof. The Employee Benefits Committee shall have powers necessary to enable its members to properly carry out their duties, subject at all times to the limitations and conditions specified in or imposed by the Plan. The Employee Benefits Committee has delegated ongoing, day-to-day administrative responsibility under the Plan to the Pitney Bowes Disability Department and the Benefits Department.
>
> .....
>
> 7.6 Plan Administrator - The Employee Benefits Committee shall be the "Plan Administrator" of the Plan for purposes of ERISA. However, **the Employee Benefits Committee has delegated to the Disability Department** the day-to-day, on-going administrative responsibilities of the Plan. In addition, **the Employee Benefits Committee has delegated to the Benefits Department** of Pitney Bowes Inc. administrative responsibility regarding Employee enrollment in the Plan, including developing and implementing procedures and practices on the election of coverage hereunder and the levels of coverage offered to Employees. It is intended that neither the Disability Department nor the Benefits Department shall have discretion such that individuals performing services in these Departments with respect to the Plan would be considered to be "fiduciaries" within the meaning of Section (3)(21) of ERISA. The Disability Department shall mean the department at Pitney Bowes Inc. having responsibility for the administration of the Company's disability program. The Disability Department shall not prescribe a treatment program for Employees regarding their return to work but rather shall work with practitioners to develop suitable and appropriate treatment regimens.

Plan ¶¶ 7.1, 7.6 (bold added).

performing its administrative responsibilities. See Plan ¶ 7.6. In addition, the Plan imposes on the Disability Department the affirmative duty to recover the overpayment of benefits and to deduct the amount of such overpayments from subsequent benefits payable under the Plan. See Plan ¶ 9.9.[12] Thus, the court concludes that the Disability Department was performing a ministerial duty when it notified Plaintiff of the overpayment and advised him of the recoupment action. See 29 C.F.R. § 2509.75-8 (stating that a person who performs purely ministerial functions, such as calculation of benefits, is not a fiduciary).

To the extent that Plaintiff contends that the recalculation of his disability benefits and the decision to recoup the alleged overpayment involves an exercise of discretion and/or Plan interpretation by the Disability Department such that Pitney Bowes should be found to exercise control, at least in Plaintiff's case, over the administration of the Plan, such contention is rejected. Application of the relevant Plan

---

[12] Section 9.9 of the Plan states:

> 9.9 Recovery of Benefits - In the event a person receives a benefit payment under the Plan which is in excess of the benefit payment that should have been made, the Disability Department shall have the right to recover the amount of such excess from such person. The Disability Department may, however, at its option, deduct the amount of such excess from any subsequent benefits payable under the Plan to, or for, the person.

Plan § 9.9. Viewed in isolation, the first sentence of this Section could be read as merely giving the Disability Department the "right to recover" the overpayment without necessarily mandating such action. So viewed, the sentence would suggest that the Disability Department is exercising discretion in determining to recover the overpayment from Plaintiff. However, when considered in conjunction with the second sentence, it seems reasonably clear that the Disability Department's discretion is limited to allowing the recovery to be achieved by the withholding of future payments. The discretion does not extend to determining whether there shall be a recovery of the overpayment. The recovery of the overpayment is mandatory.

provisions, see Plan ¶¶ 2.3 (stating what constitutes "Annual Earnings"), 2.33 (defining "Totally Disabled"), 5.10 (defining "Recurrent Disability"), to Plaintiff's circumstances does not require the exercise of discretion.

Turning to the August 7, 2003, letter[13] which informed Plaintiff of the alleged miscalculation, see Plaintiff's Mem., Ex. B (Letter from Bianco to Plaintiff of 8/7/03), while it is printed on Pitney Bowes stationery, the first paragraph indicates that it is from the Disability Department, see id. Reading the entire letter leads to the conclusion that the action described therein (i.e., the cessation of benefits until the alleged overpayment is recouped) is being taken by the Disability Department.

Thus, neither the Plan nor the letter supports the inference that Pitney Bowes exercised control over or influenced the administration of the Plan or the decision to cease paying benefits and recoup the alleged overpayment. To the contrary, they more likely support the inference that Pitney Bowes did not control the administration of the Plan and was not involved in the decision to cease paying benefits. See Beegan v. Associated Press, 43 F.Supp.2d at 74 (reaching same conclusion regarding allegations against employer in that case).[14]

---

[13] See n.6, n.10.

[14] Plaintiff has also attached to his memorandum a copy of an April 16, 1998, letter from a claims examiner at Pitney Bowes, advising Plaintiff that he had been approved for Plan benefits effective February 1, 1998. See Plaintiff's Mem., Ex. A (Letter from Din to Plaintiff of 4/16/98). Unlike the Plan and the August 7, 2003, letter which were specifically referenced in the Complaint, see Complaint ¶¶ 5, 16, this letter is not explicitly referenced in the Complaint. While Paragraph 15 alleges that the amount of Plaintiff's monthly disability benefit "was confirmed by Pitney Bowes through various letters over the years ...," id. ¶ 15, this general reference to correspondence does not make the April 16, 1998, letter "integral to or explicitly relied upon in the [C]omplaint," Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co., 228 F.3d at 32, such that it

Plaintiff relies heavily on Law v. Ernst & Young, 956 F.2d 364 (1st Cir. 1992), to support his argument that Pitney Bowes should be treated as the Plan Administrator, see Plaintiff's Mem. at 7-11. In Law, the First Circuit found that the defendant company was properly treated as the de facto administrator of the retirement plan at issue for purposes of the plaintiff's § 1132(c) claim. See Law v. Ernst & Young, 956 F.2d at 374. The court reached this conclusion notwithstanding the fact that the plan specifically designated a retirement committee as the plan administrator. See id. at 373. After noting the "plethora of evidence indicating that [the employer] had assumed and controlled the plan administrator's function of furnishing required information in response to a plan beneficiary's request," id. at 372, the Law court explained:

> If, to all appearances, [the employer] acted as the plan administrator in respect to dissemination of information concerning plan benefits, it may properly be treated as such for purposes of the liability provided under § 1132(c) .... [W]here an entity of which the administrator

---

may be considered for purposes of the instant Motion. The court declines to convert the Motion to one for summary judgment at this early stage of the proceedings. Cf. Whiting v. Maiolini, 921 F.2d 5, 7 (1st Cir. 1990)("When discovery has barely begun and the nonmovant has had no reasonable opportunity to obtain and submit additional evidentiary materials to counter the movant's affidavits, conversion of a Rule 12 motion to a Rule 56 motion is inappropriate.").

Even if the court were to disregard this procedural barrier, the April 16, 1998, letter, does little to bolster Plaintiff's argument that Pitney Bowes exercised control or influence over the Plan. The information contained therein appears to fit comfortably within the scope of the administrative responsibilities which the Committee has delegated to the Disability Department. See Plan ¶ 7.6. While the letter does not explicitly refer to the Disability Department, it does state that Plaintiff will need written permission "from the Long Term Disability Administrator," Plaintiff's Mem., Ex. A at 1, if he plans "to travel, pursue or maintain employment or schooling outside of Pitney Bowes, Inc. during the period [he is] out of work on disability," id. The reasonable inference from this statement is that it is the Administrator (i.e., the Committee) which controls the Plan.

> is part in effect holds itself out as the plan administrator by officially disseminating such information, we think it is subject to § 1132(c) liability should it fail to discharge that role in a proper way. Hence, where as here plan documents place the responsibility for providing information upon an internal committee of a firm, but the firm in practice carries out that function, we see no reason not to hold the firm liable under § 1132(c) when it fails to provide the information in the timely manner required by law.

Law v. Ernst & Young, 956 F.2d at 373. Based on this reasoning, the Law court held "that, for purposes of [plaintiff's] § 1132(c) claim, the district court properly regarded [the employer] as the plan administrator." Id. at 372; see also id. at 374 (restating this holding).

It is clear from the Law opinion that the Court of Appeals attached great significance to the fact that the defendant employer had assumed responsibility for performance of a specific statutory duty pursuant to 29 U.S.C. § 1132(c). See Law v. Ernst & Young, 956 F.2d at 372-74. In particular, the Court of Appeals noted that to hold that an entity not named as administrator in plan documents could not be held liable under § 1132(c), "even though it actually controls the dissemination of plan information, would cut off the remedy Congress intended to create." Id. at 373. Such a ruling, the Court of Appeals explained, would mean that a participant or beneficiary would have no recourse against anyone for being deprived of information to which s/he was statutorily entitled.[15] See id. The Court of

---

[15] Explaining this possibility, the Court of Appeals wrote:

> If a company ignored in practice any distinction between the administrator and itself, and assumed responsibility for responding to plan inquiries (as [the employer] appears to have done here), both it and the purported plan administrator would be immune from liability. A § 1132(c) suit against the company would fail, because the company itself was not named administrator in the plan documents. Likewise, a suit

Appeals also appears to have attached significance to the fact that "[t]here was no indication that the Retirement Committee [the designated plan administrator] had delegated its information function to Brewster [the company employee who provided plaintiff with erroneous information about the amount of his estimated retirement benefit]." Id. at 374 n.12.

In contrast, here Plaintiff is not asserting a § 1132(c) claim for being denied information about Plan benefits. Rather, his claims are made pursuant to § 1132(a) to recover benefits allegedly due him (Count I) and for alleged breach of fiduciary duty (Count VIII). A ruling that his ERISA claims against Pitney Bowes must be dismissed will not leave him without recourse as Plaintiff may seek leave to file an amended complaint, naming the Plan and the Committee (the designated Plan Administrator) as defendants. Such an amended complaint would conform to the applicable law, i.e., that ERISA permits suits to recover benefits only against the Plan as an entity and suits for breach of fiduciary duty only against the fiduciary, see Beegan v. Associated Press, 43 F.Supp.2d at 73. Thus, the imperative that Plaintiff not be left without a remedy, which appears to have been a determinative factor in Law, is absent here.

Also distinguishing Law from the instant case is the fact that here the Committee, the designated Plan Administrator, has specifically delegated to the Disability Department "the day-to-day, on-going administrative responsibilities of the Plan." Plan ¶ 7.6; see also id. ¶ 7.1. In Law there was no basis for

---

> against the plan administrator would fail, because employees would have had no reason to request information from the plan administrator if company personnel assumed responsibility for such requests. There being no request to the designated plan administrator, that entity could not be held liable for failure to respond properly.

Law v. Ernst & Young, 956 F.2d at 373.

concluding that the people with whom the plaintiff was dealing in his quest for information were acting on behalf of the Retirement Committee, a point the Court of Appeals specifically noted, see Law v. Ernst & Young, 956 F.2d at 374 n.12. In the instant matter, the delegation of responsibility by the Committee to the Disability Department is explicit.

In short, while there are some factual similarities between Law and the instant case (i.e., the use of Company stationery for the August 7, 2003, letter, the omission of Nurse Bianco's job title from the letter, and the letter's failure to identify her connection to Disability Department and/or the Plan), this court does not read Law as holding that such acts and/or omissions permit a beneficiary to sue an employer for recovery of benefits or for breach of fiduciary duty, at least where the Plan explicitly delegates day-to-day, on-going administrative responsibilities to the employer's disability department and there are available defendants against whom Plaintiff could file an amended complaint, namely the Plan and the Committee. To the extent that Plaintiff contends that the holding in Law authorizes the claims pled in Counts I and VIII, his argument is rejected.

In summary, the court is not persuaded that the August 7, 2003, letter and the Committee's delegation of the ongoing, day-to-day administrative responsibilities under the Plan to the Pitney Bowes' Disability and Benefits Departments, see Plan ¶¶ 7.1, 7.6, make it a reasonable inference that Pitney Bowes acted as administrator or controlled the administration of the Plan, cf. Terry v. Bayer Corp., 145 F.3d 28, 36 (1st Cir. 1998) (rejecting argument that third party which provided administrative assistance to benefit committee and which terminated plaintiff's benefits was the real decision-maker where "[t]here is nothing to suggest that [third party] was doing anything other than applying the terms of the Plan as written to

[plaintiff's] particular situation"). While the two departments are part of Pitney Bowes, they do not have discretionary authority under the Plan. Similarly, the court is not persuaded that it can be reasonably inferred from the allegation of the Complaint, the Plan, and the August 7, 2003, letter that Pitney Bowes acted as a de facto Plan administrator such that it may be sued under ERISA for breach of fiduciary duty.

**4. Conclusion Re Counts I and VIII**

I recommend that the Motion be granted as to Counts I and VIII because the allegation in paragraph 5 of the Complaint that Pitney Bowes is the plan fiduciary is directly contradicted by the Plan document and it cannot be reasonably inferred from the other allegations in the Complaint and the August 7, 2003, letter that Pitney Bowes is a de facto administrator of the Plan. However, I further recommend that Plaintiff be allowed to file an amended complaint.

**B. Counts II and VII (Breach of Contract)**

**1. Nature of Claims**

In Count II Plaintiff alleges that Defendant breached the February 20, 2002, Settlement Agreement. See Complaint ¶¶ 32-36. Specifically, Plaintiff charges that "[b]y its unilateral decision to change Plaintiff's benefit calculation ... Pitney Bowes has breached the [Settlement Agreement] contract entered into by the parties." Id. ¶ 35. Count VII asserts that Defendant breached the terms of the Plan "by unilaterally insisting upon an incorrect interpretation of section 2.20 of the [Plan] and imposing its incorrect interpretation upon the Plaintiff to deny him substantial LTD benefits." Id. ¶ 63. Defendant argues that ERISA preempts both of these claims. See Defendant's Mem. at 8-9.

**2. Law**

"Section 514(a) of ERISA, 29 U.S.C. § 1144(a), preempts 'any

and all State laws insofar as they may now or hereafter relate to any employee benefit plan' covered by ERISA." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 91, 103 S.Ct. 2890, 2897, 77 L.Ed.2d 490 (1983). "The term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." Hampers v. W.R. Grace & Co., 202 F.3d 44, 49 (1st Cir. 2000)(quoting ERISA § 514(c)(1), 29 U.S.C. § 1144(c)(1)).

In determining the scope of this preemption provision:

> courts have analyzed Congress' intent and concluded that Congress meant to draft a broad and comprehensive ERISA preemption provision. See FMC Corp. v. Holliday, 498 U.S. 52, 58, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990)("The pre-emption clause is conspicuous for its breadth. It establishes as an area of exclusive federal concern the subject of every state law that 'relate[s] to' an employee benefit plan governed by ERISA."); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 46, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)(Congress drafted ERISA's "deliberately expansive" language "to 'establish pension plan regulation as exclusively a federal concern.'")(citing Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981)); District of Columbia v. Greater Washington Board of Trade, 506 U.S. 125, 127, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992)("ERISA's pre-emption provision assures that federal regulation of covered plans will be exclusive."); Boston Children's Heart Foundation, Inc. v. Nadal-Ginard, 73 F.3d 429, 439 (1st Cir. 1996)(stating Congress drafted the ERISA preemption provision "to ensure uniformity in such plans by preventing states from imposing divergent obligations upon them")(citations omitted).

Massey v. Stanley-Bostitch, Inc., 255 F.Supp.2d 7, 12-13 (D.R.I. 2003)(alteration in original).

"ERISA preemption analysis ... involves two central questions: (1) whether the plan at issue is an 'employee benefit plan' and (2) whether the cause of action 'relates to' this employee benefit plan." McMahon v. Digital Equip. Corp., 162 F.3d 28, 36 (1st Cir. 1998)(citing Rosario-Cordero v. Crowley

Towing & Transp. Co., 46 F.3d 120, 124 (1st Cir. 1995)). The Supreme Court has identified three categories of state laws that "relate to" ERISA plans in such a way that preemption of those laws furthers ERISA's purpose of ensuring that plans and plan sponsors will be subject to a uniform body of benefits law. See Hampers v. W.R. Grace & Co., 202 F.3d at 51 (explaining New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 658-59, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995)). The three categories are: "(1) state laws that 'mandate[ ] employee benefit structures or their administration,' (2) state laws that 'bind plan administrators to [a] particular choice,' and (3) state law causes of action that provide 'alternative enforcement mechanisms' to ERISA's enforcement regime." Id. (alterations in original). With regard to the third category, the First Circuit has "stated that in order to assess whether the state law cause of action is an alternative enforcement mechanism, [a court] must 'look beyond the face of the complaint' and determine the real nature of the claim 'regardless of plaintiff's ... characterization.'" Id. (quoting Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 5 (1st Cir. 1999))(second alteration in original). The First Circuit has also counseled that "a cause of action 'relates to' an ERISA plan when a court must evaluate or interpret the terms of the ERISA-regulated plan to determine liability under the state law cause of action." Id. at 52.

**3. Application**

Plaintiff bases the breach of contract claim pled in Count II on Paragraph 5 of the Settlement Agreement. See Complaint ¶ 34. That paragraph provides in relevant part that "Hatch will continue to ... receive those benefits, to which he is entitled as an employee on long-term disability leave ("LTD") pursuant to the terms of the LTD Summary Plan, as long as he continues to

remain eligible under the requirements of the LTD Summary Plan." Id. ¶ 34 (quoting Paragraph 5 of the Settlement Agreement). To determine whether Pitney Bowes is liable to Plaintiff for breach of contract, the court would first have to decide whether Plaintiff has been denied benefits to which he is entitled under the Plan. This could only be done by interpreting the Plan. Accordingly, I find that Plaintiff's breach of contract cause of action which is pled in Count II relates to the Plan. See Hampers v. W.R. Grace & Co., 202 F.3d at 52 (stating that a state law cause of action "relates to" an ERISA plan when a court must interpret the terms of the plan to determine liability under that cause of action). I further find that it constitutes an alternate enforcement mechanism which is preempted by ERISA. See id. at 54 (finding plaintiff's state law contract claim preempted where it was "an alternative to his claims for ... benefits ... brought under ERISA").

In reaching this conclusion, the court notes that three of the factors which caused the First Circuit in Hampers to find that the plaintiff's state law contract claim was an alternative to his ERISA claims (and, therefore, preempted by ERISA) are also present here. First, Plaintiff's state law claim against Pitney Bowes alleges precisely the same conduct that underlies his claim for benefits pursuant to ERISA. See Hampers, 202 F.3d at 54. Second, the relief requested by Plaintiff is the same for both causes of action. See id.; see also Complaint at 10 (Prayer for Relief). Third, the central liability question at issue in the state law breach of contract claim against Pitney Bowes, whether the reduction of Plaintiff's monthly disability benefits violates the Settlement Agreement's requirement that Plaintiff "continue to ... receive those benefits, to which he is entitled as an employee on long-term disability leave ("LTD") pursuant to the terms of the LTD Summary Plan ...," Complaint ¶ 20 (quoting

Paragraph 5 of the Settlement Agreement), must be viewed in light of the terms of the Plan, see Hampers, 202 F.3d at 54.

As to Count VII, Plaintiff concedes in his memorandum that the breach of contract claim pled therein is preempted. See Plaintiff's Mem. at 2. His counsel confirmed this concession at the October 12, 2005, hearing. See Tape of 10/12/05 Hearing. Accordingly, further discussion regarding Count VII is unnecessary.

#### 4. Conclusion Re Counts II and VII

I find that Plaintiff's state law breach of contract claims (Counts II and VII) are alternative enforcement mechanisms to his ERISA claim (Count I) and that, therefore, they are preempted. Cf. Massey v. Stanley-Bostitch, 255 F.Supp.2d 7, 14 (D.R.I. 2003) (finding plaintiff's state common law promissory estoppel claim duplicative and preempted where he simultaneously brought a claim under 29 U.S.C. § 1132(a)(1)(B) seeking precisely the same relief). Accordingly, the Motion to Dismiss should be granted as to Counts II and VII. I so recommend.

### C. Count III (Equitable Estoppel)

#### 1. Nature of Claim

In Count III, Plaintiff seeks to have Defendant equitably estopped from allegedly reinterpreting the language of the Plan in order to seek substantial recoupment of disability benefits paid to Plaintiff. See Complaint ¶ 46. In support of this claim, Plaintiff asserts that he relied to his detriment on representations and promises by Defendant on two occasions. See id.

According to Plaintiff, the first occasion was after Pitney Bowes informed him in writing "that his second medical leave of absence would officially commence on February 1, 1998[,] for the purpose of calculating his monthly LTD benefits, and that Plaintiff's 1997 earnings would accordingly be used as the 'base

year' for the purpose of calculating his monthly LTD benefits." Id. ¶ 38. Plaintiff claims that Pitney Bowes "gave Plaintiff the information regarding his benefit rate calculation for the purpose of inducing Plaintiff to rely upon the information and to convince Plaintiff to accept LTD benefits and to remain out of work indefinitely." Id. ¶ 39. Plaintiff further claims that he "relied upon this information in deciding to accept LTD benefits, and in deciding to remain out of work on a medical leave of absence." Id. ¶ 40.

Concerning the second occasion, Plaintiff avers that when he entered into the Settlement Agreement with Pitney Bowes in 2002 to resolve the discrimination and retaliation lawsuit which he had filed against the Company in 2001, the Company "knew that maintenance of the status quo of Plaintiff's LTD benefits was a specific inducement which directly led to the Plaintiff's decision to settle that litigation." Complaint ¶ 43. Plaintiff alleges that he "relied upon this information in deciding to accept the terms of the [Settlement Agreement] and to dismiss his pending federal court litigation." Complaint ¶ 44. He asserts that by executing the Settlement Agreement Pitney Bowes "ratified its prior decision regarding Plaintiff's receipt of LTD benefits and the amount of money he was receiving per month." Id. ¶ 45.

The Complaint does not allege whether Plaintiff's estoppel claim is based on Rhode Island common law or the federal common law of estoppel. Defendant argues that to the extent it is brought under Rhode Island common law, ERISA preempts it, see Defendant's Mem. at 9, and that to the extent that it is brought under the federal common law of ERISA, "it is 'still an open question in this circuit whether an equitable estoppel claim is permitted under ERISA,'" id. (quoting Mauser v. Raytheon Co. Pension Plan for Salaried Employees, 239 F.3d 51, 57 (1st Cir. 2001), and that "[g]iven the identical nature of Plaintiff's

allegations with his fiduciary breach and benefits claims, no independent claim for equitable estoppel exists in the First Circuit," id. at 10. Because Plaintiff states in his memorandum "that Congress intended that federal courts fashion federal common law under which estoppel claims may be brought pursuant to ERISA," Plaintiff's Mem. at 17-18, the court treats Count III as attempting to plead a claim under the federal common law of ERISA.

**2. Law**

"An equitable estoppel claim contains two elements. First, [defendant] must have made 'definite misrepresentations of fact' to [plaintiff] with reason to believe that [plaintiff] would rely on it. Law v. Ernst & Young, 956 F.2d 364, 368 (1st Cir. 1992) (citation and quotation omitted). Second, [plaintiff] must 'rely reasonably on the misrepresentation to his detriment.'" Mauser v. Raytheon Co. Pension Plan for Salaried Employees, 239 F.3d at 57.

"It is ... still an open question in this circuit whether an equitable estoppel claim is permitted under ERISA." Id.; see also Senior v. NSTAR Elec. & Gas Corp., 372 F.Supp.2d 159, 164 (D. Mass. 2005)(quoting Mauser); Massey v. Stanley-Bostitch, 255 F.Supp.2d 7, 14 (D.R.I. 2003)(noting openness of the question). In Mauser, the Court of Appeals noted that "[t]he Supreme Court has directed that federal courts may engage in interstitial rule-making when it is in the interest of justice." Mauser, 239 F.3d at 57. However, the Court of Appeals also noted that "we must exercise caution in creating new common law rules for pension plans; we should only act when there is, in fact, a gap in the structure of ERISA or in the existing federal common law relating to ERISA." Id. Finding that "Mauser's equitable estoppel claim is virtually indistinguishable from his claim ... that the Plan Summary violates ERISA's disclosure provisions," id. at 58, the

First Circuit held that "there is not a more general equitable estoppel claim based solely on an inadequate Plan Summary," id. The Court of Appeals reserved "for an appropriate case whether there may exist an equitable estoppel claim in cases where misrepresentations exist apart from the Plan Summary." Mauser, 239 F.3d at 58.

**3. Application**

Plaintiff offers no argument regarding that portion of his estoppel claim which is based on the contention that he relied upon Pitney Bowes' representations regarding how his benefit rate would be calculated in deciding to accept LTD benefits and deciding to remain out of work. See Plaintiff's Mem. at 17-19; see also Complaint ¶¶ 38-40. This is not surprising given that if Plaintiff were able to perform the material duties of his occupation when he "decid[ed] to accept LTD benefits[] and ... decid[ed] to remain out of work on a medical leave of absence," Complaint ¶ 40, he would not have met the Plan's definition of totally disabled, see Plan ¶ 2.33, and, thus, would not have been eligible for disability benefits, see id. Thus, this portion of Plaintiff's estoppel claim is untenable on its face.

As to the portion of the claim which is based on alleged representations and promises made by the Company in connection with the Settlement Agreement, the court first notes that Plaintiff is unable to satisfy an essential element of equitable estoppel. Plaintiff's basic contention, i.e., that the Company made representations and promises regarding the amount of benefits which Plaintiff would receive and how those benefits would be calculated in order to induce Plaintiff to execute the Settlement Agreement, is contradicted by the Settlement Agreement, and the court may not ignore that document. See Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000)("It is a well-settled rule that when

a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.").

The Settlement Agreement does not guarantee that Plaintiff will continue to receive any particular amount of disability benefit. It only states that Pitney Bowes:

> acknowledges that Hatch will continue to maintain that status, and receive those benefits, **to which he is entitled** as an employee on long-term disability leave ("LTD") pursuant to the terms of the LTD Summary Plan, **as long as he continues to remain eligible under the requirements of the LTD Summary Plan.**

Settlement Agreement ¶ 5 (bold added). Moreover, the Settlement Agreement also explicitly states that it "is the complete understanding between the parties and may not be changed orally." Settlement Agreement ¶ 16. Thus, Plaintiff cannot establish the necessary element of his estoppel claim that Pitney Bowes made a definite representation regarding either the amount of benefits which Plaintiff would receive in the future or that the amount of such benefits would not be subject to recalculation in order to comply with the requirement that Plaintiff be "entitled" to the benefits he receives.

Even if Plaintiff were able to satisfy the two elements required for a promissory estoppel claim, the court finds his argument for allowing the cause of action in this case unpersuasive. Plaintiff argues that his estoppel claim is not ERISA preempted because "it is not based upon a modification of the Plan, but instead based upon the negotiations by the parties in a settlement conference held before this Court by Judge Lovegreen which resulted in a compromise of Plaintiff's pending litigation against Defendant." Plaintiff's Mem. at 18-19 (citing Law v. Ernst & Young, 956 F.2d 364, 370 (1st Cir. 1992)). Plaintiff's disclaimer that this cause of action is not based upon "a modification of the Plan" appears to stem from a

distinction made in Kane v. Aetna Life Ins., 893 F.2d 1283 (11th Cir. 1990), which was explained by the First Circuit in Law v. Ernst & Young:

> Thus, the Kane court acknowledged that an ERISA plan could not be *modified* by the doctrine of estoppel. The Kane court, however, found **a narrow window** for estoppel recovery where the representation relied upon reflected an *interpretation* of the plan about which reasonable persons could disagree.

Law v. Ernst & Young, 956 F.2d at 370 (bold added). Presumably, Plaintiff's argument is that the statements allegedly made by Pitney Bowes regarding the amount of his benefits during the course of the Settlement Conference constitute an "interpretation" of the Plan about which reasonable persons could disagree and that, therefore, his estoppel claim based on such statements fits within the narrow window which the First Circuit identified in Kane. However, as already noted, the Settlement Agreement does not purport to interpret the Plan or require that any particular amount of benefits be paid to Plaintiff. See Settlement Agreement ¶ 5. To the extent that Plaintiff relies upon oral representations allegedly made by Company representatives during the settlement conference, Plaintiff's argument founders on the Settlement Agreement's explicit declaration that the document reflects "the complete understanding between the parties and may not be changed orally," id. ¶ 16.

In sum, the court is not persuaded that Plaintiff should be permitted to assert an equitable estoppel claim in the circumstances of this case or that this cause of action differs from his claim for relief under Section 1132 (Count I). Cf. Senior v. NSTAR Elec. & Gas Corp., 372 F.Supp.2d at 164 (dismissing equitable estoppel claim where plaintiff did not address why this Circuit should permit such claim under ERISA or

how it differed from plaintiff's claim for relief under Section 1132(a)(1)(B) for benefits).

**4. Conclusion Re Count III**

For the reasons stated above, I find that the Motion should be granted as to Count III because: 1) Plaintiff cannot establish an essential element of his claim of equitable estoppel and 2) his argument for permitting an equitable estoppel claim in the instant action is unpersuasive. I so recommend.

**D. Count IV (ADA Retaliation/Discrimination)**

**1. Nature of Claim**

In Count IV Plaintiff alleges that the:

> so-called benefit calculation "mistake" constitutes a continuing course of illegal discrimination pursuant to [the Americans with Disabilities Act of 1990] 42 U.S.C. § 12101 et seq. against Plaintiff because of Plaintiff's mental disability and was done in unlawful retaliation for Plaintiff's former co-filing of a Charge of Discrimination in 1999 with the Rhode Island Commission for Human Rights and the United States Equal Employment Opportunity Commission ... and for pursuing a civil suit with this Court to redress this illegal disability discrimination (C.A. No: 01-252 [L]).

Complaint ¶ 51.

**2. Law**

**a. Discrimination**

The Americans with Disabilities Act of 1990 (the "ADA") prohibits discrimination against a "qualified individual with a disability," 42 U.S.C. § 12112(a),[16] on the basis of that

---

[16] Title I of the ADA proscribes discrimination in the terms and conditions of employment:

> (a) General Rule
>
> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee

disability in the "terms, conditions, and privileges of employment," id.; see also Fletcher v. Tufts Univ., 367 F.Supp.2d 99, 104 (D. Mass. 2005); Conners v. Maine Med. Ctr., 42 F.Supp.2d 34, 39 (D. Me. 1999), reconsideration granted, aff'd, 70 F.Supp.2d 40, 43 (D. Me. 1999). "[D]isability benefits are 'fringe benefits' under the ADA ...." Conners v. Maine Med. Ctr., 42 F.Supp.2d at 40; see also Ford v. Schering-Plough Corp., 145 F.3d 601, 605-06 (3rd Cir. 1998)("Title I of the ADA prohibits discrimination by employers regarding the 'terms, conditions, and privileges' of employment, 42 U.S.C. § 12112(a), including 'fringe benefits' such as disability benefits. Id. § 12112(b)(2).").

A "'qualified individual with a disability' means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Plaintiff here does not contend that he can perform essential functions of his job. In fact, Plaintiff alleges that he is totally disabled. See Complaint ¶ 17 (alleging that Plaintiff meets the Plan's definition of "totally disabled"). Thus, this case presents the question of whether an employee (or a former employee) who is no longer able to perform the essential functions of his job (or former job), either with or without a reasonable accommodation, is "a qualified individual with a disability" such that he can bring an action under the ADA

---

compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a); see also Conners v. Maine Med. Ctr., 42 F.Supp.2d 34, 39 (D. Me. 1999), reconsideration granted, aff'd, 70 F.Supp.2d 40, 43 (D. Me. 1999).

alleging discrimination with regard to disability benefits.[17]

The First Circuit has yet to address this question, see Fletcher v. Tufts Univ., 367 F.Supp.2d at 104, and the issue has produced a split among the circuits which have addressed it, compare Ford v. Schering-Plough Corp., 145 F.3d 607 (allowing "disabled former employees to sue their former employers regarding their disability benefits so as to effectuate the full panoply of rights guaranteed by the ADA"); Castellano v. City of New York, 142 F.3d 58, 69 (2nd Cir. 1998)("An interpretation excluding from the ADA former employees or employees who can no longer perform the essential functions of their former employment would undermine the purpose of preventing disability discrimination in the provision of fringe benefits."), with Weyer v. Twentieth Century Fox Film Corp., 198 F.3d 1104, 1108 (9th Cir. 2000)("A totally disabled person who cannot 'perform the essential functions of the employment position' with or without reasonable accommodations ... cannot be a 'qualified individual' entitled to sue under Title I of the [ADA]."); Parker v. Metro. Life Ins., 99 F.3d 181, 186 (6th Cir. 1996)(rejecting as circular reasoning that the ADA's express prohibition against discrimination in fringe benefits would be significantly undermined if employees must prove they can perform their jobs because "virtually no employee could ever challenge discrimination in the provision of long-term disability benefits"), rev'd on other grounds, 121 F.3d 1006 (6th Cir. 1997)

---

[17] To state a prima facie case of discrimination under the ADA a plaintiff must allege in his Complaint that he: (1) suffered from a disability as defined by the ADA; (2) was otherwise qualified to perform the essential functions of his employment with or without reasonable accommodation; and (3) was subject to an adverse employment action. See Benoit v. Technical Mfg. Corp., 331 F.3d 166, 175 (1st Cir. 2003); see also Feliciano v. Rhode Island, 160 F.3d 780, 784 (1st Cir. 1998)(stating the same elements where the adverse employment action was discharge).

(en banc); EEOC v. CNA Ins. Cos., 96 F.3d 1039, 1043-45 (7th Cir. 1996)(rejecting arguments that a totally disabled former employee fits within the definition of a qualified individual with a disability).

A similar split in opinion is reflected in district court opinions. Compare Fletcher v. Tufts Univ., 367 F.Supp.2d at 106 (concluding "that former employees, who were able to perform the essential functions of the employment position for a period sufficient to qualify for long-term benefits and who allege that they are discriminated against with respect to long-term disability benefits on the basis of their disability, have standing to assert that claim"); Iwata v. Intel Corp., 349 F.Supp.2d 135, 146 (D. Mass. 2004)(finding that "it would frustrate the purpose of the ADA to deny [plaintiff] statutory standing to bring this claim"); Conners v. Maine Med. Ctr., 42 F.Supp.2d at 45 (finding "that the term 'qualified individual with a disability' should be interpreted to include individuals formerly employed and currently completely disabled so as to be eligible for the disability benefits offered by his or her former employer" and holding that "former employees currently totally disabled are 'qualified individuals with a disability' and may sue under the ADA for discrimination in disability benefits that they receive post-employment"), with Fobar v. City of Dearborn Heights, 994 F.Supp. 878, 883 (E.D. Mich. 1998)("[T]he ADA, although prohibiting discrimination in the area of fringe benefits, does not apply to people who are no longer able to perform the essential functions of their jobs.").

This court finds the opinions of District Judge Lindsay in Fletcher v. Tufts Univ., 367 F.Supp.2d 99, 104-106 (D. Mass. 2005), Chief Judge Young in Iwata v. Intel Corp., 349 F.Supp.2d 135, 144-47 (D. Mass. 2004), and District Judge Carter in Conners v. Maine Med. Ctr., 42 F.Supp.2d 34, 39-45 (D. Me. 1999), well

reasoned and persuasive. I also have been influenced by the Second and Third Circuit opinions which have reached the same conclusion. See Ford v. Schering-Plough Corp., 145 F.3d at 607 ("interpreting Title I of the ADA to allow disabled former employees to sue their former employers regarding their disability benefits so as to effectuate the full panoply of rights guaranteed by the ADA"); Castellano v. City of New York, 142 F.3d at 69 (holding "that a former employee with a disability who 'with or without reasonable accommodation' could 'perform the essential functions of the employment position' for a period sufficient to establish entitlement to an employer-related fringe benefit (i.e., who is otherwise entitled to receive a fringe benefit) is a 'qualified individual with a disability' within Title I of the ADA for the purpose of challenging alleged discrimination in the provision of that fringe benefit"). Accordingly, I find that Plaintiff is a "qualified individual with a disability" under the ADA, and his claim for discrimination is not precluded by virtue of the fact that he presently contends that he is disabled and no longer able to perform the essential functions of his former job.

**b. Retaliation**

A prima facie case of retaliation under the ADA is pled when Plaintiff alleges 1) that he engaged in ADA protected conduct, 2) that he suffered an adverse employment action, and 3) that there was a causal connection between his conduct and the adverse employment action. See Benoit v. Technical Mfg. Corp., 331 F.3d 166, 177 (1st Cir. 2003). A reduction or elimination of an employee's fringe benefit is an adverse employment action. See Hildebrandt v. Illinois Dep't of Natural Res., 347 F.3d 1014, 1030 (7th Cir. 2003).

**3. Application**

Pitney Bowes, citing Tompkins v. United Health Care of New

England, Inc., 203 F.3d 90 (1st Cir. 2000), argues that "an allegation of wrongful refusal to provide benefits cannot, as a matter of law, support a claim for discrimination or retaliation under the ADA ...." Defendant's Mem. at 11. However, in Tompkins the First Circuit emphasized that "the complaint is devoid of any allegation that [defendant's] review of the [plaintiffs'] claim was discriminatory or differed in any way from the ordinary process afforded any plan member challenging a benefit denial." Tompkins v. United Health Care of New England, Inc., 203 F.3d at 96; see also id. ("[The plaintiffs] make no allegations that the review process itself was discriminatory. Therefore, they do not allege the discriminatory denial of any benefit protected by Title I or Title III of the ADA. Their ADA claims were properly dismissed.") Here, drawing every reasonable inference in favor of letting this cause of action proceed, see id. at 93, Plaintiff contends that the recalculation of his benefits was discriminatory and that it was done in retaliation for his having filed the prior complaint of discrimination and lawsuit against Defendant, see Complaint ¶ 51. Thus, unlike Tompkins, Plaintiff's Complaint can be read as alleging that "the review process itself," Tompkins, 203 F.3d at 96, i.e., the act of checking to see if Plaintiff was receiving the correct amount of benefits, was done in a discriminatory fashion.

Pitney Bowes construes Plaintiff's Complaint too narrowly in suggesting that Count IV is based simply on a failure to provide benefits. See Defendant's Reply Mem. at 4. Read broadly, Plaintiff alleges that the act of reviewing his file and reviewing the calculation of his benefits was discriminatory and that it was done in retaliation for his filing of complaints of discrimination with the RICHR and the EEOC. See Complaint ¶¶ 47-51. If discovery in this case reveals that Plaintiff's file was singled out for review when other files were not similarly

reviewed or that the review was undertaken as a result of a directive from a Pitney Bowes executive to the Disability Department which required that department to review only Plaintiff's file or to review only the files of persons receiving disability benefits who had previously filed discrimination complaints and/or lawsuits against the Company, Plaintiff's cause of action for retaliation would be significantly advanced.

With regard to the temporal proximity of the protected conduct and the adverse action, Plaintiff dismissed his prior lawsuit in March of 2002, see Docket in CA 01-251 L, and the review of Plaintiff's disability benefits occurred sometime after Plaintiff's independent medical evaluation in May of 2003, see Plaintiff's Mem., Ex. B at 1 ("Following your Independent Medical Evaluation with Dr. Logue in May of this year, your file was reviewed with regard to updated forms, calculations, etc. An error in the calculation of your Long Term Disability (LTD) Benefit has been uncovered and brought to the attention of the Disability Department."). This is a span of approximately fifteen months.[18] Admittedly, this is at the outer limits of what could be deemed reasonable in terms of finding a connection between Plaintiff's protected activity (i.e., the filing of the RICHR and EEOC complaints and the prior lawsuit) and the adverse employment action. However, it is not so great a period of time that the court can confidently find that there is no possible connection between the two events.

**4. Conclusion Re Count IV**

For the reasons stated above, I find that the Motion should be denied as to Count IV because Plaintiff alleges that the

[18] The court uses the dismissal of the lawsuit as the starting point for determining the temporal span between the protected conduct and the adverse employment action because the dismissal marks the end of the protected conduct which Plaintiff claims is a basis for the retaliation.

recalculation of his benefits was discriminatory and that it was done in retaliation for his having filed the prior complaints of discrimination and lawsuit against Pitney Bowes. I further find that Plaintiff's claims for discrimination and retaliation are not precluded by his inability to perform the essential functions of his past employment position. I so recommend.

**E. Counts V and VI (State Claims for Retaliation/ Discrimination)**

**1. Nature of Claims**

In Counts V and VI Plaintiff alleges that Defendant's "so-called benefit calculation 'mistake,'" Complaint ¶¶ 56, 61, constitutes a continuing course of illegal discrimination against him because of his mental disability and unlawful retaliation for filing the prior charge and civil suit, see id., in violation of the Rhode Island Fair Employment Practices Act ("RIFEPA"), R.I. Gen. Laws § 28-5-7[19] (Count V) and the Rhode Island Civil Rights

---

[19] R.I. Gen. Laws § 28-5-7 provides in relevant part:

> It shall be an unlawful employment practice:
>
> (1) For any employer:
>
> (i) To refuse to hire any applicant for employment because of his or her race or color, religion, sex, sexual orientation, gender identity or expression, **disability**, age, or country of ancestral origin;
>
> (ii) Because of those reasons, **to** discharge an employee or **discriminate against him** or her **with respect to** hire, tenure, compensation, terms, **conditions or privileges of employment**, or any other matter directly or indirectly related to employment ....

R.I. Gen. Laws § 28-5-7 (2003 Reenactment)(bold added).

Act ("RICRA"), R.I. Gen. Laws § 42-112-1[20] (Count VI). Defendant argues that "[b]ecause these discrimination and retaliation claims are founded entirely on Plaintiff's benefits from the Plan, these claims 'relate to' the Plan within the meaning of ERISA's preemption provision and are thus preempted." Defendant's Mem. at 11 (citing Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed. 2d 474 (1990) ("Under [a] 'broad common-sense meaning,' a state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect."); Wadsworth v. Whaland, 562 F.2d 70, 77 (1st Cir.

---

[20] R.I. Gen. Laws § 42-112-1 provides in relevant part:

> (a) All persons within the state, regardless of race, color, religion, sex, **disability**, age, or country of ancestral origin, have, except as is otherwise provided or permitted by law, the same rights to make and enforce contracts, to inherit, purchase, to lease, sell, hold, and convey real and personal property, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property, and are subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> (b) For the purposes of this section, the right to "make and enforce contracts, to inherit, purchase, to lease, sell, hold, and convey real and personal property" includes the making, performance, modification and termination of contracts and rights concerning real or personal property, and the enjoyment of all benefits, terms, and conditions of the contractual and other relationships.
>
> ....
>
> (d) For the purposes of this section, the terms "sex", "disability" and "age" have the same meaning as those terms are defined in § 28-5-6, the state fair employment practices act.

R.I. Gen. Laws § 42-112-1 (1998 Reenactment and 2004 Supp.)(bold added).

1977)(finding "[t]he legislative history manifests that Congress intended to preempt all state laws that relate to employee benefit plans and not just state laws which purport to regulate an area expressly covered by ERISA")).

**2. Law**

The RIFEPA "prohibits an employer from either discharging an employee or discriminating against an employee with respect to 'terms, conditions or privileges of employment' based on that employee's sex or disability." DeCamp v. Dollar Tree Stores, Inc., 875 A.2d 13, 20 (R.I. 2005)(citing R.I. Gen. Laws § 28-5-7(1)(i),(ii)). The RICRA "similarly provides all persons with 'full and equal benefit of all laws' regardless of sex or disability." Id. (citing R.I. Gen. Laws § 42-112-1(a)). "The terms sex and disability 'have the same meaning as those terms are defined' in [RI]FEPA." Id. (citing R.I. Gen. Laws § 42-112-1(d)). A person whose rights under Section 42-112-1 of the RICRA have been violated "may commence a civil action for injunctive and other appropriate equitable relief, and for the award of compensatory and exemplary damages." DeCamp v. Dollar Tree Stores, Inc., 875 A.2d at 20-21 (quoting R.I. Gen. Laws § 42-112-2).

The law regarding preemption has been previously stated in Section III.B.2. supra at 18-20 of this Report and Recommendation.

**3. Application**

The Rhode Island Supreme Court has not addressed the question of whether an employee (or a former employee) who is no longer able to perform the essential functions of his job (or former job), either with or without a reasonable accommodation, is "a qualified individual with a disability" such that he can bring an action under the RIFEPA or RICRA alleging discrimination

with regard to disability benefits.[21] However, these statutes parallel the ADA. See DeCamp v. Dollar Tree Stores, Inc., 875 A.2d at 25; see also Iacampo v. Hasbro, Inc., 929 F.Supp. 562, 572 (D.R.I. 1996)("The FEPA is Rhode Island's analog to ... the ADA").

The reasoning which this court followed in finding that Plaintiff's claims of discrimination under the ADA can proceed even though he is no longer able to perform the duties of his past job, see Section III.D.2.a. supra at 28-32, can also be applied to his RIFEPA and RICRA claims. This court believes that the Rhode Island Supreme Court would do so. The court bases this conclusion on the broad scope of the statutes and the fact that the state supreme court has in the past declined to apply statutory interpretations which would frustrate or nullify the remedial purpose of these statutes. See Folan v. Rhode Island Dep't of Children, Youth, & Families, 723 A.2d 287, 291 (R.I. 1999)(declining to permit RIFEPA and RICRA to be rendered nugatory and ineffective by interpretation of provision of Workers' Compensation Act); Ward v. City of Pawtucket Police Dep't, 639 A.2d 1379, 1382 (R.I. 1994)(rejecting interpretation of § 42-112-1(c) of RICRA which "would render § 42-112-2 a nullity"); see also Rathbun v. Autozone, Inc., 361 F.3d 62, 70 (1st Cir. 2004)("[T]here is strong evidence that the authors of

---

[21] To plead a prima facie case of disability discrimination under either RIFEPA or RICRA, a plaintiff must allege: "(1) [that] he or she was disabled within the meaning of [RI]FEPA and RICRA; (2) that the employee was a 'qualified' individual, which means that, 'with or without reasonable accommodation, she was able to perform the essential functions of her job;' (3) 'that the employer discharged her in whole or in part because of her disability.'" DeCamp v. Dollar Tree Stores, Inc., 875 A.2d 13, 25 (R.I. 2005)(adopting the prima facie standard required to prove a claim of discrimination under the ADA)(citing EEOC v. Amego, 110 F.3d 135, 141 n.2 (1st Cir. 1997)). Here Plaintiff's allegation that he suffered an adverse employment action (the reduction in the amount of his long term disability benefits) satisfies the third element.

the RICRA intended that statute to function as a broad civil rights law aimed at remedying injuries to the person."); Rossi v. Amica Mut. Ins. Co., No. C.A. 02-485 L, 2005 WL 309975, at *6 (D.R.I. Feb. 9, 2005)("The Rhode Island Supreme Court and this Court have consistently held that RICRA 'provides broad protection against all forms of discrimination in all phases of employment.'")(quoting Ward, 639 A.2d at 1381); Liu v. Striuli, 36 F.Supp.2d 452, 478 (D.R.I. 1999)(citing "the expansive language of RICRA and its generous grant of rights"); Wyss v. Gen. Dynamics Corp., 24 F.Supp.2d 202, 211 (D.R.I. 1998)("RICRA protects plaintiffs against any discrimination which interferes with the 'benefits, terms, and conditions' of the employment relationship--whether it takes the form of disparate impact, disparate treatment, retaliation, or harassment. The decision in Ward mandates that courts read the RICRA as broadly as possible--which means that if individuals discriminate in ways that violate the statute, then they must be liable under it."); Evans v. R.I. Dep't of Bus. Regulation, No. Civ.A 01-1122, 2004 WL 2075132, at *3 (R.I. Super. Aug. 21, 2004)(stating that "[t]he protections created under [RI]FEPA are broad").

Having determined that Plaintiff's inability to perform his past job does not bar his FEPA and RICRA claims, the court turns to Defendant's contention that these causes of action are preempted. The court finds that because the state statutes target the same conduct unlawful under the ADA, they are enforcement vehicles for the ADA and are not preempted by ERISA § 514(d). See Tompkins v. United Healthcare of New England, 203 F.3d 90, 97 (1st Cir. 2000)("[I]f [plaintiffs'] state statutory claims targeted the same conduct unlawful under the ADA, those state claims would be exempt from ERISA preemption pursuant to ERISA § 514(d).")(citing Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 102-04, 103 S.Ct. 2890, 2897, 77 L.Ed.2d 490 (1983); Carparts

Distribution Ctr., Inc. v. Auto. Wholesaler's Assoc. of New England, Inc., 37 F.3d 12, 20-21 (1st Cir. 1994)(vacating dismissal of state law claims on grounds that they might be found exempt from ERISA preemption as part of the ADA's enforcement)).

**4. Conclusion Re Counts V and VI**

For the reasons stated in paragraph 3 above, I find that Plaintiff's state law claims pursuant to the RIFEPA and RICRA are viable notwithstanding the fact that he is disabled and unable to perform his prior job with Pitney Bowes. I further find that these claims are not preempted by ERISA because they are enforcement vehicles for the ADA.[22] I therefore recommend that the Motion to Dismiss be denied as to these counts.

**F. Count IX (Injunctive Relief)**

In Count IX, Plaintiff "seeks a preliminary and permanent injunction to restrain and enjoin the Defendant from seeking further recoupment of benefits until this entire matter is resolved by this Court." Complaint ¶ 72. The court has already determined that Pitney Bowes is neither the named nor de facto administrator of the Plan. See Section III.A.4. supra at 18. The Company has no ability to control the Plan or pay benefits under it. Accordingly, Plaintiff's request for an injunction

---

[22] Because Plaintiff may seek leave to file an amended complaint naming the Plan and the Employee Benefits Committee as defendants, the court deems it advisable to state that, as to those potential defendants, claims pursuant to the RIFEPA and RICRA would be preempted. As to those defendants, Plaintiff's claims would be based on an alleged deprivation of benefits under the Plan. Thus, the "real nature," Hampers v. W.R. Grace & Co., 202 F.3d 44, 51 (1st Cir. 2000), of these state law causes of action would be that of an alternative mechanism for obtaining Plan benefits, see id. at 52, and they would be preempted for that reason, see id.

In contrast, the claims against Pitney Bowes discussed above target discrimination and retaliation by the Company in initiating a review of the Plaintiff's entitlement to benefits. As to these claims, the court reads the Complaint as seeking compensatory and punitive damages, see Complaint at 10 (Prayer for Relief), not benefits under the Plan.

against the Company fails to state a claim upon which relief can be granted. The Motion should be granted as to Count IX, and I so recommend.

**G. Demand for Jury Trial**

Defendant seeks to have Plaintiff's demand for a jury trial stricken on the basis that all of his claims are stated under or preempted by ERISA. See Defendant's Mem. at 12. However, the court has determined that Plaintiff has adequately pled claims under the ADA (Count IV), the RIFEPA (Count V), and the RICRA (Count VI). Accordingly, his right to jury trial survives as to those claims.

**IV. Conclusion**

For the reasons stated above, I recommend that the Motion to Dismiss be granted as to Counts I, II, III, VII, VIII, and IX. I recommend that it be denied as to Counts IV, V, and VI. I further recommend that to the extent the Motion seeks to strike or dismiss Plaintiff's claim for a jury trial the Motion should be denied.

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); D.R.I. Local R. 32. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

David L. Martin

DAVID L. MARTIN
United States Magistrate Judge
December 1, 2005