UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

SCANNED

| | | |
|---|---|---|
| STEPHEN HATCH<br>Plaintiff | : | C.A. No. 05-155 (S) |
| v. | : | |
| PITNEY BOWES, INC., PITNEY BOWES, INC. LONG-TERM DISABILITY PLAN AND PITNEY BOWES, INC. LONG-TERM DISABILITY PLAN EMPLOYEE BENEFITS COMMITTEE<br>Defendants | : | |

**PLAINTIFF'S OBJECTION TO REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE TO DISMISS CERTAIN COUNTS OF COMPLAINT**

Now comes the Plaintiff, Stephen Hatch, in the above-captioned action and hereby objects to the Report and Recommendation of Magistrate Judge David L. Martin. In support of his objection Plaintiff relies on the Memorandum of Law filed herewith.

Respectfully submitted,

PLAINTIFF STEPHEN HATCH
By his Attorney,

Noelle K. Clapham (3338)
24 Salt Pond Road, Suite A-8
South Kingstown, RI 02879
(401) 783-3600
(401) 783-3670 (fax)

**CERTIFICATION**

I hereby certify that on this 12th day of December, 2005, I mailed a true and complete copy of the foregoing to Defendant's counsel of record: Thomas J. McAndrew, Esquire, Thomas J. McAndrew & Associates, One Turks Head Place, Suite 205, Providence, RI 02903; Nicole A. Diller, Esquire and Andrew C. Sullivan, Esquire, Morgan Lewis & Bockius LLP, One Market, Spear Street Tower, San Francisco, CA 94105.

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| STEPHEN HATCH<br>Plaintiff<br><br>v.<br><br>PITNEY BOWES, INC., PITNEY BOWES, INC. LONG-TERM DISABILITY PLAN AND PITNEY BOWES, INC. LONG-TERM DISABILITY PLAN EMPLOYEE BENEFITS COMMITTEE<br>Defendants | : | C.A. No. 05-155 (S) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS OBJECTION TO THE REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE TO DISMISS CERTAIN COUNTS OF THE COMPLAINT**

Plaintiff objects to the Report and Recommendation issued in the above-captioned matter by Magistrate Judge David L. Martin dated December 1, 2005. The document recommends granting Defendant Pitney Bowes, Inc.'s ("the corporate defendant") Motion to Dismiss with respect to all counts of Plaintiff's Complaint except the employment discrimination counts (IV, V and VI) pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff respectfully objects to dismissal of Counts I and VIII, the Employment Retirement Income Security Act ("ERISA") counts. The Magistrate Judge recommended dismissal of these counts against the corporate defendant, stating that Plaintiff should amend his Complaint to name the Pitney Bowes, Inc. Long-Term Disability Plan ("the Plan") and the Pitney Bowes, Inc. Long-Term Disability Plan Employee Benefits Committee ("Employee Benefits Committee"), the entity identified in the Plan as the official Plan Administrator.[1]

The focus of the Magistrate Judge's recommendation with respect to the dismissal of these counts, and thus this objection, is whether Defendant Pitney Bowes, Inc. is a proper party

[1] See Report and Recommendation ("R & R") pages 16 and 18.

defendant to the ERISA causes of action. The Plaintiff takes the position that the corporate defendant is in fact a proper party defendant. Essentially, the Plaintiff proceeded against the corporate defendant because it held itself out in various communications to Plaintiff and others as being the entity in charge of Plaintiff's benefits and actually did take action with respect to Plaintiff's benefits. The communications and actions of the corporate defendant make it a *de facto* plan administrator and co-fiduciary pursuant to ERISA. As such, the corporate defendant cannot escape liability for its actions by hiding behind a false front, the Pitney Bowes, Inc. Long-Term Disability Plan Employee Benefits Committee.

Plaintiff submits that the facts as alleged in his initial Complaint are sufficient as a matter of law to support his ERISA claims on the theory outlined above.[2] Furthermore, the evidence submitted by the parties in connection with prosecuting and defending the instant Motion points to the conclusion that the corporate defendant was, in truth, the entity making decisions and interfering in the administration of this Plaintiff's benefits. The evidence submitted by the Plaintiff in responding to the Motion to Dismiss is surprisingly strong, especially given the fact that Plaintiff has not yet been able to conduct discovery. Therefore, there should have been no recommendation to dismiss the ERISA counts.

## I. Mistake in Application of Rule 12(b)(6) Standard

In ruling on the Motion to Dismiss, the Magistrate Judge did not apply the correct legal standard of Federal Rule of Civil Procedure 12(b)(6). Specifically, the Magistrate Judge considered and relied upon content contained in an affidavit submitted by Defendant Pitney

[2] Nevertheless, Plaintiff has filed an Amended Complaint simultaneously with this objection which pleads his allegations in greater detail and adds the two suggested defendants. Because a responsive pleading has not yet been received from Defendant Pitney Bowes, Inc., Plaintiff retains his right to amend his Complaint one time without moving for leave of court pursuant to Federal Rule of Civil Procedure 15, because a Motion to Dismiss is not a responsive pleading within the meaning of Rule 15. *See Domino Sugar Corp. v. Sugar Workers Local*, 10 F.3d 1064, 1068, n.1 (4th Cir. 1993).

Bowes, Inc. from Defendant's employee, Barbara Bianco ("Bianco Affidavit"), while refusing to consider evidence that Plaintiff submitted to rebut that affidavit. This inconsistency is untenable.

Normally, in a Rule 12(b)(6), the court only considers the "four corners" of the complaint, and an attempt to bring in matters outside the complaint automatically converts the motion to dismiss to one for summary judgment. Fed. R. Civ. P. 12(b)(6). There is one exception to this general rule, that is, when a party attempts to introduce a document that is integral to the complaint or explicitly relied upon on that complaint. *See Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24 (1st Cir. 2000.) When a party introduces such a document, the automatic conversion rule does not apply. Instead, the document is more properly viewed as part of the complaint itself. *See Beddal v. State Street Bank and Trust Co.*, 137 F.3d 12 (1st Cir. 1998). .

Along with its Motion, the corporate defendant submitted documents such as the Plan. Because the Plan itself was so integral to the complaint, it was of course proper for the Magistrate Judge to consider that document without converting the corporate defendant's motion to one for summary judgment. *See Clorox Co.*, at 32. However, the corporate defendant *also* submitted an Affidavit from a Barbara Bianco regarding Pitney Bowes, Inc.'s involvement with the Plan. The Bianco Affidavit was not referenced anywhere within Plaintiff's Complaint and was not an integral document to the Complaint. Indeed, at the time Plaintiff filed his Complaint the Bianco Affidavit did not even exist. The Affidavit was clearly created in response to Plaintiff's Complaint.

In response to the corporate defendant's submission of the Bianco Affidavit, the Plaintiff submitted his own Affidavit detailing the direct involvement and actions taken by the corporate defendant in making decisions pertaining to Plaintiff's benefits. Plaintiff also submitted

correspondence dated April 16, 1998 from Pitney Bowes, Inc. initially granting the Plaintiff Long Term Disability Benefits pursuant to the Plan. This document had been referenced in Paragraph 15 of the Plaintiff's initial Complaint.[3]

There is no dispute that the Magistrate Judge considered the content of the Bianco Affidavit, as he cited to the affidavit in the text of his decision on page 8, and again in footnote number 7 on that same page. On the other hand, despite consideration of and reliance upon the Bianco Affidavit, the Magistrate Judge determined that he could not consider the rebuttal evidence submitted by the Plaintiff to contradict the affidavit. He then held that Plaintiff's complaint was not specific enough in its reference to the April 16, 1998 letter, and that since that document was not integral to the Complaint, it had to be excluded from his consideration in ruling upon the Motion to Dismiss.

Under the circumstances the Magistrate Judge could have converted the corporate defendant's motion one for summary judgment, determined that there was a factual dispute as to whether the corporate defendant had taken control over the Plan, and then denied the corporate defendant's motion. This would have been particularly fitting under the circumstances. It was, after all, the corporate defendant that chose to inject the Bianco Affidavit into the Motion. The Plaintiff, on the other hand, produced very strong evidence not only countering the Bianco Affidavit, but supporting the basic proposition that the corporate defendant had intervened in the Plan. Alternatively, the Magistrate Judge could have disregarded both the Bianco Affidavit and the rebutting evidence, and simply ruled on the complaint and the documents that were in fact integral thereto.

---

[3] "This [LTD benefit calculation] was confirmed by Pitney Bowes through various letters over the years, and Plaintiff was indeed paid monthly benefits based upon his 1997 income until August, 2003."

The Magistrate Judge took neither of these actions. Essentially, the Magistrate Judge adopted a "double standard" for the treatment of the documents submitted by the corporate defendant and the Plaintiff with their respective Motion to Dismiss and Objection thereto. He considered the Bianco Affidavit submitted by the corporate defendant. On the other hand, he chose to ignore the affidavit submitted by the Plaintiff, and also to rule that the April 16, 1998 letter had not been referred to specifically enough in the Complaint. This inconsistency was manifestly improper. Whatever legal standard chosen by the Court, it must be uniformly applied to both parties. Such an inconsistent treatment of these documents was therefore a clear error, and therefore should be corrected by this Court.

**II. Pitney Bowes, Inc. is a Proper Party Defendant for ERISA Counts**

Contrary to the suggestion of the Magistrate Judge, Pitney Bowes, Inc. is a proper party to the ERISA causes of action. The Magistrate's Report and Recommendation states on pages 10-11: "Plaintiff's contention that it was Pitney Bowes (as opposed to the Committee acting through the Disability Department) which caused the cessation of his benefits and the initiation of recoupment action is not supported by either the Plan or the August, 7, 2003 letter." Plaintiff respectfully disagrees with this holding. The Plaintiff submitted substantially more than sufficient evidence in support of its contention. At the very least the Motion to Dismiss should be denied so that Plaintiff will have a fair opportunity to conduct discovery and to gather even more evidence to support his contention that Pitney Bowes, Inc. was the true decision-maker with respect to his benefits. *See Corsini v. United Healthcare Corporation*, 965 F.Supp. 265 (D.R.I. 1997).

Pitney Bowes, Inc. has taken the position that because the Plan is allegedly an entity separate and apart from it, it can have no liability to the Plaintiff in regards to this matter.

Instead, it points to the Employee Benefit Committee that allegedly manages the Plan as the defendant. However, ERISA jurisprudence clearly recognizes that there can be *de facto* Plan administrators who can and should be held liable for wrongful denials of benefits. A plan sponsor such as Pitney Bowes, Inc. may become a *de facto* Plan Administrator when it fails to maintain a distinction between itself and the Plan. *See Law v. Ernst & Young*, 956 F.2d 364, 373-74 (1st Cir. 1992). *See also Terry v. Bayer Corp.*, 145 F.3d 28, 35 (1st Cir. 1998), citing *Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir. 1997) ("[t]he proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan."); *Burchill v. Unumprovident Corporation*, 2003 WL 21524730 (D. Me. 2003); *Foulke v. Bethlehem 1980 Salaried Pension Plan*, 565 F.Supp. 882, 882 (E.D. Penn. 1983).

The Plaintiff submitted more than sufficient evidence with its Objection to demonstrate that Pitney Bowes, Inc. failed to maintain a distinction between itself and the Plan so as to properly render Pitney Bowes, Inc. a proper defendant. As the Plan documents themselves expressly indicate, Pitney Bowes did not completely divorce itself from the administration of the Plan, but kept its hand well in the day-to-day operations thereof through its Disability Department. See Sections 7.1 and 7.6 of the Plan. While this Plan language on its face might not be enough to erode the boundaries between the Defendant and the Plan, certainly the other behaviors of Pitney Bowes, Inc. in connection with this matter did.

We note that the leading case in this area, *Law*, found it particularly significant that communications regarding an ERISA plan failed to maintain the distinction between the plan and its personnel, and the plan sponsor and its personnel. *Id.* at 373-74. Plaintiff also submitted with his Objection correspondence dated April 16, 1998. That letter initially communicating Plaintiff's entitlement to benefits and setting forth his monthly benefit rate is written on Pitney

Bowes letterhead. No mention is made regarding the Employee Benefit Committee. The address for contact information is: "World Headquarters Stamford, Connecticut." The correspondence states that Plaintiff will receive his LTD checks "from Pitney Bowes' Payroll Department." The letter is signed "Javid Din, Claims Examiner-Corporate Disability Plans."[4] This correspondence is clearly from the corporate defendant. Similarly, the March 24, 2003 benefit confirmation letter prepared for Plaintiff's use in securing re-financing was written on the same Pitney Bowes letterhead, with the same "World Headquarters, Stamford, Connecticut" contact information. This letter is signed "Erica Alexander, Claims Examiner." This correspondence is also clearly from the corporate defendant.[5] This failure to distinguish the Plan from the sponsor, as reflected by the letterhead, was deemed highly significant to the *Law* Court. *Id.* at 373-74.

Finally, the August 7, 2003, overpayment, benefit reduction and recoupment letter that gave rise to this litigation is yet again written on the Pitney Bowes letterhead. This time, the "Pitney Bowes Employee Services and Support Center" is referenced on the letterhead. The words "World Headquarters" is eliminated from the contact information but actual address given is still that of the World Headquarters location: "68 Elmcroft Road, Stamford, CT." This correspondence is signed by "Barbara Bianco, RN, C.C.M." No mention is made of the Employee Benefit Committee and/or the Disability Department anywhere in either the letterhead of the body of the correspondence.

In addition to this correspondence, Plaintiff's counsel submitted an affidavit regarding her attempt to speak with Barbara Bianco on Plaintiff's behalf.[6] As outlined in that affidavit, Bianco's August 7, 2003 correspondence instructed Plaintiff to call her citing a telephone

[4] Exhibit A of Plaintiff's Memorandum in Support of Objection to Motion to Dismiss.
[5] Exhibit E of Plaintiff's Memorandum in Support of Objection to Motion to Dismiss.
[6] See Exhibit C of Plaintiff's Memorandum of Law in Support of Objection to Motion to Dismiss.

number and specific instructions.[7] Plaintiff's counsel was never able to reach Bianco. Instead, she eventually received a return telephone call from the personal secretary of corporate counsel for Pitney Bowes, Inc., Rosalind Gordon, relaying an instruction not to contact Bianco. Ms. Gordon herself eventually spoke with Plaintiff's counsel reiterated the instruction not to contact Bianco, and purported to have some authority over the situation.

The sum of all of the above-described communications supports Plaintiff's assertion that the corporate defendant was controlling his benefits. In particular, the written communications support Plaintiff's contention that the Employee Benefits Committee is a sham, and that the true entity controlling his benefits is the corporate defendant, which controls the "Disability Department." In addition, the fact that Plaintiff's counsel was refused communication with Bianco after Plaintiff was invited to have such communications and given specific instructions on how to reach Bianco by telephone is highly significant. The fact that corporate counsel for Pitney Bowes, Inc. responded to telephone calls placed by Plaintiff's counsel to Bianco proves that the two entities are not separate legal and decision-making entities. In her communications with Plaintiff's counsel Attorney Gordon clearly identified herself as counsel for the corporate defendant and even noted and referred to the prior litigation of the Plaintiff. This fact shows blatant collusion between entities with respect to Plaintiff's benefits. The Disability Department and the Employee Benefits Committee were clearly aware of Plaintiff's prior litigation and red flagged him within their systems; otherwise Bianco would not have avoided a telephone call from Plaintiff's counsel and the attorney for the corporate defendant would not have responded to that call. The Plaintiff was clearly red flagged within the Disability Department and/or with

[7] "Stephen, I know that you will have many questions and concerns when you receive this letter. Please feel free to call me at 1-800-932-3631, option 2, option 4, ext 7190." See Bianco Letter Exhibit B of Plaintiff's Memorandum of Law in Support of Objection to Motion to Dismiss.

the Employee Benefits Committee (if it has any function other than ruling on benefit appeals).[8] The Employee Benefits Committee had no role in identifying the so-called error in Plaintiff's LTD benefit rate and with instituting recoupment at the lower benefit rate; all that was done by the corporate defendant. I respectfully submit that it is not a coincidence and not a "ministerial act." Under these circumstances, the Plaintiff should at least be permitted further discovery. *See Corsini*, at 270.

Finally, defense counsel basically conceded at oral argument before the Magistrate Judge that she had no objection to the corporate defendant being named at this stage of the litigation, so long as Plaintiff also named the Employee Benefits Committee.[9] Plaintiff immediately stipulated to do so on the record.[10]

Accordingly, here, then, as in *Law*, there is more than ample evidence to show that the Defendant failed to maintain a distinction between itself and the Plan, to the point that the Defendant should rightfully be treated as the Plan Administrator for the purposes of this litigation. At the very least a material question of fact exists as to whether the corporate

---

[8] See the exchange between the Court and Attorney Diller on pages 23 and 24 of the transcript of the October 12, 2005 Oral Argument.
"The Court: [W]hich entity made the decision to cease paying benefit and to start recouping the overpayment?
Ms. Diller: That actually I would look at as a plan sponsor function . . .
The Court: Without direction from –
Ms. Diller: The employee benefits committee?
The Court: Yes.
Ms. Diller: The employee benefits committee was not involved in this case, that is correct."
The Court: It was not involved in this case literally? The employee benefits committee was not involved in this case?
Ms. Diller: No . . . .

[9] Ms. Diller: "We – My main issue is ensuring that we actually have the appropriate defendant in, and having the company remain as a defendant is less of an issue to me because I don't see it having a practical impact." R & R p. 7.

[10] Ms. Clapham: "[I]f I understand defense counsel correctly, it seemed that she was somewhat conceding that, yes, indeed, defendant Pitney Bowes took a lot of these action, and perhaps they are [a] proper party defendant, but her concern was that she wouldn't be able to instruct the employee benefits committee at Pitney Bowes, Inc., to ultimately pay out any judgment that might be awarded to the plaintiff, so what I could do to alleviate that is just to name the employee benefits committee at Pitney Bowes, as well, and move to amend the complaint. And we could probably stipulation to that and get that done quickly." R & R p. 32. Plaintiff has been waiting for the decision of the Magistrate Judge to issue before filing her Amended Complaint so that the Magistrate decision could be taken into consideration before preparing and filing the Amended Complaint.

defendant was acting as the decision-maker in this matter, and should be treated as such for purpose of any review of its actions. Accordingly, the counts against Pitney Bowes should not be dismissed at this time.

## III. CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that this Honorable Court overturn the decision of Magistrate Judge's Report and Recommendation to Dismiss the ERISA Counts of Plaintiff's initial Complaint (I and VIII) with respect to Defendant Pitney Bowes, Inc.

Respectfully submitted,

PLAINTIFF STEPHEN HATCH
By his Attorney,

Noelle K. Clapham (5338)
24 Salt Pond Road, Suite A-8
South Kingstown, RI 02879
(401) 783-3600
(401) 783-3670 (fax)

## CERTIFICATION

I hereby certify that on this 12th day of December, 2005, I mailed a true and complete copy of the foregoing to Defendant's counsel of record: Thomas J. McAndrew, Esquire, Thomas J. McAndrew & Associates, One Turks Head Place, Suite 205, Providence, RI 02903; Nicole A. Diller, Esquire and Andrew C. Sullivan, Esquire, Morgan Lewis & Bockius LLP, One Market, Spear Street Tower, San Francisco, CA 94105.