UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| STEPHEN HATCH<br>Plaintiff<br><br>v.<br><br>PITNEY BOWES, INC., PITNEY BOWES, INC. LONG-TERM DISABILITY PLAN AND PITNEY BOWES, INC. LONG-TERM DISABILITY PLAN EMPLOYEE BENEFITS COMMITTEE<br>Defendants | : | C.A. No. 05-155 (S) |

**AMENDED COMPLAINT**

Plaintiff Stephen Hatch hereby commences this action against the Defendant and alleges:

## I. JURISDICTION AND VENUE

1. Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1331 because certain claims asserted herein arise under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA") and because certain other claims asserted herein arise under 42 U.S.C. § 12101 et seq. In addition, the parties are contractually bound to submit their dispute to Rhode Island state and federal courts.

2. Defendant Pitney Bowes, Inc. ("Pitney Bowes") is qualified to do business in Rhode Island and in fact at all times relevant hereto has done business in the state of Rhode Island, and is an "employer" within the meaning of ERISA, 29 U.S.C. § 1002(5), "plan administrator" within the meaning of ERISA, 29 U.S.C. § 1002(16)(A) and § 1132 and a "co-fiduciary" within the meaning of 29 U.S.C. § 21 of ERISA.

3. Defendant Pitney Bowes, Inc. employed Plaintiff Stephen Hatch ("Plaintiff Hatch") in its East Providence Rhode Island office for more than twenty-five years and provided Plaintiff with LTD benefits through his employment with Defendant Pitney Bowes, Inc.

## II. PARTIES

4. Defendant Pitney Bowes, Inc. is a Connecticut Corporation housing its world headquarters in Stamford, Connecticut.

5. Defendant Pitney Bowes is Plaintiff's former employer through which Plaintiff is eligible for and receives Long Term Disability ("LTD") Benefits as a fringe benefit of his employment because of his disabled status and a plan sponsor within the meaning of ERISA 29 U.S.C. § 2002(16)(B).

6. Defendant Pitney Bowes, Inc. Long-Term Disability Plan ("Plan") is an ERISA employee benefit plan within the meaning of 29 U.S.C. § 1002(3) and the plan under which Plaintiff has made his claim for Long Term Disability benefits pursuant to his former employment with Pitney Bowes, Inc.

7. Defendant Pitney Bowes, Inc. Employee Benefits Committee ("Employee Benefits Committee") is an entity identified in the Pitney Bowes, Inc. Long-Term Disability Plan as the "plan administrator" within the meaning of ERISA, 29 U.S.C. § 1002(16)(A) and § 1132 and a "fiduciary" within the meaning of 29 U.S.C. § 1002(21) of ERISA.

8. Plaintiff Stephen Hatch is a resident of the state of Massachusetts and an ERISA Plan Beneficiary within the meaning of ERISA, 29 U.S.C. § 1132(a)(1)(B) and (3).

## III. FACT ALLEGATIONS

9. Defendant Pitney Bowes, Inc. ("Pitney Bowes") employed the Plaintiff in its sales department for more than twenty-five (25) years.

10. In July, 1997, Plaintiff was forced to take a medical leave of absence from his employment with Pitney Bowes due to a mental disability.

11. Plaintiff planned to return to his employment with Pitney Bowes on September 1, 1997, with or without reasonable accommodation.

12. Pitney Bowes refused to allow Plaintiff to return to work on September 1, 1997 as scheduled, despite Plaintiff being fully capable of returning to work at that time, with or without reasonable accommodation.

13. Pitney Bowes' pretextual excuse for refusing to allow the Plaintiff to return to work at that time was that he would not be able to perform his job because the District Manager was out on sick leave.

14. On October 1, 1997, Pitney Bowes finally allowed Plaintiff to return to work.

15. Upon Plaintiff's return to work, Pitney Bowes through its management commenced a campaign of severe and extreme harassment against the Plaintiff because of his past mental disability leave and based upon a perceived continuing mental disability.

16. Because of the harassment and illegal disability discrimination suffered upon Plaintiff, Plaintiff was forced to take a second medical leave of absence from his employment on January 1, 1998 and continuing to the present.

17. When Plaintiff went out on this second medical leave of absence, Plaintiff was advised by Pitney Bowes of the monthly amount that he would be receiving in LTD benefits if he continued to stay out of work on medical leave, and that his medical leave for the purposes of calculating his LTD benefit would officially commence on February 1, 1998. This amount was confirmed by Pitney Bowes through various letters over the years (including correspondence dated March 24, 2003), and Plaintiff was indeed paid monthly benefits based upon his 1997 income until August, 2003.

18. On or about August 7, 2003, Plaintiff received a letter from Pitney Bowes stating that there had been a "mistake" in calculation of the amount of his LTD benefits back in 1998, and that he supposedly now owed Pitney Bowes repayment of the sum of $133,075.14. The letter further stated that Plaintiff would not be receiving additional benefits, despite his continued eligibility for such benefits, until that entire sum was fully repaid to Pitney Bowes by Pitney Bowes wholly retaining his future benefits calculated at a substantially lower benefit rate.

19. Since this correspondence Plaintiff has not received any additional LTD benefits, although Pitney Bowes admits that Plaintiff is still medically eligible for such benefits and meets the Plan definition of "totally disabled".

20. Pitney Bowes has attempted to justify its wrongful actions by quoting the language of the Plan that states that in section 2.20 that LTD benefits are calculated as follows:

(a) The higher earnings of either of the last two (2) full calendar years prior to the date of Total Disability; or
(b) The highest average annual earnings for any five (5) consecutive calendar years of employment prior to the date of Total Disability.

According to this Plan language Plaintiff's LTD benefits were in fact calculated correctly initially by basing his benefits on his earnings in 1996 and 1997, as he officially went out on medical disability again on February 1, 1998.

21. This so-called benefit calculation mistake is again a pretext for discriminating against Plaintiff because of Plaintiff's mental disability and in retaliation for Plaintiff's former co-filing of a Charge of Discrimination in 1999 with the Rhode Island Commission for Human Rights and the United States Equal Employment Opportunity Commission (RICHR No: 99 EMH 112-50/03 and EEOC No: 16J980348), and for pursuing a civil suit with this Court to redress the illegal disability discrimination (C.A. No: 01-251 (RRL).

22. Plaintiff's former civil suit filed with the Court was terminated after negotiation of a mutually agreeable settlement. An express provision of the written settlement agreement entered into to dispose of the prior discrimination litigation states in paragraph 5:

> Hatch acknowledges that the payments provided for by paragraph 2 are in addition to and are not in place of any payment, benefit or other thing of value to which Hatch might otherwise be entitled under any policy, plan or procedure of PB [Pitney Bowes] or pursuant to any prior agreement or contract with PB. PB acknowledges that Hatch will continue to maintain that status, and receive those benefits, to which he is entitled as an employee on long-term disability leave ("LTD") pursuant to the terms of the LTD Summary Plan, as long as he continues to remain eligible under the requirements of the LTD Summary Plan.

23. Accordingly, Plaintiff's undersigned counsel telephoned the author of the August 7, 2003 letter, Barbara Bianco, on August 13, 2003, for the purpose of discussing the content of her letter dated August 7, 2003 addressed to Plaintiff, as specifically invited to do in the letter.

24. Undersigned counsel never received any return telephone call or other written communication from Ms. Bianco in response to her August 13, 2003 telephone message.

25. Instead, undersigned counsel received a telephone call from the personal secretary for Pitney Bowes, Inc. corporate counsel, Rosalind Gordon, who directed that per Rosalind Gordon no additional attempts should be made to contact Ms. Bianco, and that she had been instructed by Attorney Gordon to set up a telephone conference with undersigned counsel.

26. When undersigned counsel was eventually able to speak with Attorney Gordon, she reiterated her secretary's instructions not to contact Barbara Bianco again, directing that all communications with respect to Ms. Bianco's overpayment letter be made through her at her offices located at Pitney Bowes, Inc. World Headquarters in Stamford, Connecticut.

27. Attorney Gordon and undersigned counsel discussed the past litigation, the content of the August 7, 2003 Bianco overpayment letter, and Attorney Gordon assured Plaintiff's counsel that she would make some calls and be back in touch.

28. Eventually, Plaintiff's counsel again spoke with Attorney Gordon who advised her that the decision articulated in Ms. Bianco's overpayment letter would not be changed under any circumstances.

29. Plaintiff's counsel then specifically asked Attorney Gordon about the availability of internal appeals.

30. Attorney Gordon advised Plaintiff's counsel that there were no internal appeals available in this instance, and that Stephen Hatch's only recourse would be to file a lawsuit in federal court pursuant to ERISA.

31. Attorney Gordon further made it clear to Plaintiff's counsel that Defendants would continue to withhold Plaintiff's entire LTD benefit each month (at the substantially lower benefit rate) unless he agreed to a written repayment plan.

32. Such a repayment agreement would effectively require Plaintiff to admit that Defendants had to the right to recoup, resign himself to the substantially lower benefit rate and foreclose his legal remedies.

33. Pitney Bowes was the entity that identified the so-called benefit calculation mistake and instituted the recoupment action complained of herein.

34. The act of reviewing Plaintiff's file and reviewing the calculation of his benefits was discriminatory and was done in retaliation for Plaintiff having filed the prior complaint of discrimination and lawsuit against Pitney Bowes.

35. Plaintiff proceeded with litigation because Attorney Gordon made it clear that he had no recourse other than to file an ERISA based lawsuit.

36. On May 26, 2003, Plaintiff again co-filed a Charge of Discrimination with the Rhode Island Commission for Human Rights and the United States Equal Employment Opportunity Commission (RICHR # 04 ERT 336-50-03, EEOC # 16JA400216) to redress the illegal retaliation and disability discrimination suffered upon him by Pitney Bowes' pretextual benefit calculation "mistake" that now forces him to attempt to support himself and his family without payment of any LTD benefits for an approximate two (2) year period.

37. Plaintiff received Right to Sue letters from the Rhode Island Commission for Human Rights and from the United States Equal Opportunity Commission and has otherwise exhausted all administrative remedies prior to filing this litigation.

38. Defendant's assessment of an overpayment of LTD benefits to Plaintiff is a pretext for pursing a course of illegal retaliation against the Plaintiff to punish him for pursuing his prior litigation against the Defendant to redress their illegal disability discrimination.

39. As a result of the continuing illegal disability discrimination and retaliation suffered upon Plaintiff by Pitney Bowes Plaintiff has suffered and will continue to suffer damages including, but not limited to: illegal disability harassment and discrimination, illegal retaliation, various pecuniary damages, including loss of substantial LTD benefits, loss of his family healthcare benefits, loss of income from investments due having to liquidate such investments to support his family, threatened loss of his family's homestead and attorneys' fees, severe and extreme emotional distress and other compensatory damages with physical and emotional manifestations, including an aggravation of Plaintiff's preexisting mental illness and fear, anguish and frustration with respect to his inability to provide financially for himself and his family.

WHEREFORE, Plaintiff prays for the relief requested herein.

**COUNT I**
**DENIAL OF PLAN BENEFITS**
**29 U.S.C. § 1132(a)(1)(B)**

40. Plaintiff hereby realleges in full in this paragraph the allegations set forth in all other paragraphs of this Complaint.

41. Plaintiff Plan Beneficiary, at all times since February 1, 1998, has been and continues to be disabled within the meaning of the Plan, and therefore eligible to receive long-term disability benefits thereunder.

42. By letter dated August 7, 2003, Defendant suspended Plaintiff's benefits citing recoupment of benefits due to an alleged substantial benefit overpayment as a result of a supposed error in the manner in which benefits were initially calculated in 1998.

43. Defendant relies on its wrongful manipulation of the language contained in section 2.20 of the Plan to justify this substantial recoupement of benefits.

44. The plain meaning of the Plan language in section 2.20 requires that Plaintiff's LTD benefits be calculated based upon the greater of either his 1996 or 1997 earnings, because he did not officially commence his most recent disability leave until February 1, 1998.

45. Plaintiff's benefits were initially calculated correctly by Pitney Bowes by basing his benefits upon the greater of his 1996 or 1997 earnings.

46. Pitney Bowes' new unilateral interpretation of the Plan language and insistence upon calculating Plaintiff's benefits based upon the greater of his 1995 or 1996 earnings is erroneous and in violation of ERISA and the terms of the Plan.

WHEREFORE, Plaintiff prays for the relief requested herein.

**COUNT II**
**BREACH OF FIDUCIARY DUTY**
**29 U.S.C. § 1132(a)(3)**

47. Plaintiff hereby realleges in full in this paragraph the allegations set forth in all other paragraphs of this Complaint.

48. Defendants stand in the position of fiduciaries to Plaintiff.

49. In breach of their fiduciary duties, Defendants have wrongfully calculated and failed/refused to appropriately pay Plaintiff monthly LTD benefits pursuant to the provisions and requirements of the Plan.

WHEREFORE, Plaintiff prays for the relief requested herein.

**COUNT III**
**RETALIATION AND ON-GOING DISCRIMINATION**
**VIOLATION OF 42 U.S.C § 12101 ET SEQ.**
**AMERICANS WITH DISABILITIES ACT ("ADA")**

50. Plaintiff hereby realleges in full in this paragraph the allegations set forth in all other paragraphs of this Complaint.

51. When Plaintiff went out of work on his second medical leave of absence, he was advised by Defendant of the monthly amount that he would be receiving in LTD benefits if he continued to stay out of work on a medical leave, and that his medical leave for the purposes of calculating his LTD benefit would officially commence on February 1, 1998. This amount was confirmed by Pitney Bowes through various letters over the years (including correspondence dated March 24, 2003), and Plaintiff was indeed paid monthly benefits based upon his 1997 income until August, 2003.

52. On or about August 7, 2003, Plaintiff received a letter from Pitney Bowes stating that there had been a "mistake" in calculation of the amount of his LTD benefits back in 1998, and that he supposedly now owed Pitney Bowes repayment of the sum of $133,075.14. The letter further stated that Plaintiff would not be receiving additional benefits, despite his continued eligibility for such benefits, until that entire sum was fully repaid to Pitney Bowes by Pitney Bowes wholly retaining his future benefits.

53. Since this correspondence Plaintiff has not received any additional LTD benefits, although Pitney Bowes admits that Plaintiff is still medically eligible for such benefits and meets the Plan definition of "totally disabled".

54. This so-called benefit calculation "mistake" constitutes a continuing course of illegal discrimination and actionable retaliation pursuant to 42 U.S.C. § 12101 et seq. against Plaintiff because of Plaintiff's mental disability and in retaliation for Plaintiff's former co-filing of a Charge of Discrimination in 1999 with the Rhode Island

Commission for Human Rights and the United States Equal Employment Opportunity Commission (RICHR No: 99 EMH 112-50/03 and EEOC No: 16J980348), and for pursuing a civil suit with this Court to redress this illegal disability discrimination (C.A. No: 01-251 (RRL).

WHEREFORE, Plaintiff prays for the relief requested herein.

**COUNT IV**
**RETALIATION AND DISCRIMINATION**
**VIOLATION OF R.I.G.L. § 28-5-7**
**RHODE ISLAND FAIR EMPLOYMENT PRACTICES ACT (FEPA)**

55. Plaintiff hereby realleges in full in this paragraph the allegations set forth in all other paragraphs of this Complaint.

56. When Plaintiff went out of work on his second medical leave of absence, he was advised by Defendant of the monthly amount that he would be receiving in LTD benefits if he continued to stay out of work on a medical leave, and that his medical leave for the purposes of calculating his LTD benefit would officially commence on February 1, 1998. This amount was confirmed by Pitney Bowes through various letters over the years (including correspondence dated March 24, 2003), and Plaintiff was indeed paid monthly benefits based upon his 1997 income until August, 2003.

57. On or about August 7, 2003, Plaintiff received a letter from Pitney Bowes stating that there had been a "mistake" in calculation of the amount of his LTD benefits back in 1998, and that he supposedly now owed Pitney Bowes repayment of the sum of $133,075.14. The letter further stated that Plaintiff would not be receiving additional benefits, despite his continued eligibility for such benefits, until that entire sum was fully repaid to Pitney Bowes by Pitney Bowes wholly retaining his future benefits.

58. Since this correspondence Plaintiff has not received any additional LTD benefits, although Pitney Bowes admits that Plaintiff is still medically eligible for such benefits and meets the Plan definition of "totally disabled."

59. This so-called benefit calculation "mistake" constitutes a continuing course of illegal discrimination and actionable retaliation pursuant to R.I.G.L. § 28-5-7 against Plaintiff because of Plaintiff's mental disability and in retaliation for Plaintiff's former co-filing of a Charge of Discrimination in 1999 with the Rhode Island Commission for Human Rights and the United States Equal Employment Opportunity

Commission (RICHR No: 99 EMH 112-50/03 and EEOC No: 16J980348), and for pursuing a civil suit with this Court to redress this illegal disability discrimination (C.A. No: 01-251 (RRL).

WHEREFORE, Plaintiff prays for the relief requested herein.

**COUNT V**
**RETALIATION AND DISCRIMINATION**
**VIOLATION OF R.I.G.L. § 42-112-1**
**RHODE ISLAND CIVIL RIGHTS ACT**

60. Plaintiff hereby realleges in full in this paragraph the allegations set forth in all other paragraphs of this Complaint.

61. When Plaintiff went out of work on his second medical leave of absence, he was advised by Defendant of the monthly amount that he would be receiving in LTD benefits if he continued to stay out of work on a medical leave, and that his medical leave for the purposes of calculating his LTD benefit would officially commence on February 1, 1998. This amount was confirmed by Pitney Bowes through various letters over the years (including correspondence dated March 24, 2003), and Plaintiff was indeed paid monthly benefits based upon his 1997 income until August, 2003.

62. On or about August 7, 2003, Plaintiff received a letter from Pitney Bowes stating that there had been a "mistake" in calculation of the amount of his LTD benefits back in 1998, and that he supposedly now owed Pitney Bowes repayment of the sum of $133,075.14. The letter further stated that Plaintiff would not be receiving additional benefits, despite his continued eligibility for such benefits, until that entire sum was fully repaid to Pitney Bowes by Pitney Bowes wholly retaining his future benefits.

63. Since this correspondence Plaintiff has not received any additional LTD benefits, although Pitney Bowes admits that Plaintiff is still medically eligible for such benefits and meets the Plan definition of "totally disabled".

64. This so-called benefit calculation "mistake" constitutes a continuing course of illegal discrimination and actionable retaliation pursuant to R.I.G.L. § 28-5-7 against Plaintiff because of Plaintiff's mental disability and in retaliation for Plaintiff's former co-filing of a Charge of Discrimination in 1999 with the Rhode Island Commission for Human Rights and the United States Equal Employment Opportunity Commission (RICHR No: 99 EMH 112-50/03 and EEOC No:

16J980348), and for pursuing a civil suit with this Court to redress this illegal disability discrimination (C.A. No: 01-251 (RRL).

WHEREFORE, Plaintiff prays for the relief requested herein.

**COUNT VI**
**INJUNCTIVE RELIEF**

65. Plaintiff hereby realleges in full in this paragraph the allegations set forth in all other paragraphs of this Complaint.

66. On or about August 7, 2003, Plaintiff received a letter from Pitney Bowes stating that there had been a "mistake" in calculation of the amount of his LTD benefits back in 1998, and that he supposedly now owed Pitney Bowes repayment of the sum of $133,075.14. The letter further stated that Plaintiff would not be receiving additional benefits, despite his continued eligibility for such benefits, until that entire sum was fully repaid to Pitney Bowes by Pitney Bowes wholly retaining his future benefits.

67. Since this correspondence Plaintiff has not received any additional LTD benefits, although Pitney Bowes admits that Plaintiff is still medically eligible for such benefits and meets the Plan definition of "totally disabled".

68. Plaintiff seeks a preliminary and permanent injunction to restrain and enjoin the Defendant from seeking further recoupment of benefits until this entire matter is resolved by this Court.

WHEREFORE, Plaintiff prays for the relief requested herein.

**PRAYER FOR RELIEF**

Plaintiff Stephen Hatch, prays the Court to grant him the following relief:

1. Declare that Plaintiff is entitled to continued long term disability (LTD) benefits under the terms of Defendant's LTD policy;

2. Reinstate Plaintiff's LTD benefits retroactive to termination;

3. Restrain and enjoin Defendant from seeking any further overpayment recoupment;

4. Award Plaintiff compensatory damages against Defendant in an amount to be determined at trial;

5. Award Plaintiff punitive damages for the discrimination and retaliation complained of herein;

6. Award Plaintiff reasonable attorneys fees, including litigation expenses and costs;

7. Award Plaintiff appropriate interest on all such monies; and

8. Such other and further relief as the Court deems just and proper to award Plaintiff.

**PLAINTIFF CLAIMS TRIAL BY JURY ON ALL COUNTS SO TRIABLE.**

Respectfully submitted,

PLAINTIFF STEPHEN HATCH

By his Attorney,

N.K. Clapham

Noelle K. Clapham (5338)
24 Salt Pond Road, Suite A-8
South Kingstown, RI 02879
(401)783-3600
(401) 783-3670 (fax)
claphamlaw@verizon.net

**CERTIFICATION**

I hereby certify that on this 13 th day of December, 2005, I mailed a true and complete copy of the foregoing to Defendant's counsel of record: Thomas J. McAndrew, Esquire, Thomas J. McAndrew & Associates, One Turks Head Place, Suite 205, Providence, RI 02903; Nicole A. Diller, Esquire and Andrew C. Sullivan, Esquire, Morgan Lewis & Bockius LLP, One Market, Spear Street Tower, San Francisco, CA 94105.

N.K. Clapham