**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **STEPHEN HATCH,** | : | |
| **Plaintiff** | : | |
| | : | |
| **-v-** | : | **C.A. NO. 2005-155 (S)** |
| | : | |
| **PITNEY BOWES INC.** | : | |
| **Defendant** | : | |

**DEFENDANT PITNEY BOWES INC.'S PARTIAL OBJECTION TO MAGISTRATE DAVID L. MARTIN'S REPORT AND RECOMMENDATION**

**Thomas J. McAndrew, Esq. (#1001)**
**One Turks Head Place, Suite 205**
**Providence, RI 02903**
**Tel: (401) 455-0350**
**Fax: (401) 455-0882**

**Nicole A. Diller, Esq. (admitted pro hac vice)**
**Andrew C. Sullivan, Esq. (admitted pro hac vice)**
**Morgan, Lewis & Bockius LLP**
**One Market, Spear Street Tower**
**San Francisco, CA 94105**
**Tel: (415) 442-1000**
**Fax: (415) 442-1001**

Defendant Pitney Bowes Inc. ("Pitney Bowes" or the "Company") submits the following objection to Magistrate David L. Martin's December 1, 2005 Report and Recommendation (the "Report"). Pitney Bowes limits its objection to Sections III.D and III.E of the Report. *See* Report at 28-40. For the reasons discussed below, Pitney Bowes respectfully requests the Court conduct a *de novo* review of these sections of the Company's motion and this objection, and dismiss Counts IV, V, and VI of Plaintiff's Complaint.

## I. INTRODUCTION

The foundation of Plaintiff's Fourth Count for violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA") is the Company's recalculation of his benefit entitlement under the Pitney Bowes Inc. Long Term Disability Plan (the "Plan")[1] and the subsequent denial of Plaintiff's request that the Plan not collect the overpayment of benefits he received. Under controlling First Circuit precedent, the denial of a benefit claim alone cannot form the basis for a cause of action under the ADA. Nonetheless, the Report concluded that Plaintiff, as a former employee unable to perform the essential functions of his job (either with or without a reasonable accommodations) is "a qualified individual with a disability" with standing under the ADA to assert discrimination with regard to his long-term disability benefits. *See* Report at 29-32. Because Defendant limited its motion to dismiss to the Complaint's allegations, which provide no factual support for the claim of discrimination and retaliation, the Company did not address the issue of whether Plaintiff is a "qualified individual with a disability" under the ADA. However, in light of the Report, the Company files this objection to permit a more detailed evaluation of this issue.

To the extent Plaintiff's Fifth and Sixth Counts under the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws § 28-5-7 ("RIFEPA") and the Rhode Island Civil Rights Act, R.I.

[1] The Complaint directly refers to the Plan, Complaint ¶5, and the Court may therefore consider that document in reviewing this motion. *See Clorox Co. P.R. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000); *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 16-17 (1st Cir. 1998). Pitney Bowes submitted the Plan to the Court as Exhibit A attached to the Affidavit of Barbara Bianco in Support of Motion to Dismiss (filed on July 11, 2005). Future references to the Plan will cite directly to the Plan's provisions, omitting reference to Ms. Bianco's Affidavit.

Gen. Laws § 42-112-1 ("RICRA") assert claims beyond the scope of the ADA, the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA"), preempts them. Because the only remaining portions of those state law claims mirror and effectuate the Plaintiff's ADA claim, they fail for the same reason as Plaintiff's ADA claim.

## II. FACTS ALLEGED TO SUPPORT THE COMPLAINT'S FOURTH, FIFTH AND SIXTH COUNTS[2]

The allegations set forth in Plaintiff's Fourth, Fifth and Sixth Counts are identical. *See* Complaint ¶¶ 48-51, 53-56, 58-61.[3] Throughout the relevant time, Plaintiff alleges that he remained Totally Disabled. Complaint ¶ 50. Plaintiff alleges that "[o]n or about August 7, 2003, Plaintiff received a letter from Pitney Bowes stating that there had been a 'mistake' in calculation of the amount of his LTD benefits back in 1998, and that he supposedly now owed Pitney Bowes repayment of the sum of $133,075.14." Complaint ¶ 50. The Complaint asserts that the benefit calculation "mistake" constituted a continuing course of illegal discrimination under the ADA, RIFEPA, and RICRA and its recoupment "was done in unlawful retaliation for Plaintiff's former co-filing a Charge of Discrimination in 1999 with the Rhode Island Commission for Human Rights and the United States Equal Employment Opportunity Commission . . . and for pursuing a civil suit with this Court [in 2001] to redress this illegal disability discrimination." *See, e.g.,* Complaint ¶ 51.

Despite referencing conclusory buzzwords of "illegal discrimination" or "unlawful retaliation," the Complaint contains no allegations to provide a factual basis to substantiate these claims. *See* 47-51. Plaintiff alleges only that the Company advised him of the monthly amount that he would receive in LTD benefits, which amount the Company confirmed by making payments to him "over the years."

These bare factual allegations do not show that Defendant engaged in discrimination or retaliation under the ADA, RIFEPA, and RICRA. As the Disability Department admits, it erred

---

[2] Rather than burden the Court with the reiteration of the facts and relevant terms of the Plan detailed in Defendant's motion to dismiss, Defendant incorporates those sections by this reference.

[3] To avoid unnecessary repetition, Defendant cites only to the paragraphs referenced in Count IV when describing these allegations.

in its initial calculation of Plaintiff's LTD benefits. *See* Bianco Aff., Ex. B. Although Plaintiff alleges that the original benefit calculation was correct, Complaint ¶ 18, the Complaint fails to reconcile the Plan's designation of when Total Disability begins with its mandate that the Disability Department calculate benefits based on compensation in the year prior to Total Disability. *See* Complaint ¶ 29. More critically, Plaintiff provides no factual allegations supporting a causal relationship linking his 1998 discrimination charge and related 2001 civil suit to the Disability Department's August 2003 review of his benefit entitlement. Even construing the allegations in the light most favorable to the Plaintiff, the Complaint provides no facts that support a finding that the Disability Department did anything other than comply with its mandate to conduct a periodic review of Plaintiff's entitlement to benefits.

## III. ARGUMENT

As the allegations of the Complaint admit, Plaintiff released any claim he had for discrimination or retaliation arising out of his employment in February 2002. Thus any claim under the ADA or its state enforcement mechanisms must relate solely to the Plan. Complaint ¶¶ 19, 20. Although the essence of Plaintiff's Complaint argues that the Disability Department's initial calculation was correct and the reduction of his benefit therefore constitutes discriminatory conduct, the Complaint itself reveals the error in the Plan's calculation.[4] Complaint ¶¶ 18, 51, 56 and 61; *see also* Prayer for Relief ¶¶ 1-3.

### A. A Denial of Benefit Claim Alone Cannot Form the Basis of Discrimination Claim Under the ADA

As a matter of law, a failure to provide benefits is not, in and of itself, disability discrimination. *Tompkins v. United Healthcare of New England, Inc.*, 203 F. 3d 90, 94 (1st Cir. 2001) (dismissing a complaint asserting ADA violations based on denial of benefits because the complaint contained no basis for alleged ADA violation other than fact of benefit denial itself).

[4] Under the terms of the Plan, a Participant's Total Disability begins at the outset of his or her Qualifying Period. Plan § 5.2. As Plaintiff admits, he originally left work based on Total Disability in 1997. Complaint ¶ 8. The requisite 22-week Qualifying Period concluded on February 1, 1998. Complaint ¶¶ 8, 15. Because the Plan's computes compensation based on full calendar years preceding the participant's Total Disability, Complaint ¶ 18, the Plan should have calculated Plaintiff's benefits based on his earnings of the calendar years preceding 1997. Plan § 2.3.

Nor can the proper payment of benefits under the terms of the Plan constitute discrimination unless the review process itself was discriminatory. Specifically, as the First Circuit made clear in *Tompkins*, only allegations that the internal review process was uniquely geared against Plaintiff will state a claim for unlawful discrimination. *Tompkins,* 203 F.3d at 95-96. Plaintiff makes no such allegation, which the terms of the Plan would, in any event, refute.

To ensure the Plan is administered for the benefit of all Participants, it requires the periodic review of continued benefit eligibility and proper payment of benefits. Plan §§ 5.1(a), 5.2, 5.3, 5.4(a), 7.1, 7.3, 7.8, 9.9. The Plan also requires the recoupment of mistaken overpayments. Plan § 9.9; ERISA Section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D) (requiring administration of the Plan solely in the interest of its participants and beneficiaries and in accordance with its terms). The Disability Department's conduct in reviewing Plaintiff's claim and recouping the overpayment of benefits therefore amounts to nothing more than its administration of the Plan in accordance with its terms. Plan §§ 6.1, 7.8, 9.9; *see also* Complaint ¶ 31 (alleges recalculation in violation of the terms of the Plan). Accordingly, the Court should dismiss Plaintiff's Fourth, Fifth, and Sixth Counts. *Id.* at 96; *see also McDonald v. Commonwealth of Mass.*, 901 F. Supp. 471, 479 (D. Mass. 1995) (claim for failure to provide benefits not cognizable under ADA); *Potter v. Xerox Corp.*, 88 F. Supp. 2d 109, 112 (W.D.N.Y. 2000) (mere denial of benefits cannot properly be construed as a discrimination claim under the ADA), *aff'd*, 1 Fed.Appx. 34 (2nd Cir. 2001) (unpublished).

### B. Because Plaintiff Is Totally Disabled, He Is Not a Qualified Individual with a Disability Under Title I of the ADA[5]

Plaintiff admits in his Complaint that he is Totally Disabled, and Pitney Bowes does not

[5] The Report applied its analysis under the ADA to Plaintiff's Fifth and Sixth Counts because those Rhode Island discrimination laws have parallel requirements. Report at 40. The Report concluded that Plaintiff's claims under RIFEPA and RICRA are not preempted by ERISA because they are enforcement vehicles for the ADA. Defendant agrees that ERISA does not pre-empt the ADA, nor does it pre-empt state statutes that serve as enforcement vehicles for the ADA. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983). To the extent the Court agrees that Plaintiff fails to state a claim under the ADA, that rationale will simultaneously result in dismissal of Plaintiff's Fifth and Sixth Counts. *Id.* To simplify the analysis, Defendant limits references in its argument to Plaintiff's Fourth Count under the ADA, but apply the same rational to Plaintiff's Fifth and Sixth Counts. Further, to the extent Rhode Island state discrimination law is broader than the ADA, it does not serve as an enforcement vehicle for the ADA and ERISA pre-empts its more expansive protections. *Id.*; *see also Tompkins*, 203 F.3d at 97.

contest that fact. *See* Complaint ¶ 17. Plaintiff does not allege that he could return to work with accommodations, and the gravamen of his Complaint is that he is entitled to disability benefits under the Plan. Complaint ¶¶ 17, 18, 31. These facts preclude Plaintiff from asserting a claim under the ADA.

To state a claim under Title I of the ADA, a plaintiff must be a "qualified individual with a disability." 42 U.S.C. § 12112 (2005) ("No covered entity shall discriminate against a qualified individual with a disability because of the disability . . . ."). The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, **can perform the essential function of the employment position that** [the] **individual holds or desires**." 42 U.S.C. § 1211(8) (2005) (emphasis added). "An ADA plaintiff bears the burden of proving that she is a 'qualified individual with a disability'" in asserting a claim under Title I of the ADA. *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1108 (9th Cir. 2000), *citing Cleveland v. Policy Management Sys. Corp.*, 526 U.S. 795 (1999) (quoting the ADA). Because a totally disabled person cannot "perform the essential functions of the employment position" with or without reasonable accommodations, such a person fails to meet the threshold requirement to assert a claim under the ADA. *Weyer*, 198 F.3d 1104. The majority of the circuit courts addressing this issue have reached this conclusion. *See id.; Parker v. Metropolitan Life Ins. Co.*, 99 F.3d 181, 185 (6th Cir. 1996), *rev'd on other grounds*, 121 F.3d 1006 (6th Cir. 1997) (en banc);[6] *EEOC v. CNA Ins. Cos.*, 96 F.3d 1039 (7th Cir. 1996); *Morgan v. Joint Administration Board,* 268 F.3d 456 (7th Cir. 2001); *Beauford v. Father Flanagan's Boys' Home*, 831 F.2d 768 (8th Cir. 1987); *Smith v. Midland Brake, Inc.*, 180 F.3d 1154 (10th Cir. 1999) (explaining in *dicta* that "a 'qualified individual with a disability' has to be someone who can perform the essential functions of a job").

[6] *See* Report at 30. *Parker's* procedural history warrants further explanation. The district court specifically held that the plaintiff was not a qualified individual with a disability when her benefits were terminated because she could not perform the essential functions of her job. *Parker*, 875 F. Supp. 1321, 1326 (W.D. Tenn. 1995). A panel of the Sixth Circuit affirmed. *Parker*, 99 F.3d 181, 186-87 (6th Cir. 1996). The panel's decision was later vacated by the Sixth Circuit sitting *en banc*. *Parker*, 121 F.3d 1006, 1009 (Sixth Cir. 1997) (*en banc*). The *en banc* court did not disturb the plaintiff's Title I claim because she did not seek rehearing on that issue. Accordingly, the holding and reasoning from both the district court and the Sixth Circuit on the Title I issue remain in full force.

The First Circuit applied similar reasoning when it held that an employee who was unable to work because of severe depression was not a "qualified handicapped person" within the meaning of Massachusetts' handicap discrimination statute. *August v. Offices Unlimited, Inc.*, 981 F.2d 576 (1st Cir. 1992). *August* involved an appeal where plaintiff alleged wrongful employment termination. *Id.* at 577. The applicable Massachusetts statute made it unlawful for an employer to dismiss an employee from employment because of a handicap, so long as the employee is "a qualified handicapped person, capable of performing the essential functions of the position involved with reasonable accommodation . . . ." *Id.* at 578. Because the plaintiff in *August* conceded he was totally disabled at all relevant times, the First Circuit held that plaintiff "cannot now establish that he was a 'qualified handicapped person' and thus cannot make the *prima facie* case required to prevail on his claim." *Id.* at 584. Quoting the Eighth Circuit's opinion in *Beauford*, involving similar "qualifying" language under the Federal Rehabilitation Act , the First Circuit found "[S]ection 504 [of the Rehabilitation Act] was designed to prohibit discrimination within the ambit of an employment relationship in which the employee is potentially able to do the job in question. Though it may seem undesirable to discriminate against a handicapped employee who is no longer able to do his or her job, this sort of discrimination is simply not within the protection of section 504." *Id.* at 582-83. Given the parallels between the Massachusetts' law at issue in *August* and the ADA, the Court should extend the First Circuit's reasoning to Plaintiff's claims under the ADA, RIFEPA and RICRA.

Only two circuits, the Second and Third, consider a totally disabled employee able to assert a claim under the ADA. *See Castellano v. City of New York*, 142 F.3d 58, 69 (2d Cir. 1998), and *Ford v. Schering-Plough Corp.*, 145 F.3d 607 (3d Cir. 1998). Both of those cases, however, differed greatly from the facts alleged by Plaintiff, in that they involved inherently discriminatory benefit policies. In *Castellano*, retired New York City employees challenged a provision in a supplemental retirement plan that the city made available only to retirees with twenty years of service who did not retire on disability pensions. *Castellano*, 142 F.3d at 62. The Plaintiffs claimed that the exclusion of disability pensioners violated the ADA by unlawfully

discriminating against those with disabilities. Similarly, in *Ford*, a former employee challenged the disparity of disability benefits available for mental disabilities compared to physical disabilities under a disability plan. *Ford*, 145 F.3d at 603.[7] Rather than focusing on the definition of a "qualified individual with a disability," both the Second and Third Circuits found a gap between the rights created by the ADA and the apparent legal remedy that statute provides. *Ford*, 145 F.3d at 608; *Castellano*, 142 F.3d at 69. Each Court concluded that the ADA permits suits regarding employees' entitlement to post-employment fringe benefits arise during employment. *Ford*, 145 F.3d at 608; *Castellano*, 142 F.3d at 68.

Plaintiff, however, has waived all claims for discrimination or retaliation arising from his employment. Complaint at ¶ 20, 42-44; *see also* Report at 23. Thus any claim under the ADA must arise solely from post-employment conduct – conduct relating exclusively to his rights under the Plan. Plaintiff's claim therefore fits squarely with the First Circuit's *Thompson* decision, which directs that a benefit denial alone cannot form the basis for an ADA Violation.

In any event, the reasoning of *Ford* and *Castellano* does not apply to an individual benefit dispute. Those decisions were based on a purported remedial gap in the ADA. As either a non-participant in the relevant plan or a participant whose disability was excluded by the plan terms, the plaintiffs in *Ford* and *Castellano* would have, respectively, either no standing or no remedy under ERISA. No remedial gap exists in Plaintiff's situation, however, as ERISA permits totally disabled individuals to assert claims relating to their benefits under long-term disability plans. *See, e.g.,* ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) (cause of action to clarify rights under the terms of a plan, or to recover benefits due). Consequently, the rationale underlying the *Ford* and *Castellano* decisions lose applicability in the context of Plaintiff's Complaint.

[7] The factual background and legal issue presented in *Fletcher v. Tufts Univ.*, 367 F. Supp. 2d 99 (D. Mass. 2005), *Iwata v. Intel Corp.*, 349 F. Supp. 2d 135 (D. Mass. 2004), and *Conners v. Maine Med. Ctr.*, 42 F. Supp. 2d 34 (D. Me. 1999), are identical to *Ford* and, therefore, the rational of those cases are deficient for the same reasons identified with respect to *Ford*.

### C. The Report Goes Beyond the Factual Allegations of the Complaint

When judging the sufficiency of a complaint on a Rule 12 motion, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." *LaChapelle v. Berkshire Life Insurance Co*, 142 F.3d at 507, 508 (1st Cir. 1996), *quoting Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996). Although the Court must construe the Complaint in the light most favorable to the Plaintiff, taking all well-pleaded allegations as true and giving the Plaintiff the benefit of all reasonable inferences, it is not required to credit bald assertions or unsupportable conclusions. *Id.* Further, a plaintiff must allege facts in support of "each material element necessary to sustain recovery under some actionable legal theory." *Dartmouth Review v. Dartmouth Coll.*, 889 F.2d 36, 37 (1st Cir. 1989). As the Report acknowledged, "Rule 12(b)(6) is forgiving, but it 'is not entirely a toothless tiger.'" Report at 5, *quoting Campagna v. Massachusetts Dep't of Envtl. Prot.*, 334 F.3d 150, 155 (1st Cir. 2003).

Plaintiff's discrimination and retaliation allegations are contained in a single paragraph. It alleges that the:

> so-called benefit calculation 'mistake' constitutes a continuing course of illegal discrimination . . . against Plaintiff because of Plaintiff's mental disability and was done in unlawful retaliation for Plaintiff's former co-filing of a Charge of Discrimination in 1999 with the Rhode Island Commission for Human Rights and the United States Equal Employment Opportunity Commission. . ., and for pursuing a civil suit with this Court to redress this illegal disability discrimination . . . .

Complaint ¶¶ 51, 56, 61 (internal citations omitted); *see also* Report at 28. The Report suggests that these allegations "can be read as alleging that 'the review process itself,' . . . *i.e.*, the act of checking to see if Plaintiff was receiving the correct amount of benefits, was done in a discriminatory fashion." Report at 33. However, Plaintiff's Complaint does not extend as far as the Report stretches it. The Complaint is devoid of any facts supporting the allegation that Defendant's review of Plaintiff's claim was discriminatory, and it fails to provide any basis for concluding that this review differed in any way from the review applied to all Plan members.

Plaintiff's failure to plead sufficient facts to support a cognizable legal theory requires the dismissal of these counts. *Tompkins*, 203 F.3d 96; *Dartmouth Review*, 889 F.2d at 37.

**D. Plaintiff's Discrimination Claims Do Not Allege a Predicate Adverse Action**

As set forth in Defendant's motion to dismiss, to state a *prima facie* case of discrimination under the ADA a complaint must allege that the plaintiff: (1) suffers from a disability within the meaning of the Act; (2) was able to perform the functions of his or her job; and (3) suffered an adverse employment action because of that disability. *Feliciano v. State of Rhode Island*, 160 F. 3d 780, 784 (1st Cir. 1998). A *prima facie* case of retaliation under the ADA includes articulation that the plaintiff: (1) engaged in ADA protected conduct; (2) was thereafter subjected to an adverse action; and (3) that a casual connection exists between the protected conduct and the adverse action. *Benoit v. Technical Mfg. Corp.*, 331 F.3d 166, 177 (1st Cir. 2003). Thus, under either a discrimination or retaliation theory, the plaintiff must allege an adverse action.

The Report states that "[a] reduction or elimination of an employee's fringe benefit is an adverse employment action." Report at 32, *citing Hildebrandt v. Illinois Dep't of Natural Res.*, 347 F.3d 1014, 1030 (7th Cir. 2003). In *Hildebrant*, the court found that receiving diminished compensation qualified as an adverse employment action. *Id.* at 1030-31, *citing Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 744 (7th Cir. 2002) (stating that actionable adverse employment actions include "[c]ases in which the employee's compensation, fringe benefits, or other financial terms of employment are diminished"). Here, although the Disability Department instituted the reduction of Plaintiff's benefits to recoup the Plan's overpayment, such action cannot fairly be characterized as "diminished" compensation. The terms of the Plan provide a precise formula for calculating Plaintiff's monthly benefit entitlement. Plan § 2.3. Because Plaintiff received greater benefits than his actual benefit entitlement, he received more than what he was owed under the Plan. Providing Plaintiff his appropriate Plan benefit cannot, as a matter of law, constitute an "adverse" action. *See Blackie v. State of Maine*, 75 F.3d 716, 725-26 (1st Cir. 1996).

In addition, the alleged retaliatory action – recalculating Plaintiff's benefits pursuant to the correct formula under the Plan and seeking recoupment of overpayments – happened approximately four years after Plaintiff filed discrimination charges with the Rhode Island Commission for Human Rights and the United States Equal Employment Opportunity Commission. Complaint ¶ 19. An assumption of any causal connection between the recalculation and Plaintiff's earlier claims is unwarranted. *See Dressler v. Daniel*, 315 F.3d 75, 80 (1st Cir.2003) ("[T]he inference of a causal connection becomes more tenuous with time."); *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 828 (1st Cir.1991) (holding that the nine month period between the protected conduct and alleged retaliation undermined the inference of causation). The Complaint simply fails to state a *prima facie* case under the ADA, RIFEPA and RICRA.

## IV. CONCLUSION

For the foregoing reasons related to Counts IV, V, and VI and the Report's findings on the remaining Counts, Pitney Bowes respectfully requests the Court enter judgment in favor of Defendant and dismiss Plaintiff's Complaint in its entirety.

Dated: December 15, 2005

By: [signature]

Thomas J. McAndrew
Thomas J. McAndrew & Associates
One Turks Head Place, Suite 205
Providence, RI 02903
Tel: (410) 455-0350

Nicole A. Diller (*admitted pro hac vice*)
Andrew C. Sullivan (*admitted pro hac vice*)
Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Tel: (415) 442-1000
Attorneys for Defendant Pitney Bowes Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of December, 2005, I caused the foregoing

**DEFENDANT PITNEY BOWES INC.'S PARTIAL OBJECTION TO MAGISTRATE DAVID L. MARTIN'S REPORT AND RECOMMENDATION**

to be mailed to:

Noelle K. Clapham
Attorney at Law
24 Salt Pond Road, Suite A-8
South Kingstown, RI 02879

Robyn A. Poirier

1-SF/7324369.1