UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **STEPHEN HATCH** **Plaintiff** | : | |
| **v.** | : | **C.A. No. 05-155 (S)** |
| **PITNEY BOWES, INC., et al.** **Defendants** | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT'S OBJECTION TO THE REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE**

## I. INTRODUCTION

Plaintiff submits this Memorandum in response to the objection of Defendant Pitney Bowes, Inc. to the Report and Recommendation issued in the above-captioned matter by Magistrate Judge David L. Martin dated December 1, 2005. The Magistrate's Report and Recommendation was issued in response to Defendant's Motion to Dismiss with respect to all counts of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Although the Magistrate did recommend dismissal of some of the counts, he refused to dismiss the employment discrimination counts (IV, V and VI). Defendant has filed an objection to the Magistrate's refusal to dismiss these counts.[1]

Plaintiff takes the position that the Magistrate's refusal to dismiss these counts was entirely correct. The Defendant posits two propositions in support of its objection, neither of which is availing to it. First, the Defendant argues that because the Plaintiff is totally disabled, he is not a "qualified individual with a disability" pursuant to the Americans with Disabilities

[1] Plaintiff has filed a cross-objection to the Report and Recommendation insofar as it suggested the dismissal of counts I and VIII

Act ("ADA"), 42 U.S.C.A. § 12101 *et seq*., and therefore is not entitled to its protections.[2] Secondly, the Defendant argues that the allegations in the complaint are not sufficient to support a claim of discrimination. Neither assertion is supportable.

## II. LEGAL ARGUMENT

### A. <u>THE MAGISTRATE CORRECTLY RULED THAT THE PLAINTIFF CAN MAINTAIN THE DISCRIMINATION COUNTS DESPITE BEING "TOTALLY DISABLED" PURSUANT TO THE SUBJECT PLAN.</u>

The Defendant's attempt to remove the Plaintiff from the protections of the ADA can only succeed by distorting the precise nature of the Plaintiff's claim. The Defendant's Objection does cite extensive case law, including that of our own Circuit, in support of the proposition that the Plaintiff is not protected under the ADA. However, this case law is inapplicable to the instant claim. The Plaintiff's claim is at least in part one of retaliation for having earlier brought a cause of action for disability discrimination. The ADA's protection against retaliatory conduct is not limited to "qualified individuals with a disability." 42 U.S.C.A § 12203, which contains the ADA's anti-retaliation provisions, specifically provides:

> (a) Retaliation
> No person shall discriminate against *any individual* because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

(Emphasis added.) On their face, the anti-retaliation provisions of 42 U.S.C.A. § 12203 would appear to encompass "*any individual*," not simply those "qualified individuals with a disability." Our First Circuit has in fact visited this question repeatedly, and has consistently held that one can pursue a retaliation claim even if one fails to establish that he or she is not a "qualified

[2] The Plaintiff brought his discrimination claims under both Rhode Island and federal law. However, the Rhode Island discrimination laws are generally interpreted in the same fashion as the federal. *See, e.g., DeCamp v. Dollar Tree Stores,* 875 A.2d 13 (R.I. 2005). Therefore, we take the Defendant's approach of limiting our references to the ADA in order to simplify this analysis.

individual with a disability" under the Act. *See Wright v. CompUSA, Inc.*, 352 F.3d 472, 477 (1st Cir. 2003); *Benoit v. Technical Manufacturing Corporation*, 331 F.3d 166, 177 (1st 2003); *Solieau v. Guilford of Maine, Inc.*, 105 F.3d 12, 16 (1st Cir. 1997), *citing Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 827 (1st Cir. 1991). Accordingly, the Plaintiff's total disability under the Plan would apparently not work to bar his retaliation claims.

Even if the Plaintiff relied solely upon a discrimination rather than retaliation claim (i.e., that he was being denied benefits because he was mentally disabled rather than because he had filed an action earlier), he should still be permitted to pursue his claim despite the fact that he is "totally disabled" under the Plan. The Magistrate properly relied upon two cases from the Second and Third Circuits which have so held, *Castellano v. City of New York*, 142 F.3d 58 (2d Cir. 1998) and *Ford v. Schering-Plough Corp.*, 145 F.3d 601 (3d Cir. 1998). The Defendant attempts to distinguish these cases by claiming that they "involved inherently discriminatory benefit policies." Defendant's Partial Objection, p. 6. It is not entirely clear why the Defendant believes this distinction is of importance. More to the point is the Second and Third Circuits' rationale for having permitted totally disabled individuals to take action against their former employers.

In the case of *Ford*, the individual involved was a former employee who had become totally disabled due to a mental health condition. The long-term disability policy offered by the employer limited benefits to two years for individuals disabled by mental health conditions but not hospitalized, but allowed those who were disabled by physical conditions to continue receiving benefits to age 65. *Id.* at 603. The defendant moved to dismiss, arguing that the employee was totally disabled and therefore could not be deemed a "qualified individual with a disability." The Third Circuit denied the former employer's motion to dismiss, noting that the

term "qualified individual with a disability" did not specify any temporal qualifier, and therefore could be interpreted so as to permit former employees to sue their former employers regarding their disability benefits. *Id.* at 606-07. By choosing to resolve this ambiguity in favor of the employee, the Third Circuit fulfilled the intention of the ADA, that is, to provide a clear and comprehensive set of protections for disabled individuals. *Id.* at 607. In other words, the Third Circuit fulfilled one of the basic mandates of statutory construction: that remedial statutes such as the ADA should be interpreted broadly, in favor of the party to be protected. *See, e.g., PBR, Inc. v. Sec. of Labor*, 643 F.2d 890.

The *Castellano* Court followed a similar line of reasoning. At issue in *Castellano* was the provision of supplemental funds that could be given to retired police and firefighters in addition to their regular pensions. Individuals who had retired after twenty years of service could obtain these benefits. Individuals who had retired on disability pensions could not obtain these benefits, regardless of their length of service. *See id.* at 63-64. Various retired police and firefighters complained that this pension scheme discriminated against them on the basis of disability The employers argued that the individuals who had retired on disability pensions were not "qualified individuals with a disability" pursuant to the Act. The Second Circuit rejected this argument. In common with the *Ford* Court, the Second Circuit also found that the term "qualified individual with a disability" was temporally ambiguous. *See id.* at 67. The Second Circuit also pointed out that the ADA specifically prohibited discrimination in the provision of fringe benefits. *See id.* at 68. The Second Circuit suggested that in fact Congress never intended that individuals must establish that they were "qualified individuals with disabilities" before they could obtain protection from discrimination in the provision of post-employment benefits. In decisions regarding hiring or retention, qualifications were certainly an issue. Therefore, it is

entirely appropriate to limit actions only in those instances to those individuals who are qualified. *See id.* However, cases involving post-employment fringe benefits are radically different:

> Where the alleged discrimination relates to the provision of post-employment benefits, rather than to hiring, promotion, or firing, Congress's expressed concern about qualifications is no longer implicated. Because retired employees who receive fringe benefits no longer work or seek to work for their former employers, they plainly need not perform the essential functions, or indeed *any* functions, of their former employment. Provided that retired employees were qualified (i.e., performed the "essential functions" of their jobs) while employed and on that basis became entitled to post-employment benefits, the purpose of the "essential functions" requirement has been met. In the instant case, appellants who performed the "essential functions" of their former employment for a period of twenty years and who selected a "for service" retirement plan would be entitled under the ADA to non-discriminatory treatment in the provision of VSF benefits. Because fringe benefits are earned for actual service in employment, it is irrelevant whether former employees, otherwise eligible for fringe benefits, could *also* perform such essential functions at or after termination of their employment.

*See id.* at 68. To deny individuals the right to sue for discriminatory treatment in the provision of benefits, the Court concluded, would frustrate the Act's stated intention of providing protection from discrimination in the provision of fringe benefits: ". . . it is inconceivable to us that Congress would in the same breath expressly prohibit discrimination in fringe benefits, yet allow employers to discriminatorily deny or limit post-employment benefits to former employees who ceased to be 'qualified' at or after their retirement, although they had earned those fringe benefits through the years of service in which they performed the essential functions of employment." *See id.* at 69.

Also of interest are the district court cases cited by the Magistrate in his Report and Recommendation. Although the First Circuit has not yet had the opportunity to rule on this issue, it is certainly of some significance that the holdings of *Castellano* and *Ford* have gained acceptance in this Circuit's District Courts, and have permitted former employees to proceed

with actions for discrimination in the provision of fringe benefits pursuant to ADA despite the fact that they were no longer "qualified employees with a disability." *See Fletcher v. Tufts Univ.*, 367 F.Supp.2d 99, 106 (D.Mass. 2005); *Iwata v. Intel Corporation*, 349 F.Supp.2d 135, 147 (D.Mass. 2004); *Conners v. Maine Medical Center*, 42 F.Supp.2d 34, 45 (D.Me. 1999).

The Defendant attempts to argue that the reasoning of *Ford* and *Castellano* should not apply because both cases were intended to fill a "purported remedial gap," in that the plaintiffs in those cases would have had no remedy under ERISA. Unfortunately for the Defendant, neither *Ford* nor *Castellano* ever rested on a gap in any provision under ERISA. Furthermore, the Defendant cites no authority in support of the proposition that the availability of relief under ERISA claim should somehow preclude relief under a discrimination claim.

The Defendant, then, has failed to establish that the Magistrate's Report and Recommendation was erroneous in that it permits the Plaintiff to proceed with his discrimination claims despite the fact that he is "totally disabled" under the subject Plan. It is certainly not required that he be a "qualified individual with a disability" in order to pursue the retaliation aspects of his discrimination claims. Furthermore, the better reading of the ADA – as adopted by sister courts in our own Circuits – would allow a plaintiff to invoke the ADA's protections against discrimination in the provision of post-employment benefits even if that individual is no longer capable of working. Therefore, the Magistrate's Report and Recommendation should be allowed to stand as it relates to this issue.

## B. <u>THE MAGISTRATE CORRECTLY HELD THAT THE PLAINTIFF SUFFICIENTLY STATED A CAUSE OF ACTION FOR UNDER THE DISCRIMINATION STATUTES.</u>

Similarly unavailing is the Defendant's attempt to claim that the Magistrate should have dismissed the discrimination claims pursuant to Rule 12(b)(6) for having failed to plead

sufficient facts to support a claim of discrimination. The Defendant bears a formidable burden in this regard. Dismissal pursuant to Rule 12(b)(6) is inappropriate unless "it appears beyond a doubt that the plaintiff can prove no set of facts in support of [her] claim [s] which would entitle [her] to relief." *See Fletcher*, at 103-04, *citing Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The plaintiff is entitled to the benefit of all reasonable inferences. *See Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996). The First Circuit has in fact abjured courts to refrain from dismissal if there is even a possibility of a cognizable claim. *See Carparts Distribution Center, Inc. v. Automotive Wholesaler's Assoc. of New England, Inc.*, 37 F.3d 12, 17 (1st Cir. 1994). The Defendant has not established that there is no possibility of a cognizable claim.

In support of its quest for dismissal, the Defendant complains that the factual allegations in support of the Plaintiff's claim are wanting, in that they fail to allege an adverse action. The gravamen of the Plaintiff's complaint is that his benefits were wrongfully reduced, out of discriminatory and retaliatory animus. The Defendant attempts to circumvent this by claiming that the reduction was in fact appropriate, and that reducing the Plaintiff's benefit therefore cannot be construed as an adverse action. This argument is entirely specious. The Complaint specifically alleges that the reduction in benefits was incorrect, and at least impliedly alleges that the Defendants changed their interpretation of the Plan so as to continue a course of harassment and retaliation of the Plaintiff. The Complaint also sets out the language of the Plan and underlying facts that would support the allegation that the benefits should not have been reduced. (See Complaint, ¶ 17-19.) For the purposes of this motion, then, these allegations regarding a wrongful reduction in benefits must be taken as true. The Defendant therefore cannot rely on a mere contradiction of the assertion that the Plaintiff's benefits were wrongfully reduced.

The Defendant also complains that the complaint is insufficient in that the benefit recalculations happened approximately four years after the Plaintiff filed discrimination charges. The Defendant apparently would have this Court believe that there is some *per se* rule that a certain passage of time obviates a claim of retaliation. The Defendant cites no authority in support of such a proposition. It is true that, as stated in the case of *Dressler v. Daniel*, 315 F.3d 75, 80 (1st Cir. 2003), the passage of time tends to make a claim of retaliation less believable. However, this is not the same as holding that there could *never* be a cognizable claim of retaliation after a certain time period. To hold so would be to state that the human mind has its own "statute of limitations" when it comes to retaliating wrongs, whether real or perceived. That assertion contradicts the most casual observation of human behavior – particularly where, as here, the original altercation resulted in a continuing financial liability. Whether an individual or entity still possessed animus towards a particular individual, then, should be deemed a quintessential issue of fact to be proven at trial, rather than disposed of in a motion to dismiss.

In any case, the Defendant almost willfully distorts the facts surrounding the lapse of time between the Plaintiff's protected action and the recalculation. The Defendant attempts to suggest that there was a four-year lapse of time. This was not the case. As the Report and Recommendation points out, the Plaintiff dismissed his action in 2002. The recalculation took place only fifteen months thereafter. *Id.* at 34.

The Defendant also cannot rely on its proposition that the Report and Recommendation somehow "went beyond the factual allegations of the complaint." The Defendant argues that the Magistrate erred in that he read the allegations of the Complaint as impliedly alleging that the simple act of reviewing the Plaintiff's benefits in the first place was done in a discriminatory fashion. The Defendant would have it that the Plaintiff was specifically required to state that his

file had been in some way "red flagged" for review. However, at the stage of a Rule 12(b)(6) motion, the plaintiff is entitled to the benefit of any reasonable inference that can be drawn. *See Aulson*, at 3. Here, the wording of the Complaint certainly implied that the Plaintiff was subjected to a higher level of scrutiny than other claimants, in that it indicated that only fifteen months after Plaintiff's benefits were ascertained, the Defendant apparently felt it necessary to recalculate them.

The Defendant also apparently would have it that the Plaintiff was required to allege more facts that a general averment of the Defendant's discriminatory and/or retaliatory state of mind. While such a "heightened pleading" requirement in discrimination and civil rights cases has been applied in this Circuit in the past, the Supreme Court has expressly held that this practice was unacceptable. *See Swierkiewicz v. Sorema*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Heightened pleading requirements must be created by rule, rather than judicial interpretation. *See id.* at 514-15. *See also Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61, 66 (1st Cir. 2004.) Under Fed.R.Civ.P. 9(b) ". . . malice, intent, knowledge, and other condition of mind of a person may be averred generally." No exception is made for discrimination cases. The Plaintiff's complaint, of course, included this general averment of state of mind. This should have been sufficient to state a claim for relief. *See Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998).

The Magistrate, then, was entirely correct in refusing to find any factual insufficiency in the discrimination complaints that would warrant their dismissal at this time. Therefore, his Report and Recommendation should be accepted insofar as these counts are concerned.

## III. CONCLUSION

For the above-reference reasons, the Defendant's Objection to the Magistrate's Report and Recommendation is without merit, and said Report and Recommendation should be accepted as it relates to the discrimination counts.

Respectfully submitted,

PLAINTIFF STEPHEN HATCH
By his Attorney,

Noelle K. Clapham (5338)
24 Salt Pond Road, Suite A-8
South Kingstown, RI 02879
(401) 783-3600
(401) 783-3670 (fax)
January 13, 2006

Vicki J. Bejma #6498
The Law Offices of Stephen M. Robinson
155 South Main Street, Suite 402
Providence, RI 02903
(401) 331-6565
(fax) 331-7888
January 13, 2006

## CERTIFICATION

I hereby certify that on this 13 th day of January, 2006, I mailed a true and complete copy of the foregoing to Defendant's counsel of record: Thomas J. McAndrew, Esquire, Thomas J. McAndrew & Associates, One Turks Head Place, Suite 205, Providence, RI 02903; Nicole A. Diller, Esquire and Andrew C. Sullivan, Esquire, Morgan Lewis & Bockius LLP, One Market, Spear Street Tower, San Francisco, CA 94105.